BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **In re:** JOHNSON & JOHNSON AEROSOL SUNSCREEN LITIGATION | MDL-_____ |

BRIEF IN SUPPORT OF JIMENEZ PLAINTIFFS' MOTION FOR TRANSFER OF
ACTIONS PURSUANT TO 28 U.S.C. § 1407

The Jimenez Plaintiffs[1] respectfully submit this Brief in Support of their motion for transfer

and consolidation of related actions in the District of New Jersey, under 28 U.S.C. § 1407.

I.      INTRODUCTION

Pursuant to 28 U.S.C. § 1407, the Jimenez Plaintiffs seek an Order (i) transferring to the

District of New Jersey the *French,*[2] *Dominguez,*[3] *Rafal,*[4]*Serota*,[5] *McLaughlin,*[6] *Briglio,*[7]*and*

*Lavalle*[8] actions and any other tag-along actions asserting similar or related claims against Johnson

& Johnson Consumer Inc. ("J&J")[9] involving defective sunscreen sprays that contain the presence

---

[1] "Plaintiffs" or the "Jimenez Plaintiffs" are Melissa Jimenez and Catalina Ocampo.  Their case is captioned *Jimenez, et al. v. Johnson & Johnson Consumer, Inc., Case No. 3:21-cv-13113-FLW-TJB,* pending in the United States District Court for the District of New Jersey.

[2] *Shelli French, et al. v. Neutrogena Corporation* Case *No.* 2:21-cv-05048 (C.D. Cal.).

[3] *Johanna Dominguez, et al. v. Johnson & Johnson Consumer, Inc*., Case No. 4:21-cv-05419-JST (N.D. Cal.).

[4] *George Rafal, et al. v. Johnson & Johnson; Johnson & Johnson Consumer, Inc.; Neutrogena Corporation; and Aveeno* Case No. 3:21-cv-05524-LB (N.D. Cal.).

[5] *Meredith Serota, et al. v. Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc*. Case No. 0:21-cv-61103 (S.D. Fla.).

[6] *Timothy McLaughlin, et al. v. Johnson & Johnson Consumer, Inc.; Johnson & Johnson; and Costco Wholesale Corporation*, Case No. 3:21-cv-13710 (D.N.J.).

[7] *Julianna Briglio, et al. v. Johnson & Johnson Consumer Inc.* Case No. 3:21-cv-13972 (D.N.J.).

[8] *Steven Lavalle, et al. v. Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.*, Case No. 7:21-cv-06091 (S.D.N.Y.).

[9] Certain actions also name subsidiaries of J&J such as Neutrogena Corporation, however, they all concern the same Products produced by J&J.

of benzene (the "Products") that may subsequently be filed in or removed to the federal courts; and (ii) consolidating the *French, Dominguez, Rafal, Serota, Jimenez, McLaughlin, Briglio, and Lavelle* class actions for pretrial discovery and class certification purposes.[10] Transfer and consolidation in the District of New Jersey is necessary under Section 1407 in order to promote efficient management of the litigation because:

- The actions involve nearly identical factual allegations that J&J's sunscreen sprays are defective in that they contain the presence of benzene, a chemical linked to blood cancers such as leukemia, and the actions bring largely duplicative legal claims. Thus, discovery in all of the related actions will necessarily focus on the same documents, witnesses, and other evidence pertaining to J&J's testing and development of the Products, J&J's knowledge of problems regarding the presence of benzene in the Products during normal use by consumers, and any steps J&J took to address any known defects. Absent consolidation, duplicative discovery and potentially conflicting dispositive legal rulings may result.

- The actions involve overlapping putative classes, as the *French, Dominguez, Rafal, Serota, Jimenez, McLaughlin, Briglio, and Lavelle* actions seek to certify classes of consumers who are members of the putative class in the *Jimenez* action. Absent consolidation, five federal district courts could issue five conflicting class certification rulings.

- The District of New Jersey is where J&J's headquarters and most relevant witnesses and documents are likely to be located.

---

[10] The *French, Dominguez, Rafal, Serota, Jimenez, McLaughlin, Briglio, and Lavelle* cases are listed on the Schedule of Actions filed with the accompanying Brief as Exhibit "A." The Complaints (without exhibits) in the Actions and their related docket sheets are attached to the Brief as Exhibits "A-1" through "A-8."

- Three of the eight class actions are pending in the District of New Jersey, and those cases are pending before the Honorable Freda L. Wolfson.

## II.     BACKGROUND

### A.     Factual Background

J&J manufactures, sells, markets, and distributes several over-the-counter Sunscreen products under its brand name "Neutrogena." In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of J&J's Sunscreen products using a sophisticated gas chromatography flame ionization test modified to follow FDA guidance for impurities detection. Specifically, Valisure tested numerous lots of J&J's spray and lotion Sunscreen products. Through its testing, Valisure discovered that certain of the Sunscreen products contain benzene with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route. Benzene is a known human carcinogen that has been linked to leukemia and other cancers. Notably, benzene is not listed as an active or inactive ingredient on any of the labels of the Products.

As a result of the concerning findings, on May 25, 2021, Valisure filed its citizen petition with the FDA asking the FDA to recall all batches of Defendant's Products that contained benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. § 351 and 21 U.S.C. § 352, respectively.

Thereafter, on or about July 14, 2021, J&J issued a voluntary (albeit inadequate) recall of certain of the Products at issue in the litigations involving Defendant's aerosol sunscreen product lines.

### B.    Procedural History of the Pending Actions

On June 29, 2021, the Jimenez Plaintiffs filed a proposed class action on behalf of a nationwide class of persons (and New York and Illinois subclasses) who purchased the Products. *See generally Jimenez* Class Action Complaint with Jury Demand.  The Jimenez Plaintiffs asserted claims for violations of the New Jersey, New York and Illinois consumer protection laws, fraudulent concealment, and unjust enrichment.

At or around that same time, seven other substantially similar class actions were filed in district courts across the country—one in the Central District of California (*French*); two in the Northern District of California (*Dominguez* and *Rafal*); one in the Southern District of Florida (*Serota*); two more in the District of New Jersey (*McLaughlin* and *Briglio*); and one in the Southern District of New York (*Lavalle*). Notably, the two District of New Jersey cases (*McLaughlin* and *Briglio*) were identified as related to the *Jimenez* case and have been referred to Judge Wolfson.

Although Plaintiffs know of no other related cases pending, J&J is best situated to inform the Panel whether there are any other class actions in federal district courts that raise the same or similar claims.

## III.    ARGUMENT

### A.    Transfer of the Pending Class Actions for Coordinated Pretrial Proceedings is Proper

The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts.  *See* MANUAL ON COMPLEX LITIGATION § 22.33

at 367 (4th ed. 2004).  These goals are best served by transferring the above-identified cases for coordinated pretrial proceedings.  28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action." 28 U.S.C. § 1407(a).

Here, Section 1407's requirements for transfer are satisfied.  The above-referenced class actions against J&J are based on the same or substantially similar questions of law and fact.  In addition, transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification.  Indeed, because all of the actions assert complex, yet virtually identical claims and allegations requiring substantial discovery into highly technical aspects of J&J's manufacturing, testing, formulation, marketing, and sales procedures, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings.  *See In re Eliquis (Apixaban) Products Liab. Litigation*, 282 F.Supp.3d 1354, 1356 (J.P.M.L. 2017) (consolidation appropriate where issues concerning the manufacture, testing, design, marketing, and sales of a product are common to all actions).

### 1.      The related actions involve common questions of fact.

The first requirement of Section 1407 — that actions involve common questions of fact — is satisfied.  The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct by J&J and are, therefore, identical for pretrial

purposes.[11] Common questions of fact and law at issue in the related actions include, but are not limited to, the following:

a.      Whether the Products are defective such that they contain benzene, a known human carcinogen;

b.      Whether and when J&J had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

c.      Whether the Products provide the benefits claimed by J&J on the labeling, packaging, and/or in the course of its marketing;

d.      Whether J&J's conduct violated consumer fraud laws;

e.      Whether J&J's conduct constituted a breach of applicable warranties;

f.      Whether J&J's acts and omissions make it liable for negligence and strict products liability;

g.      Whether J&J engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class members;

h.      Whether, as a result of J&J's omissions and/or misrepresentations of material facts, Plaintiffs and putative Class members have suffered an ascertainable loss of monies and/or property and/or value; and

i.      Whether Plaintiffs and putative Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

Even a cursory review of the pleadings reveals that the factual issues to be determined in each of the actions are nearly identical, making transfer to a single forum highly appropriate. *See*

---

[11] Although all nine pending cases are substantially similar, Section 1407 does not require a "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004).

*In re Neurontin Mktg & Sales Practices Litig*., 342 F.Supp. 2d 1350, 1351 (J.P.M.L. 2004) (finding

existence of common issues to warrant transfer where "[a]ll actions were purported class actions

involving allegations that common defendants have engaged in the illegal promotion and sale of

the drug Nuerontin"); *In re Ephedra Prod. Liab. Litig.,* 314 F.Supp. 2d 1373, 1375 (J.P.M.L. 2004)

("Common factual questions arise because these actions focus on alleged side effects of ephedra-

containing products, and whether defendants knew of these side effects and either concealed,

misrepresented or failed to warn of them.").

    **2.  Consolidating the class actions will further the convenience of the parties and the witnesses.**

  Consolidation of the related class actions would likewise satisfy the second requirement of

Section 1407 because it will serve the convenience of the parties and witnesses.  At present, all of

the cases are in their infancy, having all been filed in late May, June, or July of 2021.  If these

cases continue to proceed separately, there will be substantial duplicative discovery because of the

many overlapping issues of fact and law.  Indeed, discovery in all of the related actions will

necessarily focus on documents, witnesses and other evidence pertaining to J&J's testing,

formulation, and development of the Products, J&J's knowledge of problems regarding the

Products, and any steps J&J took to address any known defects.  These subjects are complex and

highly technical and will require substantial discovery and entail significant expense.  Because

these actions arise from a common core of factual allegations, there is a strong likelihood of

duplicative discovery demands and redundant depositions.  Consolidation of the actions would

enable a single District Judge to establish a single pretrial schedule, thereby minimizing

inconvenience to witnesses and expense to parties.  *See In re Fisher-Price Rock 'N Play Sleeper*

*Marketing, Sales Practices, & Products Liab. Litigation*, 412 F.Supp.3d 1357, 1360 (J.P.M.L.

2019) (consolidation "expeditiously places all related actions before a single judge who can ensure

that pretrial proceedings are conducted in a streamlined manner leading to the just and efficient

resolution of all actions").

### 3. Transfer and consolidation will promote just and efficient conduct of the related actions.

For these same reasons, transfer and coordination of the related cases would also promote

the just and efficient adjudication of the actions.  The related actions all raise common questions

of fact and law.  Plaintiffs in each action will likely seek to depose many of the same individuals

and request production of a substantially similar set of documents.  Failure to consolidate these

actions would, therefore, result in unnecessary and duplicative discovery; witnesses would have

to appear for multiple depositions and J&J would have to negotiate and produce multiple sets of

overlapping documents.  Consolidation and coordination of the actions would avoid this needless

waste of resources and confer benefits upon both the plaintiffs as well as J&J.[12]

Also, the fact that all nine actions are seeking to certify overlapping classes opens the

possibility of inconsistent rulings on certification issues, which weighs heavily in favor of transfer

and consolidation.  Lastly, the defects at issue are complex and highly technical and will

necessarily require extensive use of experts and a substantial amount expensive discovery.  *See In*

*re Power Morcellator Products Liab. Litigation*, 140 F.Supp.3d 1351, 1353 (J.P.M.L. 2015) (the

fact that "[d]iscovery, including expert discovery, will overlap with respect to these common

issues" supports centralization).

---

[12] This Panel has routinely recognized that consolidating litigation in one court benefits ***both*** plaintiffs and defendants.  For example, pretrial transfer would reduce discovery delays and costs for plaintiffs and permit plaintiffs' counsel to coordinate their efforts and share the pretrial workload. *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned.").

To avoid the possibility of inconsistent rulings (including inconsistent determinations on class certification) and duplicative discovery, as well needless taxation on the judicial system, the actions should be consolidated before the same court. *See In re Fairlife Milk Products Marketing & Sales Practices Litigation*, 396 F.Supp.3d 1370, 1371 (J.P.M.L. 2019) ("Centralization thus will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

**B.      The Related Actions Should Be Transferred to the District of New Jersey for Coordinated or Consolidated Pretrial Proceedings Before the Honorable Freda L. Wolfson.**

In selecting a transferee district, this Panel generally considers the defendant's location and the location of relevant documents. *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Economy Marketing & Sales Practices Litig.*, 412 F.Supp.3d 1355, 1356 (J.P.M.L. 2019). As noted, J&J's headquarters is located in the District of New Jersey (where most of the discovery will necessarily focus). This factor weighs heavily in favor of transferring the related cases to the District of New Jersey. *See In re Fairlife Milk Products*, 396 F.Supp.3d at 1371 (a district "has a strong connection" to a matter when the defendant is headquartered there, and when the defendant's marketing decisions "likely were conceived and executed there").

Moreover, New Jersey is convenient for the parties and is the likely location of many of the relevant witnesses. S*ee, e.g.*, *In re Hypodermic Products Antitrust Litigation*, 408 F.Supp.2d 1356, 1357 (J.P.M.L. 2005) ("We conclude that the District of New Jersey is an appropriate forum in this docket for the following reasons: i) the district, wherein sole common defendant [] is headquartered, is an accessible location that will be geographically convenient for many of this docket's litigants, witnesses and counsel; and ii) the district is well equipped with the resources that this complex [] docket is likely to require."). The District of New Jersey and surrounding

9

region are serviced by multiple airports and all major airlines, and would be accessible and convenient for all parties, witnesses, and attorneys.

In addition to the geographic location of a court, an important consideration is whether the potential judge is qualified to handle a matter before the court. To this end, the Panel closely evaluates whether a judge possesses the experience and ability to properly adjudicate a pending action, and the Panel routinely bases its ultimate decision as to where to transfer a pending case on who the presiding judge will be. For example, in *In re Vision Serv. Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007), the panel decided to assign the "litigation to an experienced jurist with the ability to steer this litigation on a prudent course." Here, Judge Wolfson is an experienced jurist who has handled significant and high-value cases during her career.[13] She is more than capable of handling this matter and would be an excellent choice for the Panel. *See, e.g., In re Plavix Marketing, Sales Practices and Products Liability Litigation (No. II)*, 923 F.Supp.2d 1376, 1380 (J.P.M.L. 2013) (assigning MDL proceeding to Judge Wolfson and observing "[s]he has served as a transferee judge in three MDLs); *In re Vonage Marketing and Sales Practices*, 505 F.Supp.2d 1375, 1377 (J.P.M.L. 2007) (concluding the District of New Jersey is an appropriate transferee forum and centralizing the actions before Judge Wolfson).

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Panel transfer the above-listed class actions and any subsequently filed cases raising similar claims to the District of New Jersey for coordinated pretrial proceedings before the Honorable Freda L. Wolfson.

---

[13] *See, e.g., Securities Inv'r Protection Corp. v. Bernard L. Madoff Invest. Securities LLC*, No. 1:17-cv-4952, 2017 WL 4838575 (S.D. N.Y. Oct. 24, 2017).

Dated: July 29, 2021

Respectfully Submitted,

/s/ *Jonathan Shub*

Jonathan Shub
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

Gary E. Mason
David K. Lietz
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com
dlietz@masonllp.com

*Attorneys for Movant-Plaintiffs Melissa Jimenez
and Catalina Ocampo*

11