CONSENT

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:21-cv-04869-JD

Brennan et al v. Johnson & Johnson Consumer, Inc. et al
Assigned to: Judge James Donato
Relate Case Cases: 3:21-cv-05419-JD
                   3:21-cv-05524-JD
Case in other court: Alameda County Superior Court,
                   RG21101025
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 06/24/2021
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Katherine Brennan**

represented by **Kiley Lynn Grombacher**
Bradley Grombacher, LLP
31365 Oak Crest Drive
Suite 240
Westlake Village, CA 91361
805-270-7100
Fax: 805-270-7589
Email:
kgrombacher@bradleygrombacher.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Jason Richards**
Aylstock, Witkin, Kreis and Overholtz,
PLLC
17 E. Main Street
Suite 200
Pensacola, FL 32502
850-202-1010
Fax: 850-916-7449
Email: JRichards@awkolaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michelle Mang**

represented by **Kiley Lynn Grombacher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Jason Richards**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Johnson & Johnson Consumer, Inc.**          represented by **Andrew D Cohen**
Patterson Belknap Webb and Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
United Sta
212-336-2000
Fax: 212-336-2222
Email: acohen@pbwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Barbara Louise Lyons**
80 El Camino Real, Unit D
Burlingame, CA 94010
(650) 740-9846
Email: BLyonsLaw@gmail.com
*TERMINATED: 08/02/2021*

**Brian H. Chun**
Lafayette & Kumagai LLP
1300 Clay Street, Suite 810
Oakland, CA 94612
(415) 357-4600
Fax: (415) 357-4605
Email: bchun@lkclaw.com
*ATTORNEY TO BE NOTICED*

**Jonah M Knobler**
Patterson Belknap Webb and Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Email: jknobler@pbwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Saisruthi S. Paspulati**
Lafayette & Kumagai LLP
1300 Clay Street, Suite 810
Oakland, CA 94612
415-357-4600
Email: spaspulati@lkclaw.com
*ATTORNEY TO BE NOTICED*

**Steven A. Zalesin**
Patterson Belknap Webb and Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
Email: sazalesin@pbwt.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gary T. Lafayette**
Lafayette & Kumagai LLP
1300 Clay Street, Suite 810
Oakland, CA 94612
(415) 357-4600
Fax: (415) 357-4605
Email: glafayette@lkclaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Neutrogena Corporation**

V.

**Movant**

**George B Rafal**                   represented by  **Timothy Paul Rumberger**
                                     Law Offices of Timothy P. Rumberger
                                     1339 Bay Street
                                     Alameda, CA 94501
                                     510-841-5500
                                     Fax: 510-521-9700
                                     Email: tim@rumbergerlaw.com
                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2021 | 1 | NOTICE OF REMOVAL from Alameda County Superior Court. Their case number is RG21101025. (Filing fee $402 receipt number 0971-16112149). Filed byJohnson & Johnson Consumer, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Declaration of Matthew Plugues, # 6 Declaration of Jennifer Sheehy, # 7 Civil Cover Sheet)(Lafayette, Gary) (Filed on 6/24/2021) (Entered: 06/24/2021) |
| 06/24/2021 | 2 | Certificate of Interested Entities by Johnson & Johnson Consumer, Inc. (Lafayette, Gary) (Filed on 6/24/2021) (Entered: 06/24/2021) |
| 06/25/2021 | 3 | MOTION for leave to appear in Pro Hac Vice *Application for Admission of Attorney Pro Hac Vice (Civil Local Rule 11-3)* ( Filing fee $ 317, receipt number 0971-16114267.) filed by KATHERINE BRENNAN, Michelle Mang. (Attachments: # 1 Exhibit Certificate of Good Standing)(Richards, R.) (Filed on 6/25/2021) (Entered: 06/25/2021) |
| 06/25/2021 | 4 | Case assigned to Magistrate Judge Kandis A. Westmore. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing |

| | | |
|---|---|---|
| | | (NEF) within two business days. Consent/Declination due by 7/9/2021. (haS, COURT STAFF) (Filed on 6/25/2021) (Entered: 06/25/2021) |
| 06/25/2021 | 5 | CERTIFICATE OF SERVICE by Johnson & Johnson Consumer, Inc. (Lafayette, Gary) (Filed on 6/25/2021) (Entered: 06/25/2021) |
| 06/25/2021 | 6 | CERTIFICATE OF SERVICE by Johnson & Johnson Consumer, Inc. (Lafayette, Gary) (Filed on 6/25/2021) (Entered: 06/25/2021) |
| 06/28/2021 | 7 | **ORDER by Magistrate Judge Kandis A. Westmore Granting 3 Motion for Pro Hac Vice.(amgS, COURT STAFF) (Filed on 6/28/2021) (Entered: 06/28/2021)** |
| 07/06/2021 | 8 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number 0971-16145447.) filed by Johnson & Johnson Consumer, Inc.. (Attachments: # 1 Certificate of Good Standing)(Zalesin, Steven) (Filed on 7/6/2021) (Entered: 07/06/2021) |
| 07/06/2021 | 9 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number 0971-16145519.) filed by Johnson & Johnson Consumer, Inc.. (Attachments: # 1 Certificate of Good Standing)(Knobler, Jonah) (Filed on 7/6/2021) (Entered: 07/06/2021) |
| 07/06/2021 | 10 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number 0971-16145572.) filed by Johnson & Johnson Consumer, Inc.. (Attachments: # 1 Certificate of Good Standing)(Cohen, Andrew) (Filed on 7/6/2021) (Entered: 07/06/2021) |
| 07/07/2021 | 11 | **ORDER by Magistrate Judge Kandis A. Westmore granting 8 Motion for Pro Hac Vice as to Steven A. Zalesin. (kcS, COURT STAFF) (Filed on 7/7/2021) (Entered: 07/07/2021)** |
| 07/07/2021 | 12 | **ORDER by Magistrate Judge Kandis A. Westmore granting 9 Motion for Pro Hac Vice as to Jonah M. Knobler. (kcS, COURT STAFF) (Filed on 7/7/2021) (Entered: 07/07/2021)** |
| 07/07/2021 | 13 | **ORDER by Magistrate Judge Kandis A. Westmore granting 10 Motion for Pro Hac Vice as to Andrew D. Cohen. (kcS, COURT STAFF) (Filed on 7/7/2021) (Entered: 07/07/2021)** |
| 07/09/2021 | 14 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Johnson & Johnson Consumer, Inc... (Lafayette, Gary) (Filed on 7/9/2021) (Entered: 07/09/2021) |
| 07/09/2021 | 15 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Katherine Brennan, Michelle Mang.. (Grombacher, Kiley) (Filed on 7/9/2021) (Entered: 07/09/2021) |
| 07/29/2021 | 16 | NOTICE by George B Rafal *of Joinder in Administrative Motion to Relate Cases* (Attachments: # 1 Declaration)(Rumberger, Timothy) (Filed on 7/29/2021) (Entered: 07/29/2021) |
| 07/30/2021 | | Electronic filing error. Incorrect event used. The correct event ca n be found at: Civil Events > Other Filings > Other Documents > ; Joinder. [err101] Incorrect PDF atta ched. [err201] The correct event is Joinder. Document filed in wrong case. [err401] Please re-file in its entirety. Re: 16 Notice (Other) filed by George B Rafal (jlgS, COURT STAFF) (Filed on 7/30/2021) (Entered: 07/30/2021) |
| 08/02/2021 | 17 | NOTICE of Change In Counsel by Barbara Louise Lyons (Lyons, Barbara) (Filed on 8/2/2021) (Entered: 08/02/2021) |
| 08/03/2021 | 18 | MOTION to Relate Case *Plaintiff's Administrative Motion to Relate Cases Pursuant to Civil Local Rule 3-12* filed by Katherine Brennan, Michelle Mang. (Grombacher, Kiley) (Filed on 8/3/2021) (Entered: 08/03/2021) |
| 08/10/2021 | 19 | **ORDER by Magistrate Judge Kandis A. Westmore Relating Cases and Reassignment** |

| | | |
|---|---|---|
| | | to a District Judge.(amgS, COURT STAFF) (Filed on 8/10/2021) Modified on 8/10/2021 (amgS, COURT STAFF). (Entered: 08/10/2021) |
| 08/11/2021 | 20 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge James Donato for all further proceedings. Magistrate Judge Kandis A. Westmore no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.Signed by the Clerk on 8/11/2021. (Attachments: # 1 Notice of Eligibility for Video Recording) (anjS, COURT STAFF) (Filed on 8/11/2021) (Entered: 08/11/2021)** |
| 08/12/2021 | 21 | **CASE MANAGEMENT SCHEDULING ORDER: Initial Case Management Conference set for 10/21/2021 10:00 AM in San Francisco, Courtroom 11, 19th Floor. Case Management Statement due by 10/14/2021. Signed by Judge James Donato on 8/12/2021. (lrcS, COURT STAFF) (Filed on 8/12/2021) (Entered: 08/12/2021)** |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/13/2021 07:40:15 | | |
| **PACER Login:** | pbwtmco1:2611290:0 | **Client Code:** | z9999-006008 |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cv-04869-JD |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice* application to be filed)
sazalesin@pbwt.com
Jonah M. Knobler (*pro hac vice* application to be filed)
jknobler@pbwt.com
Andrew D. Cohen (*pro hac vice* application to be filed)
acohen@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 336-2000
Facsimile:     (212) 336-2222

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
glafayette@lkclaw.com
Brian H. Chun (SBN 215417)
bchun@lkclaw.com
Barbara L. Lyons (SBN 173548)
blyons@lkclaw.com
Saisruthi Paspulati (SBN 319879)
spaspulati@lkclaw.com
1300 Clay Street, Suite 810
Oakland, CA 94612
Telephone:     (415) 357-4600
Facsimile:     (415) 357-4605

*Attorneys for Johnson & Johnson Consumer Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

KATHERINE BRENNAN and MICHELLE MANG, individually and on behalf of all others similarly situated,

                    Plaintiffs,

        vs.

NEUTROGENA CORPORATION and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.;
                    Defendants.

CASE NO.

**NOTICE OF REMOVAL**
**OF CIVIL ACTION**

Removed from the Superior Court of California, Alameda County, Case No. RG21101025

State Court action filed: May 26, 2021

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Johnson & Johnson Consumer Inc. ("JJCI")[1] hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 from the Superior Court for the State of California for the County of Alameda to the United States District Court for the Northern District of California.  JJCI is represented by the undersigned counsel and consents to this Notice of Removal.  The grounds for removal are set forth below.

1.    On May 26, 2021, Plaintiffs Katherine Brennan and Michelle Mang (together, "Plaintiffs") commenced this action by filing a Class Action Complaint ("Compl.") in the Superior Court for the State of California for the County of Alameda, captioned *Katherine Brennan and Michelle Mang, Individually and on Behalf of All Others Similarly Situated vs. Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.*, Case No. RG21-101025.

2.    On or about June 2, 2021, Plaintiffs' counsel attempted to deliver a demand letter and a courtesy copy of the Complaint, without a summons, to the General Counsel of "Johnson & Johnson Consumer Companies, Inc.," a defunct entity that no longer exists.  *See infra* ¶¶ 20-26.  Even if this entity existed, the delivery of a courtesy copy of a complaint, without formal service of process, does not start the 30-day deadline to remove.  *See Murphy Bros., Inc. v. Michetti Pipestringing, Inc.*, 526 U.S. 344, 347-48 (1999); 28 U.S.C. § 1446(b).

3.    On June 17, 2021, Plaintiffs' counsel emailed to Johnson & Johnson's legal department (at the address ServiceOfProcess@its.jnj.com), a summons made out to "Neutrogena Corporation," another entity that no longer exists, along with the Complaint in this matter, a civil cover sheet, a notice of hearing, and a notice and acknowledgment of receipt.

4.    On June 21, 2021, Plaintiffs' counsel emailed to Johnson & Johnson's legal department (at the address ServiceOfProcess@its.jnj.com) file-stamped copies of the original

---

[1] The entities named as defendants in the Complaint, Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc., no longer exist.  Johnson & Johnson Consumer Inc. is the sole proper defendant in this action.  *See infra* ¶¶ 20-26.

summons, Complaint, exhibits to the Complaint, and civil case cover sheet; a notice of hearing issued by the state court dated June 9, 2021; a non-file-stamped document styled as an Amended Complaint in this matter; a non-file-stamped document styled as a request for dismissal without prejudice of Defendant Johnson & Johnson Consumer Companies, Inc. in this matter; and a non-file-stamped declaration in support of the aforementioned request for dismissal.  This email was again made out to "Neutrogena Corporation," an entity that does not exist.

5.     The non-file-stamped document styled as an Amended Complaint ("Am. Compl.") is captioned *Katherine Brennan and Michelle Mang, Individually and on Behalf of All Others Similarly Situated vs. Neutrogena Corporation*, Case No. RG21-101025.  The non-file-stamped Amended Complaint and request for dismissal are dated June 10, 2021.  It appears from the website of the Superior Court for the State of California for the County of Alameda that these documents were filed with that court on June 11, 2021, although the state court's website did not reflect until today (June 24, 2021) that any filing had been made on that date.

6.     As required by 28 U.S.C. § 1446(a), attached as Exhibit A are true and correct copies of all process, pleadings, orders, and other papers or exhibits filed in the state court.

7.     Removal is timely because the attempted email service of the Complaint and Amended Complaint on June 17 and June 21 on a nonexistent entity did not commence the time period for removal.  Even if it had commenced the time period for removal, this Notice of Removal would be timely because it has been filed within 30 days of these dates.

8.     Even though JJCI, the sole proper defendant, has not yet been served, it may still effect removal of this action.  *See Sherman v. Haynes & Boone*, No. 5:14-cv-01064, 2014 WL 4211118, at *1 (N.D. Cal. Aug 22, 2014) (noting that "a defendant may remove an action prior to receiving proper service").

9.     This action is properly removed to the United States District Court for the Northern District of California, and venue is proper in this District, because the Superior Court for the State of California for the County of Alameda, in which this action was originally filed, is within the Northern District of California.  *See* 28 U.S.C. §§ 84(a), 1441(a).

10.    Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be promptly served upon Plaintiffs' counsel, and a Notice to Adverse Party of Removal of Civil Action to Federal Court is simultaneously being filed with the Clerk of the Superior Court for the State of California for the County of Alameda.  A true and correct copy of this Notice to Adverse Party is attached as Exhibit B.

11.    The Court has jurisdiction under the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified at, *inter alia*, 28 U.S.C. §§ 1332(d), 1441(a), 1452, and 1453.  As detailed below, this is a putative class action, comprised of more than 100 members, which places in controversy more than $5 million, and there is minimal diversity between the parties.  *See infra* ¶¶ 30-47.

## **PLAINTIFFS' COMPLAINT**

12.    Plaintiffs allege that they are residents of California.  (Compl. ¶¶ 6-7; Am. Compl. ¶¶ 2-3.)  They do not expressly allege their state(s) of citizenship, as opposed to their state of residence.

13.    The Complaint purports to name "Neutrogena Corporation" and "Johnson & Johnson Consumer Companies, Inc." as defendants.  (Compl. ¶¶ 8-9.)  The Amended Complaint purports to name "Neutrogena Corporation" as a defendant.  (Am. Comp. ¶ 4.)  However, JJCI— a New Jersey corporation with its principal place of business in New Jersey—is the sole proper defendant in this action.  *See infra* ¶¶ 20-26.

14.     Plaintiffs' claims relate to certain sunscreen and sun care products (the "Sunscreen Products") manufactured, distributed, and marketed by JJCI under the brand name Neutrogena®.  Plaintiffs explicitly name 26 different Sunscreen Products in their Complaint and Amended Complaint.  They also state that they "reserve their right to include" "additional Sunscreen Products" in a future amended Complaint.  (Compl. ¶ 10 & n.2; Am. Compl. ¶ 5 & n.2.)

15.    Plaintiffs claim that certain lots of the Sunscreen Products have been adulterated with benzene, a carcinogenic chemical; that the possible presence of benzene was not disclosed

in the Sunscreen Products' advertising or labels; and, as a result, that the Sunscreen Products were misbranded, adulterated, and/or falsely advertised.  (Compl. ¶¶ 1, 14-23, 38, 57-58; Am. Compl. ¶¶ 1, 9-18, 33, 52-53.)

16.     Plaintiffs contend that they and other consumers have suffered injury because they would not have purchased the Sunscreen Products had they known that there was allegedly a risk the Sunscreen Products could contain benzene.  (Compl. ¶¶ 47, 54; Am. Compl. ¶¶ 43, 49.)

17.     In their Complaint, Plaintiffs purport to assert claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*. (Count I), and California's False Advertising Law, Cal. Bus. & Prof. Code §17500 *et seq*. (Count II).  In their Amended Complaint, Plaintiffs assert those same claims, and purport to bring additional claims under California's Consumers Legal Remedies Act (the "CLRA"), Cal. Bus. & Prof. Code §1750, *et seq.* (Count III), and various California common law theories (Counts IV-IX).

18.     Plaintiffs seek to litigate their claims on behalf of themselves and a proposed class defined as "[a]ll consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption." (Compl. ¶ 25; Am. Compl. ¶ 20.)

19.     Among other forms of relief, Plaintiffs seek restitution, disgorgement, actual and statutory damages, injunctive relief, a corrective advertising campaign, a mandatory product recall, other unspecified equitable relief, declaratory relief, attorney's fees, costs of litigation, and pre- and post-judgment interest. (Compl. Prayer for Relief; Am. Compl. Prayer for Relief.)

### JJCI IS THE SOLE PROPER DEFENDANT

20.     Plaintiffs' Complaint purports to name as defendants both "Neutrogena Corporation" and "Johnson & Johnson Consumer Companies, Inc." (together, the "Defunct Entities").  Plaintiffs' Amended Complaint names only "Neutrogena Corporation" as a defendant.  But there are no entities by either of those names.

21.     On June 29, 2015, pursuant to a multi-step restructuring transaction, both of the

1    Defunct Entities merged into JJCI, which was the sole surviving entity.  (Declaration of Jennifer

2    Sheehy in Support of Johnson & Johnson Consumer Inc.'s Notice of Removal, dated June 24,

3    2021 ("Sheehy Decl.") ¶¶ 3-9.)  As a result of this merger, the Defunct Entities immediately

4    ceased to exist.  *See* Cal. Corp. Code § 1107(a) (noting that "[u]pon merger . . . the separate

5    existence of the disappearing corporations ceases"); *Kolker v. VNUS Med. Techs.*, No. CV 10–

6    00900–JF–PVT, 2010 WL 3059220, *3 (N.D. Cal. Aug. 2, 2010) ("[A]fter the merger and

7    complete transfer of all of its assets and liabilities to Tyco, VNUS ceased to exist as a separate

8    legal entity and thus could not properly be joined as a party to the instant action." (citation

9    omitted)).

10           22.    Records accessible through the California Secretary of State's public website

11   reflect that, as of December 2, 2015, the entity formerly known as Neutrogena Corporation had

12   surrendered its right and authority to transact business in the State of California and had revoked

13   its designation of agent for service of process in California.  A true and correct copy of that

14   Certificate of Surrender of Right to Transact Intrastate Business is attached hereto as Exhibit C.

15           23.    Even though Plaintiffs do not plead this merger transaction in the Complaint or

16   Amended Complaint, the Court may consider this information for purposes of assessing its

17   subject-matter jurisdiction, because federal courts are not limited to the face of the complaint,

18   and may receive and consider summary judgment-type evidence when assessing their

19   jurisdiction.  *See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80-

20   81 (2d Cir. 2005) ("It is . . . well established that when the question is subject matter jurisdiction,

21   the court is permitted to rely on information beyond the face of the complaint."); *Kelly v. Verizon

22   Pa., LLC*, No. 16-5672, 2019 WL 558100, at *8 (E.D. Pa. Feb. 12, 2019) (in CAFA case, noting

23   that "the jurisdictional inquiry does not end at review of the pleadings, but also permits the

24   parties to establish or disprove jurisdictional facts through an evidentiary showing").

25           24.    This merger transaction occurred almost two years before the start of the

26   purported class period alleged in the Complaint and Amended Complaint (*i.e.*, May 25, 2017),

27   and well before any of the conduct or events alleged.  Therefore, all of the conduct challenged in

28                                                  **-6-**

this case, and any liability that may exist as a result of that conduct, was committed or incurred by JJCI in the first instance, and not by the Defunct Entities.

25.     Moreover, even if any of the relevant conduct or liability was committed or incurred by the Defunct Entities in the first instance, "[u]pon merger . . . the surviving corporation"—here, JJCI—automatically "succeed[s], without other transfer, to all the rights and property of each of the disappearing corporations and [is] subject to all the debts and liabilities of each *in the same manner as if the surviving corporation had itself incurred them*."  Cal. Corp. Code § 1107(a) (emphasis added).  In other words, any liability that the Defunct Entities might have incurred before the merger now belongs solely to JJCI by operation of law.

26.     Consequently, the sole proper defendant in this action is JJCI.  The Defunct Entities have no legal existence; they cannot be sued; and they cannot be held liable to Plaintiffs or to any member of the putative class under any circumstances.  The Court should substitute JJCI in the caption of this case and treat JJCI as the only defendant in this case for all purposes.

## BASIS OF FEDERAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

27.     This action is removable to this Court because federal diversity jurisdiction exists over Plaintiffs' claims pursuant to CAFA.

28.     Congress enacted CAFA to enlarge federal jurisdiction over class actions.  CAFA applies to any civil action commenced on or after February 18, 2005.  This action was commenced on May 26, 2021, well after CAFA's effective date.

29.     CAFA provides that a putative class action against a non-governmental entity may be removed to federal court if: (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b).  As set forth below, each of these requirements is satisfied.

A.      **There Are More Than 100 Putative Class Members**

30.      CAFA's first requirement, that the proposed class contain at least 100 members, is satisfied.  *See* 28 U.S.C. § 1332(d)(5).

31.      Plaintiffs' proposed class is defined as "[a]ll consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption."  (Compl. ¶ 25; Am. Compl. ¶ 20.)

32.      Plaintiffs acknowledge that the members of the class are "numerous" and state that they believe the proposed class contains "thousands of purchasers."  (Compl. ¶ 26; Am. Compl. ¶ 21.)

33.      Moreover, as discussed below, retail sales of the Sunscreen Products in California during the class period exceed $108 million.  Common sense dictates that the average putative class member spent far less than $1.08 million on sunscreen and sun care products during the class period.  It is therefore reasonable to assume that there are far more than 100 members in the putative class.

B.      **Minimal Diversity Exists Between The Parties**

34.      CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, is also satisfied.  *See* 28 U.S.C. § 1332(d)(2).

35.      Plaintiffs purport to represent a class of "[a]ll consumers who purchased [Sunscreen Products] in the State of California from May 25, 2017 to the present . . . ."  (Compl. ¶ 25; Am. Compl. ¶ 20.)  As such, it is reasonable to assume that at least one member of the putative class is a citizen of California.  *See Flores v. Chevron Corp.*, No. 11-cv-2551-JHN-FMOx, 2011 WL 2160420, at *3 (C.D. Cal. May 31, 2011) (finding it reasonable to conclude "that if a [class action] complaint asserts that the case is brought on behalf of California purchasers," numerous class members are "California citizens").

36.      On the defendants' side, only the citizenship of JJCI—and not the former citizenship of the Defunct Entities—is relevant to the diversity-of-citizenship analysis.  *See Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (noting that the citizenship of a

1 company that ceases to exist as a result of a merger is irrelevant to diversity jurisdiction, and that

2 the citizenship of the surviving company controls); *accord Kelly*, 2019 WL 558100, at *4

3 ("Under well-settled law, when two or more corporations merge, 'the citizenship of the surviving

4 entity is controlling [in the jurisdictional analysis]; the citizenship of the predecessor company

5 becomes irrelevant.'" (quoting 13F Charles A. Wright et al., Federal Practice and Procedure §

6 3623 (3d ed. 2009))).

7   37. At the time this lawsuit was filed, and at all other times relevant to this lawsuit,

8 JJCI—the sole proper defendant—was and has been a New Jersey corporation with its principal

9 place of business in New Jersey.  (*See* Sheehy Decl. ¶¶ 9-10.)  Thus, JJCI is a citizen of New

10 Jersey.  *See* 28 U.S.C. § 1332(c)(1).

11   38. Diversity of citizenship therefore exists between at least one proposed class

12 member and JJCI, satisfying 28 U.S.C. § 1332(d)(2).

13    **C. The Amount In Controversy Exceeds $5 Million**

14   39. CAFA's final requirement—that the amount in controversy, exclusive of interest

15 and costs, exceed $5 million—is also satisfied.  *See* 28 U.S.C. § 1332(d)(2).

16   40. Although JJCI disputes the allegations in the Complaint and Amended Complaint

17 and denies all liability and damages, Plaintiffs' allegations and prayer for relief, irrespective of

18 their merits, place in controversy an amount greater than $5 million.

19   41. Where, as here, the complaint does not set forth a specific sum of damages

20 sought, a defendant need only make a "plausible allegation" that the amount in controversy

21 exceeds $5 million.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

22 The defendant need not make "evidentiary submissions" to establish the amount in controversy,

23 but a district court may consider "summary judgment-type evidence" if the defendant elects to

24 offer it.  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

25   42. Here, Plaintiffs purport to represent a class defined as "[a]ll consumers who

26 purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May

27 25, 2017 to the present for personal use or consumption."  (Compl. ¶ 25; Am. Compl. ¶ 20.)  On

28

behalf of this putative class, Plaintiffs seek, *inter alia*, "restitution" of "all monies spent on the Sunscreen Products" during the stated class period.  (Compl. ¶¶ 54, 61, Prayer for Relief F-G; Am. Compl. ¶¶ 49, 56, Prayer for Relief F-G.)

43.     From May 25, 2017 (*i.e.*, the start of the class period) through May 29, 2021, the total retail sales of the 26 Sunscreen Products named in the Complaint and Amended Complaint within the state of California exceeded $108 million.  (*See* Declaration of Matthew Plugues in Support of Johnson & Johnson Consumer Inc.'s Notice of Removal, dated June 23, 2021 ¶ 7.) CAFA's $5 million amount-in-controversy requirement, therefore, is satisfied more than 21 times over on the basis of Plaintiffs' restitution demand alone, without considering any of their other requested relief.

44.     Plaintiffs also seek injunctive relief, including a prohibition of certain advertising, a corrective advertising campaign, and a mandatory product recall.  (Compl. ¶¶ 53, 61, Prayer for Relief B-E; Am. Compl. ¶¶ 53, 56, Prayer for Relief B-E.)  It is common sense that complying with these demands would impose millions of dollars of costs on, and cause substantial lost profits to, JJCI.  These sums are also included in the amount in controversy, driving it even further above $5 million.  *See Tuong Hoang v. Supervalu Inc.,* 541 F. App'x 747, 747-48 (9th Cir. 2013); *see also Int'l Padi, Inc. v. Diverlink*, No. 03-56478, 2005 U.S. App. LEXIS 14234, at *3-4 (9th Cir. July 13, 2005) ("[I]n determining the amount in controversy, we may also include the value of the requested injunctive relief to either party.").

45.     Plaintiffs also seek payment of attorney's fees (Compl. Prayer for Relief I; Am. Compl. Prayer for Relief I), which further increases the amount in controversy above $5 million. *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 n.4 (9th Cir. 2018) ("The possibility that the putative class members could receive an award of attorneys' fees buttresses our conclusion that the amount in controversy exceeds $5 million."); *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (in putative class action removed under CAFA, finding it "reasonable to assume that [the named plaintiff's] attorney would seek fees equal to 25 percent of the amount in controversy if he were to prevail").

46.     Plaintiffs, in their Amended Complaint, purport to add causes of action that sound in strict product liability (Counts VIII-IX).  These causes of action appear to seek compensation for alleged personal injuries.  (*See, e.g.*, Am. Compl. ¶ 91 ("Plaintiffs and the Class were injured by the use of the Sunscreen Products . . . because benzene is a known carcinogen that is absorbed through the skin."); *id.* ¶ 97 ("Plaintiffs and the Class suffered injuries from exposure to benzene.").)  Plaintiffs' apparent attempt to seek personal injury damages on behalf of themselves and a statewide class of consumers, in addition to the economic damages already discussed, further confirms that the total amount in controversy exceeds $5 million.

47.     Accordingly, JJCI has plausibly alleged that the amount in controversy, exclusive of interest and costs, far exceeds CAFA's $5 million jurisdictional threshold.

### D.     None of CAFA's Jurisdictional Exceptions Applies Here

48.     To effect removal, JJCI's only burden is to plausibly allege that CAFA's three jurisdictional requirements are met.  JJCI does not have the burden to allege or prove the *inapplicability* of CAFA's jurisdictional exceptions found in 28 U.S.C. § 1332(d)(3) and (d)(4).  The burden of asserting and proving the applicability of those exceptions lies squarely with Plaintiffs.  *See Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).

49.     For the avoidance of doubt, however, none of CAFA's jurisdictional exceptions could apply in this case.

50.     28 U.S.C. § 1332(d)(4)(A)—the so-called "local controversy" exception— requires a district court to decline jurisdiction over a removed class action under certain circumstances.  However, there are at least three reasons why the exception does not apply here.

51.     First, for the "local controversy" exception to apply, there must be a defendant "who is a citizen of the State in which the action was originally filed"; that in-state defendant must be one "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class"; and that in-state defendant must be one "from whom significant relief is sought by members of the plaintiff class."  *Id.*

52.     These requirements are not met here.  As discussed above, the sole proper defendant, JJCI, is a citizen of New Jersey and no other state.  And although Neutrogena Corporation was formerly a citizen of California, that non-existent entity is not a proper defendant at all—let alone a defendant "whose alleged conduct forms a significant basis for the claims asserted" and "from whom significant relief is sought."  *Cf. Taylor v. FedEx Freight, Inc.*, No. 10-cv-2118-LH, 2010 WL 4316136, at *2 (N.D. Cal. Oct. 26, 2010) (finding "local controversy" exception inapplicable, even though "the actions of [a former] California entity . . . [were allegedly] at issue," because that entity had merged into a non-California entity and no longer existed).  Indeed, as noted above, Neutrogena Corporation ceased to exist almost two years before the start of the alleged class period, so none of the conduct that "forms" any "basis for the claims" asserted herein was *ever* attributable to Neutrogena Corporation.

53.     There is another reason why the "local controversy" exception does not apply here.  That exception is inapplicable if, "during the 3-year period preceding the filing of [the removed] class action," any "other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  *Id.* § 1332(d)(4)(A)(ii).

54.     Here, the same law firm that filed this action filed another, substantially identical putative class action the preceding day against the same putative defendants.  *See* Complaint, *Meredith Serota, Individually and on Behalf of All Others Similarly Situated v. Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.*, No. 0:21-cv-61103-AHS (S.D. Fla. filed May 25, 2021).  A true and correct copy of the *Serota* complaint is attached hereto as Exhibit D.

55.     Whereas the Complaint and Amended Complaint in this case purport to bring claims on behalf of a class of California consumers, the *Serota* complaint purports to assert nearly identical claims on behalf of a class of consumers from all U.S. states and territories "*excluding* California."  *Id.* ¶ 23 (emphasis added).  In other words, Plaintiffs' counsel has attempted to gerrymander a single nationwide controversy into two separate class actions in an

attempt to keep their California claims in state court.  Preventing such strategic pleading was one of CAFA's explicit goals.  *See Kendrick v. Conduent State & Loc. Sols., Inc*., 910 F.3d 1255, 1260–61 (9th Cir. 2018) (noting that "the reason for the no prior class action prerequisite to remand is to ensure that controversies given rise to multiple class actions be heard in federal court in one proceeding").

56.     There is yet another reason why the "local controversy" exception does not apply here.  Namely, that exception applies only where the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(A)(i)(III).

57.     Here, the Sunscreen Products at issue were advertised and sold on a nationwide basis—not merely in California.  Therefore, to the extent the advertising and sale of the Sunscreen Products caused any injury (which JJCI denies), that injury was distributed across the nation and did not occur "principal[ly]" in California.  *See Phillips v. Kaiser Found. Health Plan, Inc*., 953 F. Supp. 2d 1078, 1086–87 (N.D. Cal. 2011) ("If the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for [the 'local controversy'] exception, even if it were brought only as a single-state class action.  In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members [selected by the plaintiff] were injured.").

58.     28 U.S.C. § 1332(d)(4)(B)—the so-called "home state" exception—requires a district court to decline jurisdiction over a removed class action under certain circumstances.  One of the necessary prerequisites for this exception is that each of "the primary defendants" must be "citizens of the State in which the action was originally filed."  *Id.*

59.     This requirement is not met here.  As discussed above, the sole proper defendant, JJCI, is a citizen of New Jersey and no other state.  JJCI is not a "citizen[] of the State in which the action was originally filed," *i.e.*, California.  And although one of the Defunct Entities (and the sole defendant in the Amended Complaint), Neutrogena Corporation, was a citizen of

California during its lifetime, that non-existent entity, which cannot be sued and which has no

liability to putative class members as a matter of law, is not a proper defendant at all—let alone a

"primary defendant."  *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019)

(discussing criteria for determining whether a defendant is a "primary" defendant).

60.     Lastly, 28 U.S.C. § 1332(d)(3)—the so-called "interests of justice" exception—

*permits* a court to decline jurisdiction over a removed class action "in the interests of justice," in

its discretion, under certain circumstances.

61.     One necessary prerequisite for this exception is that all of "the primary

defendants" must be "citizens of the State in which the action was originally filed." *Id.*   As

explained above, this mandatory prerequisite is not met here, because JJCI—the sole proper

defendant—is not a citizen of California.

62.     Even if this mandatory prerequisite were met, the six discretionary factors

relevant to the "interests of justice" exception also militate in favor of retaining jurisdiction.  For

example, because the Sunscreen Products were advertised and sold nationwide, and are presently

the subject of Citizen Petition before the United States Food and Drug Administration, an organ

of the federal government (Compl. ¶ 12; Am. Compl. ¶ 7), the underlying controversy is a

"matter of national or interstate interest," 28 U.S.C. § 1332(d)(3)(A), and is not "local" to

California.  *See, e.g., Melissa D. Duflock Revocable Tr. v. Chevron Corp.*, No. 13-cv-3177 SJO

(SHx), 2013 WL 4236397, at *3-7 (C.D. Cal. Aug. 14, 2013) (citing Rep. 109–14, 36, 2005

U.S.C.C.A.N. 3, 35); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086

(N.D. Cal. 2011).

63.     Additionally, the existence of the related Florida class action "strongly favor[s]

the [retention] of federal jurisdiction" under the "interests of justice" exception so that "the

claims of all proposed classes [can] be handled efficiently on a coordinated basis" by the federal

courts.  S. Rep. 109–14, at 38; *see* 28 U.S.C. § 1332(d)(3)(F).

64.     Likewise, the attempt of Plaintiffs' counsel to gerrymander its claims into two

nearly identical actions "in a manner that seeks to avoid Federal jurisdiction" weighs heavily

against remand under the "interests of justice" exception.  *Id.* § 1332(d)(3)(C).

65.     In sum, although JJCI does not bear the burden of establishing that CAFA's jurisdictional exceptions are inapplicable, JJCI has nonetheless shown their inapplicability.

## **CONCLUSION**

66.     For the foregoing reasons, this action is properly removed to this Court.

67.     JJCI reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses, including those available under the Federal Rule of Civil Procedure 12.

**WHEREFORE**, JJCI, the sole proper defendant in this action, respectfully removes this action from the Superior Court for the State of California for the County of Alameda to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being contemporaneously filed with the Superior Court of the State of California, County of Alameda and served upon Plaintiffs' counsel.


DATED:  June 24, 2021          PATTERSON BELKNAP WEBB & TYLER LLP

LAFAYETTE & KUMAGAI LLP



By:      /s/ Gary T. Lafayette (CA Bar No. 88666)



*Attorneys for Johnson & Johnson Consumer Inc.*

12793571

# EXHIBIT A



22817364

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
NEUTROGENA CORPORATION and JOHNSON &
JOHNSON CONSUMER COMPANIES, INC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
KATHERINE BRENNAN and MICHELLE MANG, Individually and on Behalf of
All Others Similarly Situated,

</td><td>

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
**ALAMEDA COUNTY**

MAY 26 2021

CLERK OF THE SUPERIOR COURT
By

</td></tr>
</table>

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las costas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr><td>

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Alameda County Superior Court
1225 Fallon Street, Oakland, CA 94612

</td><td>

CASE NUMBER: *(Número del Caso):*
RG21101029

</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sin-Ting Mary Liu, Aylstock, Witkin, Kreis & Overholtz, PLLC 17 East Main Street, Suite 200, Pensacola, FL 32502; (850) 202-1010

<table>
<tr><td>

DATE:
*(Fecha)*        MAY 26 2021

</td><td>Clerk, by
*(Secretario)*        Darrell G. Drew</td><td>, Deputy
*(Adjunto)*</td></tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

<table>
<tr><td>

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

</td><td>**SUMMONS**</td><td>

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

</td></tr>
</table>

MAY 26 REC'D

22817362

AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
SIN-TING MARY LIU (282884)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: mliu@awkolaw.com

*Attorney for Plaintiffs*

**FILED**
**ALAMEDA COUNTY**

MAY 26 2021

CLERK OF THE SUPERIOR COURT
By _____
Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

KATHERINE BRENNAN and MICHELLE MANG,
Individually and on Behalf of All Others Similarly
Situated,

       Plaintiffs,

    v.

NEUTROGENA CORPORATION and JOHNSON &
JOHNSON CONSUMER COMPANIES, INC.;

    Defendants.

Case No.: RG21101025 _____

**CLASS ACTION COMPLAINT FOR:**

1. VIOLATIONS OF THE
   CALIFORNIA UNFAIR
   COMPETITION LAW; AND
2. VIOLATIONS OF THE
   CALIFORNIA FALSE
   ADVERTISING LAW

**DEMAND FOR JURY TRIAL**

1
COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiffs, Katherine Brennan and Michelle Mang ("Plaintiffs"), individually and on behalf of all others similarly situated throughout the State of California, file this Class Action Complaint ("CAC") against Defendants Neutrogena Corporation ("Neutrogena Corp.") and Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") (collectively, "Defendants"), and in support states the following:

## NATURE OF THE ACTION

1       This is a class action lawsuit by Plaintiffs, and others similarly situated, who purchased Neutrogena sunscreen products manufactured, sold and distributed by Defendants. Defendants distribute, market and sell several over-the-counter sunscreen products under their brand name "Neutrogena." Several of Defendants' Neutrogena sunscreen products have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendants' Neutrogena sunscreen products was not disclosed in the products' label, in violation of state and federal law. Plaintiffs and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this CAC for declaratory and/or injunctive relief and restitution under California Business & Professions Code §17200, *et. seq.* and §17500, *et. seq.*

3.    This CAC is brought pursuant to California Code of Civil Procedure §382. The restitution sought by Plaintiffs and the putative class members exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

4.    This Court has jurisdiction over each Defendant because (i) Defendant Neutrogena Corporation ("Neutrogena Corp.") is headquartered in 5760 West 96th Street, Los Angeles, California, and is within the jurisdiction of this Court for purposes of service of process; (ii) each Defendant is authorized to and conducts business in and across this State of California, including with respect to the sunscreen products at issue; and (iii) each Defendant otherwise has sufficient minimum contacts with and purposefully avails itself of the markets of this State, thus rendering the Superior Court's jurisdiction consistent with traditional notions of fair play and substantial justice.

5.    Venue is proper in this judicial district pursuant to California Code of Civil Procedure § 395(b) in that this action arises from an offer or provision of goods intended primary for personal use (i.e. sunscreen) and Plaintiff Katherine Brennan purchased the good(s) (i.e. sunscreen products) at issue in the County of Alameda.[1] The injuries that have been sustained by Plaintiff Katherine Brennan as a result of Defendants' illegal conduct occurred in the County of Alameda. Defendants conduct substantial business in the County of Alameda. Moreover, at all relevant times, Defendants promoted, marketed and sold their products, including the adulterated sunscreen products at issue, to purchasers in California, including the County of Alameda.

## THE PARTIES

6. Plaintiff Katherine Brennan ("Brennan") resides in Alameda, California, and at all

---

[1] *See* Exhibit A (Declaration of SIN-TING MARY LIU pursuant to California Civil Code §1780(d)).

times relevant hereto has been, a resident of the County of Alameda. In or around April 2018, Brennan purchased Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70 from Costco Wholesale in San Leandro, located in Alameda County. During that time, Brennan was unaware that Defendants' sunscreen products may be adulterated with benzene. Brennan purchased the Defendants' sunscreen product on the assumption that the labeling of these sunscreen products was accurate and that the products were unadulterated, safe and effective. Brennan would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase a product she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

7.     Plaintiff Michelle Mang ("Mang") resides in Mountain View, California, and at all times relevant hereto has been, a resident of the County of Santa Clara. Mang purchased Defendants' Cool Dry Sport Water-Resistant Sunscreen Spray SPF 50, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70, and Ultra Sheer Dry-Touch Water Resistant Sunscreen Lotion SPF 70 between 2017 and 2019 at Walmart, 600 Showers Dr., Mountain View, CA 94040 and Target, 555 Showers Dr., Mountain View, CA 94040. During these times, Mang was unaware that Defendants' sunscreen products may be adulterated with benzene. Mang purchased the Defendants' sunscreen products on the assumption that the labeling of these sunscreen products was accurate and that the products were unadulterated, safe and effective. Mang would not have purchased any of Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase sunscreen products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

8.      Defendant Neutrogena Corp. is a Delaware corporation with its headquarters at 5760 W 96th Street, Los Angeles, California 90045. Neutrogena Corp. is authorized to do business in California. Neutrogena Corp. is a subsidiary of the Johnson & Johnson conglomerate. As one of the world's leading brands of skin care hair care and cosmetics, Neutrogena Corp. distributes its products, including Neutrogena sunscreen products, throughout the United States. Neutrogena Corp's line of sunscreen products, including the adulterated sunscreen purchased by Plaintiffs and members of the putative class, are available at retail stores throughout California and the United States.

9.      Defendant Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") is a New Jersey corporation with its headquarters and principal place of business at Grandview Road, Skillman, New Jersey 08558. Johnson & Johnson, the manufacturer and/or distributor of the adulterated sunscreens, is the parent company of Neutrogena Corp.

## INTRODUCTION

10.      Defendants manufacture, market, advertise, label, distribute, and sell a variety of Neutrogena sunscreen spray/aerosol products and lotions, including:

| 1 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 110 |
| 2 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 70 |
| 3 | Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray SPF 100 |
| 4 | Neutrogena | Lotion | Beach Defense Water Plus Sun Protection Sunscreen Broad Spectrum Lotion SPF 70 |
| 5 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 50 |
| 6 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 70 |
| 7 | Neutrogena | Lotion | Healthy Defense Daily Moisturizer with Sunscreen SPF 50 |
| 8 | Neutrogena | Lotion | Hydro Boost Water Gel Lotion Sunscreen SPF 50 |

| 9 | Neutrogena | Spray | Kids Water-Resistant Sunscreen Spray Oil-Free SPF 70 |
| 10 | Neutrogena | Lotion | Oil-free Facial Moisturizer with Sunscreen SPF 15 |
| 11 | Neutrogena | Lotion | Pure & Free Baby Sunscreen Lotion SPF 50 |
| 12 | Neutrogena | Lotion | Sensitive Skin Sunscreen Lotion With SPF 60+ |
| 13 | Neutrogena | Lotion | Sheer Zinc Dry-Touch Face Sunscreen SPF 50 |
| 14 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray |
| 15 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 |
| 16 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion Broad Spectrum SPF 55 |
| 17 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 30 |
| 18 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 45 |
| 19 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 |
| 20 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen SPF 55 |
| 21 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen Spray - SPF 55 |
| 22 | Neutrogena | Lotion | Ultra Sheer Liquid Sunscreen Lotion, Broad Spectrum SPF 70 |
| 23 | Neutrogena | Lotion | Ultra Sheer Sunscreen Lotion SPF 100+ |
| 24 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ |
| 25 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 |
| 26 | Neutrogena | Spray | Wet Skin Swim Humidity Sweat Sunscreen Broad Spectrum SPF 30 (hereafter collectively referred to as "Sunscreen Products").[2] |

11.     In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical

pharmacy, ran tests on a variety of Defendants' Sunscreen Products. Specifically, Valisure tested

---

[2] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are affected by this action and Plaintiffs reserve their right to include any such products in this action.

numerous lots of Defendants' spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"); to 0.10 ppm to 2 ppm, to more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[3] Notably, benzene is not listed as an active or inactive ingredient on any of the labels of Neutrogena's Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

12.     On May 25, 2021 Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendants' sunscreen products that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352). As of this filing, the FDA has not responded to Valisure's citizen petition and Defendants have not taken any action to remove the Sunscreen Products from the market. Pursuant to § 1782 of the CLRA, Plaintiffs have provided pre-suit notice to Defendants of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed herein.[4]

13.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology

---

[3] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).
[4] *See* Exhibit B (Copy of pre-suit notice letters Defendants Neutrogena Corp. and Johnson & Johnson).

Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[5] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[6] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. ... The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[7]

Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[8] and classifies benzene as a "Class 1" solvent that should be "avoided."[9] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[10]

14.    The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[11] The FDA regulates sunscreens, including the Sunscreen Products, as over-the-

---

[5] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).
[6] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[7] *Id.* at 34.
[8] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[9] https://www.fda.gov/media/71737/download.
[10] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[11] *See generally* 21 CFR §§352.1– 352.77.

counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must

pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the
> case of sunscreen, active ingredients are the ones that are protecting
> your skin from the sun's harmful UV rays. Inactive ingredients are
> all other ingredients that are not active ingredients, such as water or
> oil that may be used in formulating sunscreens.[12]

Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen

Drug Products for Over-the-Counter Human Use,"[13] there are certain acceptable active

ingredients in products that are labeled as sunscreen.[14] Benzene, a known human carcinogen, is

not on the FDA's list of acceptable active or inactive ingredients for sunscreen products. Nor is

benzene identified as an active or inactive ingredient on any of the Sunscreen Products. Thus,

Defendants assurances in its marketing of its sunscreen products—e.g., "we set a high bar for

using ingredients...our ingredients are screened for quality..." and "your safety is our priority"

and "our [safety assurance] process never ends—we continually review our product

ingredients..."—are false and misleading.[15] Similarly, it is a false and misleading statement

when Defendants unequivocally state to consumers: "Neutrogena maintains that the sunscreen

ingredients we use are safe and effective . . . ."[16]

     15.    The governing regulations provide: "An over-the-counter sunscreen drug product

in a form suitable for topical administration is generally recognized as safe and effective and is

---

[12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[13] 21 CFR §352.10.
[14] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[15] https://safetyandcarecommitment.com/commitment?.
[16] https://www.neutrogenamd.com/sites/neutrogenahcp_us/files/20190416-fda-proposal-guide-3b.cocoon.pdf.

9
COMPLAINT

not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[17] Defendants failed to meet this standard as further described below.

16.    The manufacture of any misbranded or adulterated drug is prohibited under federal law[18] and California state law.[19]

17.    The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[20]

18.    The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[21]

19.    Among the ways a drug may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[22]

20.    A drug is misbranded:

> (a) "If its labeling is false or misleading in any particular."[23]

---

[17] 21 CFR §352.1
[18] 21 U.S.C. §331(g).
[19] *See* Cal. Health & Safety Code § 111250 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is adulterated."); Cal. Health & Safety Code § 111330 ("Any drug or device is misbranded if its labeling is false or misleading in any particular.").
[20] 21 U.S.C. §331(a); Cal. Health & Safety Code § 111305 ("It is unlawful for any person to receive in commerce any drug or device that is adulterated or to deliver or proffer for delivery any drug or device.").
[21] 21 U.S.C. §331(c); Cal. Health & Safety Code § 111305.
[22] 21 U.S.C. §351(a)(2)(B). *See* Cal. Health & Safety Code § 111250 ("Any drug or device is adulterated if it consists, in whole or in part, of any filthy, putrid, or decomposed substance."); Cal. Health & Safety Code § 111255 ("Any drug or device is adulterated if it has been produced, prepared, packed, or held under conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health.").
[23] 21 U.S.C. §352(a)(1). California law similarly states: "Any drug or device is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 111330. *See also* Cal. Health & Safety Code § 111285 ("Any drug or device is adulterated if its . . . purity of quality is below, that which it is represented to possess.").

(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[24]

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[25]

21.     If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[26]

22.     Because Defendants did not disclose benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiffs and the putative class members, the Sunscreen Products are adulterated and misbranded.

23.     Defendant wrongfully advertised and sold the Sunscreen Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

---

[24] 21 U.S.C. §352(e)(1)(A)(ii); *see* Cal. Health & Safety Code § 111355(a): "Any drug is misbranded unless its label bears . . . all of the following information:... (3) For nonprescription drugs, the quantity or proportion of each active ingredient and the established name of each inactive ingredient in accordance with Sections 502(e)(1)(A)(ii) and (iii) of the federal act (21 U.S.C. 352(e)(1)(A)(ii) and (iii))."
[25] 21 U.S.C. §352(j); *see* Cal. Health & Safety Code § 111400 ("Any drug or device is misbranded if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling.").
[26] "The labeling of a drug may be misleading by reason (among other reasons) of: ... (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See* Cal. Health & Safety Code § 111355(b) ("Any drug is misbranded unless its label bears . . . all of the following information: The requirement for stating the quantity of the active ingredients of any drug . . . .").



24.    Plaintiffs have standing to represent members of the putative class because there

is sufficient similarity between the specific Sunscreen Products purchased by the Plaintiffs and

the other Sunscreen Products not purchased by Plaintiffs. Specifically, each and every one of the

Sunscreen Products (i) are marketed in substantially the same way – as "Sunscreen"— and (ii)

fail to include labeling indicating to consumers that the Sunscreen Products may contain benzene

as an active or inactive ingredient. Accordingly, the misleading effect of all of the sunscreen

products' labels are substantially the same.

## CLASS ALLEGATIONS

25.     Plaintiffs brings this action under California Code of Civil Procedure §382 as a class action and seeks certification of the following class against Defendants for violations of California state laws and federal laws (the "Class"):

> All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption.

> Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Sunscreen Product(s). Also excluded from this Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

26.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains thousands of purchasers of the Sunscreen Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

27.     Plaintiffs' claims are typical to those of all class members because members of the class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive sunscreen claims that accompanied each and every Sunscreen Product product in the Neutrogena collection. Plaintiffs are advancing the same claims and legal theories on behalf of himself and all members of the Class.

28.     Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

    (a)    whether Defendant's Sunscreen Products contained benzene;

13
**COMPLAINT**

(b)    whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

(c)    whether the alleged conduct constitutes violations of the laws asserted;

(d)    whether Defendants' alleged conduct violates public policy;

(e)    whether Defendants engaged in false or misleading advertising;

(f)    whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(g)    whether an injunction is necessary to prevent Defendants from continuing to market and sell defective and adulterated sunscreen products that contain benzene, a known human carcinogen.

29.    Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

30.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiffs and individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be

encountered in the management of this case that would preclude its maintenance as a class action.

31.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

32.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, and requiring Defendants to provide full restitution in the form of a refund of the full purchase price of the Sunscreen Products to Plaintiffs and Class members.

33.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiffs and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION

(Violations of the Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code
§ 17200, *Et Seq.* Against Defendants on Behalf of the Class)

34.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

35.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." Cal. Bus. & Prof. Code § 17200.

*Fraudulent Acts and Practices*

36.     Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL. Similarly, any advertising that is deceptive, untrue or misleading constitutes a fraudulent business act or practice under the UCL.

37.     Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their Sunscreen Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the Sunscreen Products are adulterated with benzene, a known human carcinogen.

38.     Similarly, Defendants have engaged, and continue to engage, in deceptive, untrue, and misleading advertising by "promising" to consumers, among other things, (i) that they "carefully select ingredients,"[27] (ii) that "safety is paramount,"[28] (iii) that they "avoid unnecessary and harsh ingredients,"[29] and (iv) that "the sunscreen ingredients we use are safe and effective . . . "[30] when in fact the Sunscreen Products may contain a known (but undisclosed) human carcinogen (i.e. benzene). The following image shows an example of such deceptive advertising:

---

[27] https://www.neutrogena.com/our-promise.html.
[28] https://www.neutrogena.com/our-promise.html.
[29] https://www.neutrogena.com/our-promise.html.
[30] https://www.neutrogenamd.com/sites/neutrogenahcp_us/files/20190416-fda-proposal-guide-3b.cocoon.pdf.



Carefully Selected Ingredients

At Neutrogena®, safety is paramount. What we include in our products is just as important as what we exclude from them. We strive to avoid unnecessary and harsh ingredients and we prioritize ingredients that are not only safe for your skin, but also safe for the planet, throughout the lifecycle of our products. We are committed to ingredient transparency so you can make informed decisions for your skin health.[31]

39.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

*Unlawful Acts and Practices*

40.     The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.

---

[31] https://www.neutrogena.com/our-promise.html.

41.     Defendants' conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. By representing in the labeling that the Sunscreen Products do not contain benzene when, in fact, the products may contain benzene, Defendants violated Section 5 of the FTC Act.

42.     Defendants' conduct also violates Cal. Health & Safety Code § 111730, which prohibits the sale of any misbranded product. The Sunscreen Products, that bear labeling that they did not contain benzene, are "false and misleading in any particular" in violation of Health & Safety Code § 111730.

43.     By violating the FTC Act and/or Cal. Health and Safety Code § 111730, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

*Unfair Acts and Practices*

44.     Any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an "unfair" practice under the UCL.

45.     Defendants have engaged, and continue to engage, in unfair business practices. This conduct includes representing that the Sunscreen Products do not contain benzene when in fact some do contain benzene.

46.     Defendants have engaged, and continue to engage, in conduct that violates the legislatively declared policies of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. Defendants gained an unfair advantage over its competitors, whose advertising for products must comply with the FTC Act.

47.     Defendants' conduct, including misrepresenting the safety and efficacy of the Sunscreen Products, is substantially injurious to consumers. Consumers are purchasing and, as instructed in the label, "apply[ing] liberally" sunscreen products without knowledge that there is a risk the Sunscreen Products are adulterated with a human carcinogen. Moreover, such conduct has, and continues to cause, substantial injury to consumers because consumers would not have paid for sunscreens potentially adulterated with benzene but for Defendants' false labeling, advertising, and promotion. Thus, Plaintiffs and the putative Class have "lost money or property" as required for UCL standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

48.     Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representation of the ingredients contained in the Sunscreen Products' labels and injury resulted from ordinary use of the Contaminated Products, consumers could not have reasonably avoided such injury.

49.     By committing the acts described above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

50.     As a result of the conduct described above, Defendant has been unjustly enriched at the expense of the Plaintiffs and the putative Class.

51.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code 17203.

52.     Wherefore, Plaintiffs pray for judgement against Defendants, as set forth hereafter. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Sunscreen Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

53.     In accordance with California Business & Professions Code section 17203,[32] Plaintiffs seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

54.     On behalf of Plaintiffs and the putative Class, Plaintiffs also seeks an order for the restitution of all monies spent on the Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[33] In addition, because there is a risk the Sunscreen Products contain benzene, a known human carcinogen, the measure of restitution should be rescission and full refund insofar as the Sunscreen Product products and their associated labels are worthless. But for Defendants' misrepresentations and omissions, Plaintiffs would have paid nothing for sunscreen products that have a risk of containing a known human carcinogen (i.e. benzene). Indeed, there is no discernible "market" for an over-the-counter sunscreen product that may be adulterated with a known human carcinogen. As a result, the Sunscreen Products are rendered valueless.

## SECOND CAUSE OF ACTION

(Violations of California's False Advertising Law, California Business & Professions Code §§17500, Et. Seq., Against Defendants on Behalf of the Class)

---

[32] "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.
[33] "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.
"The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

55.     Plaintiffs incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

56.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

57.     As set forth herein, Defendants' claims that their sunscreen product's ingredients do not contain benzene are false and likely to deceive the public because Defendants' Sunscreen Products did in fact contain benzene.

58.     Similarly, Defendants' advertising claims that their sunscreen product's ingredients are safe and effective are untrue or misleading because these claims fail to disclose that the Sunscreen Products may in fact be adulterated by containing a known human carcinogen -- specifically, benzene.

59.     Defendants knew, or reasonably should have known, that the claims were untrue or misleading.

60.     Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase Defendants' Sunscreen Products in the future if they can be assured that the Sunscreen Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendants may continue to advertise, promote and sell adulterated sunscreen products that deceive the public as to their ingredients and safety. Plaintiffs are thus likely to again be wronged in a similar way. For instance, if Plaintiffs encounter Defendants' Sunscreen Products in the future and there is risk those products still contain benzene, Plaintiffs may mistakenly rely on the product's label to believe that Defendants eliminated benzene when they did not.

61.     Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Sunscreen Product(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.  An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.  An order enjoining Defendants from selling the Sunscreen Products;

C.  An order enjoining Defendants from suggesting or implying that they are safe and effective for human application;

D.  An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Sunscreen Product products;

E.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.  An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, plus pre- and post-judgment interest thereon;

G.  An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.  An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.    An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

J.    An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.


DATED: May 25, 2021


By:_____

AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
SIN-TING MARY LIU (282884)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: mliu@awkolaw.com
Attorney for Plaintiff

23
COMPLAINT

# EXHIBIT A

1 | AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
2 | SIN-TING MARY LIU (282884)
  | 17 East Main Street, Suite 200
3 | Pensacola, FL 32502
  | Telephone: 850-202-1010
4 | Facsimile: 850-916-7449
  | E-mail: mliu@awkolaw.com
5 |
6 | *Attorney for Plaintiff*

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | COUNTY OF ALAMEDA

| KATHERINE BRENNAN, Individually and on Behalf of All Others Similarly Situated, | Case No.: _____ |
|---|---|
| Plaintiff, | **CLASS ACTION:** |
| v. | |
| NEUTROGENA CORPORATION and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; | DECLARATION OF SIN-TING MARY LIU PURSUANT TO CALIFORNIA CIVIL CODE §1780(d) |
| Defendants. | |

I, Sin-Ting Mary Liu, declare as follows:

1.  I am an attorney duly licensed to practice before all of the courts of the State of California. I am an attorney of the law firm of Aylstock, Witkin, Kreis & Overholtz, PLLC, the counsel of record for plaintiffs in the above-entitled action.

2.  Defendants Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc., have done and are doing business in the City and County of Alameda, California. Such business includes the distribution, marketing, and sale of numerous Neutrogena sunscreen products, including Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70.

3.  The Class Action Complaint ("CAC") filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the CAC occurred in Alameda County, California. Specifically, Plaintiff

1      Brennan purchased Beach Defense® Water + Sun Protection Sunscreen Spray Broad

2      Spectrum SPF 70 from Costco Wholesale in San Leandro, located in Alameda

3      County, California.

4  4.  I declare under penalty of perjury under the laws of the State of California that the

5      foregoing is true and correct.

6  Executed this 25 day of May 2021, at Alameda, California.

7

8

9            By: _____

10            AYLSTOCK, WITKIN, KREIS &
          OVERHOLTZ, PLLC

11            SIN-TING MARY LIU (282884)

12            17 East Main Street, Suite 200
          Pensacola, FL 32502

13            Telephone: 850-202-1010
          Facsimile: 850-916-7449

14            E-mail: mliu@awkolaw.com
          Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28



BRYAN F. AYLSTOCK (FL, AL, MS)*
JUSTIN G. WITKIN (FL, MS)
DOUGLASS A. KREIS (FL)
NEIL D. OVERHOLTZ (FL)
R. JASON RICHARDS (FL, CO)
BOBBY J. "BRAD" BRADFORD (FL, AL)
STEPHEN H. ECHSNER (FL)
D. RENÉE BAGGETT (FL)
DANIEL J. THORNBURGH (FL, MN)
NATHAN C. BESS (FL)
* States in which attorney is licensed to practice law

E. SAMUEL "SAM" GEISLER (FL, IL)
JENNIFER M. HOEKSTRA (LA)
JAMES D. BARGER (PA, NJ)
CHELSIE R. WARNER (MT, NV, WA)
S. MARY LIU (CA, FL)
SAMANTHA M. KATEN (FL, NC, CO)
CAITLYN P. MILLER (FL, AL)
D. NICOLE GUNTNER (NY)
LYDIA T. LUCIUS (AL, MO)
MARYBETH PUTNICK (DE, NJ)†
†Of counsel

17 EAST MAIN STREET, SUITE 200 · PENSACOLA, FLORIDA 32502
PHONE: (850) 202-1010 · FAX: (850) 916-7449

May 25, 2021

SENT VIA CERTIFIED MAIL
Johnson & Johnson Consumer Companies, Inc.
General Counsel
199 Grandview Road
Skillman, New Jersey 08558

  **Re: Katherine Brennan v. Neutrogena Corp., et al.**

Dear Sir or Madam:

  Our law firm represents Katherine Brennan and all other consumers similarly situated in an action against Neutrogena Corporation, Johnson & Johnson Consumer Companies, Inc. (collectively "Defendants"), arising out of, among other conduct, misrepresentation, either express or implied, by Defendants to consumers by failing to divulge to consumers that various Neutrogena sunscreen products[1] contain the ingredient benzene, a known human carcinogen.

  These claims are based on recent disclosures and information made available by Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, who performed tests on numerous lots of Defendants' Products and found that these Products contained benzene. As a

---

[1] These products include: Wet Skin Sunscreen Spray Broad Spectrum SPF 30, Wet Skin Sunscreen Spray Broad Spectrum SPF 50, Wet Skin Kids Sunscreen Spray Broad Spectrum SPF 70+, Wet Skin Sunscreen Spray Broad Spectrum SPF 85+, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70, Cool Dry Sport Water-Resistant Sunscreen Spray, SPF 50, 5 oz,, Cool Dry Sport Water-Resistant Sunscreen Spray, SPF 70, 5 oz., Ultra Sheer® Sunscreen Spray, SPF 30, Ultra Sheer® Sunscreen Spray, SPF 45, Neutrogena Ultra Sheer Lightweight Sunscreen Spray, SPF 70, 5 oz, Neutrogena Ultra Sheer Lightweight Sunscreen Spray, SPF 100+, 5 oz, Ultra Sheer® Face Mist Sunscreen Broad Spectrum SPF 55, Neutrogena® Beach Defense® Water + Sun Protection Spray Broad Spectrum SPF 100, 6.5oz, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 50, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 30, Cool Dry Sport Water-Resistant Sunscreen Spray, SPF 100, 5 oz, and Invisible Daily Defense Facial Mist Sunscreen SPF50 (collectively "Products"). Plaintiffs reserve the right to include other products upon completion of discovery.

result of its findings, Valisure has filed a cititzen petition with the Food and Drug Administration.

Ms. Brennan and others similarly situated purchased the Products in the Neutrogena collection unaware unaware that the Products may be adulterated with benzene. Ms. Brennan and others similarly situated would not have purchased the Products had they known they might be adulterated with benzene. The full claims, including facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

Defendants' labeling of the ingredients contained in the Products are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices. The Products' labeling does not identify benzene as an ingredient (active or inactive), even though benzene was found by Valisure to be present is present in several lots of such Products. Defendants' also advertise their Products' ingredients as safe and effective, which is false. These false labeling claims were made by Defendants either intentionally or recklessly. Failing to list benzene as an ingredient in the Products does not assist consumers; it simply misleads them. And worse, it potentially endangers consumers' health and safety by unnecessarily exposing them to a known human carcinogen.

Defendants' failure to list benzene as an ingredient in the Products violates California Civil Code § 1770(a), under the following subdivisions:

(5)     by representing that the Products have characteristics, uses and/or benefits which they do not;

(7)     by representing that the Contaminated Sunscreens were of a particular standard, quality, or grade which they are not;

(9)     by advertising the Contaminated Sunscreens with intent not to sell them as advertised; and

(16)    by representing that the Contaminated Sunscreens have been supplied in accordance with previous representations when they have not.

California Civil Code section §1770(a)(5)-(16).

Defendants' claims also constitute violations of California Business and Professions Code § 17200, *et seq.* and California Civil Code § 1750 *et seq.*

While the Class Action Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of our client and all others similarly situated that Defendants immediately correct and rectify this violation of California Civil Code § 1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information described in the enclosed Class Action Complaint. In addition, Ms. Bowen demands that Defendants offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees.

2

Plaintiff will, after 30 days from the date of this letter, amend the Class Action Complaint without leave of court, as permitted by California Civil Code § 1782, to include claims for actual damages if a full and adequate response to this letter is not received. These damage claims would include those already asserted in the enclosed Class Action Complaint as well as claims under the Consumers Legal Remedies Act. Thus, to avoid the assertion of additional claims, it is in the interest of all parties concerned that Defendants address these violations immediately.

Defendants must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

1. Identify or make a reasonable attempt to identify purchasers of the subject Products identified in footnote 1 herein;

2. Notify all such purchasers so identified that upon their request, Defendants will offer an appropriate remedy for their wrongful conduct, which will include a full refund of the purchase price paid for such Products, plus interest, costs and fees;

3. Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all the Product purchasers who so request; and

4. Cease from continuing to expressly or impliedly represent to consumers that these Products are "safe" when there is no reasonable basis for so claiming given that the Products may contain a known human carcinogen, as more fully described in the enclosed Class Action Complaint.

We await your response.

Regards,

R. Jason Richards

RJR:cd
Enclosures

3



BRYAN F. AYLSTOCK (FL, AL, MS)*
JUSTIN G. WITKIN (FL, MS)
DOUGLASS A. KREIS (FL)
NEIL D. OVERHOLTZ (FL)
R. JASON RICHARDS (FL, CO)
BOBBY J. "BRAD" BRADFORD (FL, AL)
STEPHEN H. ECHSNER (FL)
D. RENÉE BAGGETT (FL)
DANIEL J. THORNBURGH (FL, MN)
NATHAN C. BESS (FL)
* States in which attorney is licensed to practice law

E. SAMUEL "SAM" GEISLER (FL, IL)
JENNIFER M. HOEKSTRA (LA)
JAMES D. BARGER (PA, NJ)
CHELSIE R. WARNER (MT, NV, WA)
S. MARY LIU (CA, FL)
SAMANTHA M. KATEN (FL, NC, CO)
CAITLYN P. MILLER (FL, AL)
D. NICOLE GUNTNER (NY)
LYDIA T. LUCIUS (AL, MO)
MARYBETH PUTNICK (DE, NJ)†
†Of counsel

**AYLSTOCK WITKIN KREIS OVERHOLTZ**

www.AWKOLAW.com

17 EAST MAIN STREET, SUITE 200 · PENSACOLA, FLORIDA 32502
PHONE: (850) 202-1010 · FAX: (850) 916-7449

May 25, 2021

SENT VIA CERTIFIED MAIL
Neutrogena Corporation
General Counsel
5760 W 96th Street
Los Angeles, California 90045

   **Re: Katherine Brennan v. Neutrogena Corp., et al.**

Dear Sir or Madam:

   Our law firm represents Katherine Brennan and all other consumers similarly situated in an action against Neutrogena Corporation, Johnson & Johnson Consumer Companies, Inc. (collectively "Defendants"), arising out of, among other conduct, misrepresentation, either express or implied, by Defendants to consumers by failing to divulge to consumers that various Neutrogena sunscreen products[1] contain the ingredient benzene, a known human carcinogen.

   These claims are based on recent disclosures and information made available by Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, who performed tests on numerous lots of Defendants' Products and found that these Products contained benzene. As a result of its findings, Valisure has filed a citizen petition with the Food and Drug Administration.

---

[1] These products include: Wet Skin Sunscreen Spray Broad Spectrum SPF 30, Wet Skin Sunscreen Spray Broad Spectrum SPF 50, Wet Skin Kids Sunscreen Spray Broad Spectrum SPF 70+, Wet Skin Sunscreen Spray Broad Spectrum SPF 85+, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70, Cool Dry Sport Water-Resistant Sunscreen Spray, SPF 50, 5 oz,, Cool Dry Sport Water-Resistant Sunscreen Spray, SPF 70, 5 oz., Ultra Sheer® Sunscreen Spray, SPF 30, Ultra Sheer® Sunscreen Spray, SPF 45, Neutrogena Ultra Sheer Lightweight Sunscreen Spray, SPF 70, 5 oz, Neutrogena Ultra Sheer Lightweight Sunscreen Spray, SPF 100+, 5 oz, Ultra Sheer® Face Mist Sunscreen Broad Spectrum SPF 55, Neutrogena® Beach Defense® Water + Sun Protection Spray Broad Spectrum SPF 100, 6.5oz, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 50, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 30, Cool Dry Sport Water-Resistant Sunscreen Spray, SPF 100, 5 oz, and Invisible Daily Defense Facial Mist Sunscreen SPF50 (collectively "Products"). Plaintiffs reserve the right to include other products upon completion of discovery.

---

Ms. Brennan and others similarly situated purchased the Products in the Neutrogena collection unaware unaware that the Products may be adulterated with benzene. Ms. Brennan and others similarly situated would not have purchased the Products had they known they might be adulterated with benzene. The full claims, including facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

Defendants' labeling of the ingredients contained in the Products are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices. The Products' labeling does not identify benzene as an ingredient (active or inactive), even though benzene was found by Valisure to be present is present in several lots of such Products. Defendants' also advertise their Products' ingredients as safe and effective, which is false. These false labeling claims were made by Defendants either intentionally or recklessly. Failing to list benzene as an ingredient in the Products does not assist consumers; it simply misleads them. And worse, it potentially endangers consumers' health and safety by unnecessarily exposing them to a known human carcinogen.

Defendants' failure to list benzene as an ingredient in the Products violates California Civil Code § 1770(a), under the following subdivisions:

(5)     by representing that the Products have characteristics, uses and/or benefits which they do not;

(7)     by representing that the Contaminated Sunscreens were of a particular standard, quality, or grade which they are not;

(9)     by advertising the Contaminated Sunscreens with intent not to sell them as advertised; and

(16)    by representing that the Contaminated Sunscreens have been supplied in accordance with previous representations when they have not.

California Civil Code section §1770(a)(5)-(16).

Defendants' claims also constitute violations of California Business and Professions Code § 17200, *et seq.* and California Civil Code § 1750 *et seq.*

While the Class Action Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of our client and all others similarly situated that Defendants immediately correct and rectify this violation of California Civil Code § 1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information described in the enclosed Class Action Complaint. In addition, Ms. Bowen demands that Defendants offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Class Action Complaint without leave of court, as permitted by California Civil Code § 1782, to include claims for actual damages if a full and adequate response to this letter is not received. These damage claims would

2

include those already asserted in the enclosed Class Action Complaint as well as claims under the Consumers Legal Remedies Act. Thus, to avoid the assertion of additional claims, it is in the interest of all parties concerned that Defendants address these violations immediately.

Defendants must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

1. Identify or make a reasonable attempt to identify purchasers of the subject Products identified in footnote 1 herein;

2. Notify all such purchasers so identified that upon their request, Defendants will offer an appropriate remedy for their wrongful conduct, which will include a full refund of the purchase price paid for such Products, plus interest, costs and fees;

3. Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all the Product purchasers who so request; and

4. Cease from continuing to expressly or impliedly represent to consumers that these Products are "safe" when there is no reasonable basis for so claiming given that the Products may contain a known human carcinogen, as more fully described in the enclosed Class Action Complaint.

We await your response.

Regards,

R. Jason Richards

RJR:cd
Enclosures

3

22817363

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sin-Ting Mary Liu, CBN: 282884<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street, Suite 200, Pensacola, FL 32502 | |

TELEPHONE NO.: 850-202-1010    FAX NO.: 850-916-7449

ATTORNEY FOR *(Name):* Katherine Brennan (Plaintiff)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda County

STREET ADDRESS: René C. Davidson Courthouse

MAILING ADDRESS: 1225 Fallon Street

CITY AND ZIP CODE: Oakland, California 94612

BRANCH NAME:

**FILED**
**ALAMEDA COUNTY**

**MAY 26 2021**

CLERK OF THE SUPERIOR COURT

By *Darrell G. Drew*
                              Deputy

CASE NAME:

Katherine Brennan, et al. v. Neutrogena Corporation, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [✓] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000)   [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] **Counter**    [ ] **Joinder**<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | RG21101025<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel    e. [✓] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 2
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 5/25/2021

Sin-Ting Mary Liu                                       ► *[signature]*

_____                    _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-*
      *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
      *harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

Aylstock, Witkin, Kreis & Overholtz, PLLC
Attn: Liu, Sin-Ting Mary
17 East Main Street, Suite 200
Pensacola, FL  32502

Neutrogena Corporation

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| Brennan | No. <u>RG21101025</u> |
|---|---|
| Plaintiff/Petitioner(s) | |
| VS. | |
| | NOTICE OF HEARING |
| Neutrogena Corporation | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE:  07/13/2021    TIME:  03:00 PM    DEPARTMENT:  23
LOCATION:  Administration Building, Fourth Floor
                      1221 Oak Street, Oakland

Case Management Conference:
DATE:  08/10/2021    TIME:  03:00 PM    DEPARTMENT:  23
LOCATION:  Administration Building, Fourth Floor
                      1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at

**http://apps.alameda.courts.ca.gov/domainweb**.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  06/09/2021                    Chad Finke  Executive Officer / Clerk of the Superior Court

                                  By _____

                                                              Deputy Clerk

---

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

        Executed on 06/10/2021.

                                  By _____

                                                              Deputy Clerk

1 | **AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
SIN-TING MARY LIU (282884)
2 | 17 East Main Street, Suite 200
Pensacola, FL 32502
3 | Telephone: 850-202-1010
Facsimile: 850-916-7449
4 | E-mail: mliu@awkolaw.com
5
6 | **BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (174156)
7 | Kiley L. Grombacher, Esq. (245960)
Robert N. Fisher, Esq. (302919)
8 | 31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
9 | Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
10 | E-Mail: mbradley@bradleygrombacher.com
           kgrombacher@bradleygrombacher.com
11 |        rfisher@bradleygrombacher.com
12 | *Attorneys for Plaintiffs and the Putative Class*
13 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
14 | COUNTY OF ALAMEDA

| | |
|---|---|
| KATHERINE BRENNAN and MICHELLE MANG, Individually and on Behalf of All Others Similarly Situated, | Case No.: RG21-101025 |
| | *(Assigned for all purposes Hon. Judge Brad Seligman, Dept. 23)* |
| Plaintiffs, | |
| v. | **DECLARATION OF KILEY L. GROMBACHER IN SUPPORT OF REQUEST FOR DISMISSAL PURSUANT TO CALIFORNIA RULE OF COURT RULE 3.770** |
| NEUTROGENA CORPORATION and JOHNSON & JOHNSON CONSUMER COMPANIES, INC. | |
| Defendants. | *(Filed concurrently with Request for Dismissal [Proposed] Order)* |

-1-

DECLARATION OF KILEY LYNN GROMBACHER IN SUPPORT OF REQUEST FOR DISMISSAL

I, Kiley Lynn Grombacher, declare:

1.      I am an attorney licensed to practice before all courts of the State of California.  I am a member in good standing of the State Bar of California.  I am counsel for Plaintiffs Katherine Brennan, Michelle Mang ("Plaintiffs") in this proposed class action.  I have personal knowledge of the facts herein.  If called as a witness, I could and would competently testify to those facts under oath.

2.      This Declaration is filed pursuant to California <u>Rule of Court</u>, Rule 3.770, in support of the request for dismissal of Johnson & Johnson Consumer Companies, Inc.

3.      For ease of reference, and in accordance with California <u>Rule of Court</u>, Rule 3.770, this Declaration is divided into the following subsections: (A) Status of the Case; (B) Facts Regarding Plaintiffs' Claim; (C) Facts Establishing that Dismissal Should be Entered Without Notice to the Alleged Putative Class; and (D) Expertise of Plaintiffs' Counsel in Class Action Litigation.

**A.      STATUS OF THE CASE**

4.      This matter was filed by Katherine Brennan and Michelle Mang on May 26, 2021, as a proposed class action against defendants Neutrogena Corporation ("Neutrogena") and Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson," and together, "Defendants").

5.      Defendants have not yet been served in this action, Plaintiffs have not filed a Motion for Class Certification, the Court has not certified a class, and no trial date has been set.

**B.      PLAINTIFFS' CLAIMS**

6.      By this action, Plaintiffs seek relief on behalf of themselves and the members of the putative class and alleges the following causes of action: California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) (the "UCL"), California's False Advertising Law, (Cal. Bus. & Prof. Code § 17500 et seq.) (the "FAL"), California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750) (the "CLRA"), unjust enrichment, negligent representation/omission, breach of express warranty, breach of implied warranty, and strict product liability for failure to warn and manufacturing defect.

7.   The claims relate to, inter alia, the sale, advertising, marketing, labeling, distribution, and manufacturing of Neutrogena sunscreen products which have been found by an independent laboratory to contain benzene (the "Sunscreen Products").

8.   Defendant Johnson & Johnson is the parent company of Defendant Neutrogena.

9.   Plaintiffs desire to dismiss Johnson & Johnson without prejudice to reasserting claims against Johnson & Johnson if Plaintiffs determine that viable claims exist against it.

10.   Plaintiffs have received no compensation in exchange for dismissal.

**C.   FACTS ESTABLISHING THAT DISMISSAL SHOULD BE ENTERED WITHOUT NOTICE TO THE ALLEGED PUTATIVE CLASS**

11.   The dismissal is without prejudice.  No class has been certified and no formal notice of the pendency of this action has been provided to the putative class members. Therefore, under the first sentence within California Rule of Court, Rule 3.770(c), notice of the dismissal does not need to be provided to the putative class.

12.   In addition, notice to the putative class of the dismissal without prejudice is not required under the second sentence within California Rule of Court, Rule 3.770(c), because this dismissal will not prejudice any putative class member.  It is my opinion that this dismissal will not prejudice any putative class member because neither the Court nor I have issued notice to putative class members of the pendency of this action.  Moreover, the action will proceed against Neutrogena as Plaintiffs' seek dismissal only as against its parent company Johnson & Johnson and said dismissal is sought without prejudice.

**D.   EXPERTISE OF PLAINTIFFS' COUNSEL IN CLASS ACTION LITIGATION**

13.   I am experienced and knowledgeable in complex and class action litigation.  I have acted as class counsel on numerous class action cases.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct. Executed this 10th day of June 2021, at Westlake Village.

Kiley Lynn Grombacher

-3-

DECLARATION OF KILEY LYNN GROMBACHER IN SUPPORT OF REQUEST FOR DISMISSAL

1  **AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
   SIN-TING MARY LIU (282884)
2  17 East Main Street, Suite 200
   Pensacola, FL 32502
3  Telephone: 850-202-1010
   Facsimile: 850-916-7449
4  E-mail: mliu@awkolaw.com

5
   **BRADLEY/GROMBACHER, LLP**
6  Marcus J. Bradley, Esq. (174156)
   Kiley L. Grombacher, Esq. (245960)
7  Robert N. Fisher, Esq. (302919)
   31365 Oak Crest Drive, Suite 240
8  Westlake Village, California 91361
   Telephone: (805) 270-7100
9  Facsimile:   (805) 270-7589
   E-Mail: mbradley@bradleygrombacher.com
10          kgrombacher@bradleygrombacher.com
            rfisher@bradleygrombacher.com
11

12 *Attorneys for Plaintiffs and the Putative Class*

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                          COUNTY OF ALAMEDA

15
   KATHERINE BRENNAN and                    Case No.:  **RG21-101025**
16 MICHELLE MANG, Individually and on
   Behalf of All Others Similarly Situated,  *(Assigned for all purposes Hon. Judge Brad*
17                                            *Seligman, Dept. 23)*
               Plaintiffs,
18
        v.                                   **REQUEST FOR DISMISSAL;**
19                                           **[PROPOSED] ORDER**

20 NEUTROGENA CORPORATION and
   JOHNSON & JOHNSON CONSUMER              *(Filed concurrently with Declaration of*
21 COMPANIES, INC.;                         *Kiley Grombacher in Support of Dismissal)*

22             Defendants.

23

24

25

26

27

28

                                    -1-

1    **TO THE COURT:**

2         Plaintiffs Katherine Brennan and Michelle Mang ("Plaintiffs") hereby submit the

3    following Request for Dismissal, which is supported by the Declaration of Kiley L. Grombacher

4    filed concurrently herewith:

5         That all claims against Johnson & Johnson Consumer Companies, Inc. be dismissed in

6    their entirety without prejudice.

7

8

9    DATED:  June 10, 2021                    **BRADLEY/GROMBACHER, LLP**

10

11                                            By:

12                                               Marcus J. Bradley, Esq.
                                                 Kiley L. Grombacher, Esq.
13                                               Robert N. Fisher, Esq.
                                                 Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR DISMISSAL; [PROPOSED] ORDER

1

**PROPOSED ORDER**

2

Good cause appearing, the Court grants Plaintiffs' Request for Dismissal as follows:

3

All claims against Johnson & Johnson Consumer Companies, Inc. are dismissed, in their

4

entirety without prejudice.

5

**IT IS SO ORDERED:**

6

7

DATED:_____

8

_____

Honorable Brad Seligman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR DISMISSAL; [PROPOSED] ORDER

1

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**

2     SIN-TING MARY LIU (282884)
      17 East Main Street, Suite 200

3     Pensacola, FL 32502
      Telephone: 850-202-1010

4     Facsimile: 850-916-7449
      E-mail: mliu@awkolaw.com

5

6     **BRADLEY/GROMBACHER, LLP**
      Marcus J. Bradley, Esq. (174156)

7     Kiley L. Grombacher, Esq. (245960)
      Robert N. Fisher, Esq. (302919)

8     31365 Oak Crest Drive, Suite 240
      Westlake Village, California 91361

9     Telephone: (805) 270-7100
      Facsimile: (805) 270-7589

10    E-Mail:  mbradley@bradleygrombacher.com

11             kgrombacher@bradleygrombacher.com
              rfisher@bradleygrombacher.com

12
      *Attorneys for Plaintiffs and the Putative Class*

13

14                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                           COUNTY OF ALAMEDA

16    KATHERINE BRENNAN and MICHELLE        Case No.:  **RG21-101025**
      MANG, Individually and on Behalf of All
17    Others Similarly Situated,             *(Assigned for all purposes Hon. Judge Brad
                                             Seligman, Dept. 23)*
18            Plaintiffs,
                                             **FIRST AMENDED CLASS ACTION**
19                                           **COMPLAINT FOR:**
          v.
20                                           1. VIOLATIONS OF THE UNFAIR
      NEUTROGENA CORPORATION                    COMPETITION LAW;
21
             Defendant.                      2. VIOLATIONS OF THE FALSE
22                                              ADVERTISING LAW

23                                           3. VIOLATIONS OF THE
                                                CONSUMERS LEGAL REMEDIES
24                                              ACT;
                                             4. UNJUST ENRICHMENT/QUASI
25                                              CONTRACT;

26                                           5. NELIGENT
                                                MISREPRESENTATION/OMISSION;
27
                                             6. BREACH OF
28                                              EXPRESSWARRANTY;

                                             7. BREACH OF IMPLIED
                                                WARRANTY;

                                             8. STRICT PRODUCT LIABILITY -
                                                FAILURE TO WARN; and

                                     1
      ─────────────────────────────────────────────
                        AMENDED COMPLAINT

9.  STRICT PRODUCT LIABILITY –
    MANUFACTURING DEFECT

**DEMAND FOR JURY TRIAL**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Katherine Brennan and Michelle Mang ("Plaintiffs"), individually and on behalf of all others similarly situated throughout the State of California, file this Class Action Complaint ("CAC") against Defendant Neutrogena Corporation ("Neutrogena Corp." or "Defendant"), and in support states the following:

## NATURE OF THE ACTION

1      This is a class action lawsuit by Plaintiffs, and others similarly situated, who purchased Neutrogena sunscreen products manufactured, sold and distributed by Defendant. Defendant distributes, markets and sells several over-the-counter sunscreen products under their brand name "Neutrogena." Several of Defendant's Neutrogena sunscreen products have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendant's Neutrogena sunscreen products was not disclosed in the products' label, in violation of state and federal law. Instead, Neutrogena misrepresented that its products were safe and did not contain unnecessary ingredients. Plaintiffs and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this CAC for declaratory and/or injunctive relief and restitution under California Business & Professions Code §17200, *et. seq.*, §17500, *et. seq.*, California Civil Code §1750, *et. seq.*, and California common law.

3.      This CAC is brought as a class action pursuant to California Code of Civil

1   Procedure §382. The restitution sought by Plaintiffs and the putative class members exceed the

2   minimal jurisdiction limits of the Superior Court and will be established according to proof at

3   trial.

4          4.      This Court has jurisdiction over Defendant because (i) Defendant is headquartered

5   in 5760 West 96th Street, Los Angeles, California, and is within the jurisdiction of this Court for

6   purposes of service of process; (ii) Defendant is authorized to and conducts business in and

7   across this State of California, including with respect to the sunscreen products at issue; and (iii)

8   Defendant otherwise has sufficient minimum contacts with and purposefully avails itself of the

9   markets of this State, thus rendering the Superior Court's jurisdiction consistent with traditional

10  notions of fair play and substantial justice.

11         5.      Venue is proper in this judicial district pursuant to California Code of Civil

12  Procedure § 395(b) in that this action arises from an offer or provision of goods intended primary

13  for personal use (i.e. sunscreen) and Plaintiff Katherine Brennan purchased the good(s) (i.e.

14  sunscreen products) at issue in the County of Alameda.[1] The injuries that have been sustained by

15  Plaintiff Katherine Brennan as a result of Defendant's illegal conduct occurred in the County of

16  Alameda. Defendant conducts substantial business in the County of Alameda. Moreover, at all

17  relevant times, Defendant promoted, marketed and sold its products, including the adulterated

18  sunscreen products at issue, to purchasers in California, including within the County of Alameda.

19                          **THE PARTIES**

20         2.      Plaintiff Katherine Brennan ("Brennan") resides in Alameda, California, and at all

21  times relevant hereto has been, a resident of the County of Alameda. In or around April 2018,

22  Brennan purchased Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum

23  SPF 70 from Costco Wholesale in San Leandro, located in Alameda County. During that time,

24  Brennan was unaware that Defendant's sunscreen products may be adulterated with benzene.

25  Brennan purchased Defendant's sunscreen product on the assumption that the labeling of these

26  sunscreen products was accurate and that the products were unadulterated, safe and effective.

27  Brennan would not have purchased Defendant's sunscreen products had she known there was a

28

---

[1] *See* Exhibit A (Declaration of SIN-TING MARY LIU pursuant to California Civil Code §1780(d)).

1  risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered

2  injury in fact when she spent money to purchase a product she would not otherwise have

3  purchased absent Defendant's misconduct, as alleged herein.

4        3.      Plaintiff Michelle Mang ("Mang") resides in Mountain View, California, and at

5  all times relevant hereto has been, a resident of the County of Santa Clara. Mang purchased

6  Defendant's Cool Dry Sport Water-Resistant Sunscreen Spray SPF 50, Beach Defense® Water +

7  Sun Protection Sunscreen Spray Broad Spectrum SPF 70, and Ultra Sheer Dry-Touch Water

8  Resistant Sunscreen Lotion SPF 70 between 2017 and 2019 at Walmart, 600 Showers Dr.,

9  Mountain View, CA 94040 and Target, 555 Showers Dr., Mountain View, CA 94040. During

10 these times, Mang was unaware that Defendant's sunscreen products may be adulterated with

11 benzene. Mang purchased Defendant's sunscreen products on the assumption that the labeling of

12 these sunscreen products was accurate and that the products were unadulterated, safe and

13 effective. Mang would not have purchased any of Defendant's sunscreen products had she

14 known there was a risk the products may contain benzene, a known human carcinogen. As a

15 result, Plaintiff suffered injury in fact when she spent money to purchase sunscreen products she

16 would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

17        4.      Defendant Neutrogena Corp. is a Delaware corporation with its headquarters at

18 5760 W 96th Street, Los Angeles, California 90045. Neutrogena Corp. is authorized to do

19 business in California. As one of the world's leading brands of skin care hair care and

20 cosmetics, Neutrogena Corp. distributes its products, including Neutrogena sunscreen products,

21 throughout the United States. Neutrogena Corp's line of sunscreen products, including the

22 adulterated sunscreen purchased by Plaintiffs and members of the putative class, are available at

23 retail stores throughout California and the United States. Below is a photograph of Plaintiff

24 Brennan's bottle of Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum

25 SPF 70, which was purchased from Costco Wholesale in San Leandro, located in Alameda

26 County, and which identifies Defendant Neutrogena Corp., Los Angeles, CA 90045 as the

27 distributor.

28



## **INTRODUCTION**

5.    Defendant manufactures, markets, advertises, labels, distributes, and sells a

variety of Neutrogena sunscreen spray/aerosol products and lotions, including:

| 1 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 110 |
|---|---|---|---|
| 2 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 70 |
| 3 | Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray SPF 100 |
| 4 | Neutrogena | Lotion | Beach Defense Water Plus Sun Protection Sunscreen Broad Spectrum Lotion SPF 70 |
| 5 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 50 |
| 6 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 70 |

AMENDED COMPLAINT

| 7 | Neutrogena | Lotion | Healthy Defense Daily Moisturizer with Sunscreen SPF 50 |
| 8 | Neutrogena | Lotion | Hydro Boost Water Gel Lotion Sunscreen SPF 50 |
| 9 | Neutrogena | Spray | Kids Water-Resistant Sunscreen Spray Oil-Free SPF 70 |
| 10 | Neutrogena | Lotion | Oil-free Facial Moisturizer with Sunscreen SPF 15 |
| 11 | Neutrogena | Lotion | Pure & Free Baby Sunscreen Lotion SPF 50 |
| 12 | Neutrogena | Lotion | Sensitive Skin Sunscreen Lotion With SPF 60+ |
| 13 | Neutrogena | Lotion | Sheer Zinc Dry-Touch Face Sunscreen SPF 50 |
| 14 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray |
| 15 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 |
| 16 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion Broad Spectrum SPF 55 |
| 17 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 30 |
| 18 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 45 |
| 19 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 |
| 20 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen SPF 55 |
| 21 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen Spray - SPF 55 |
| 22 | Neutrogena | Lotion | Ultra Sheer Liquid Sunscreen Lotion, Broad Spectrum SPF 70 |
| 23 | Neutrogena | Lotion | Ultra Sheer Sunscreen Lotion SPF 100+ |
| 24 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ |
| 25 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 |
| 26 | Neutrogena | Spray | Wet Skin Swim Humidity Sweat Sunscreen Broad Spectrum SPF 30 (hereafter collectively referred to as "Sunscreen Products").[2] |

6.      In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical

pharmacy, ran tests on a variety of Defendant's Sunscreen Products. Specifically, Valisure

_____

[2] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendant that are affected by this action and Plaintiffs reserve their right to include any such products in this action.

tested numerous lots of Defendant's spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"); to 0.10 ppm to 2 ppm, to more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[3] Notably, benzene is not listed as an active or inactive ingredient on any of the labels of Neutrogena's Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

7.      On May 25, 2021 Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendant's sunscreen products that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352). As of this filing, the FDA has not responded to Valisure's citizen petition and Defendant has not taken any action to remove the Sunscreen Products from the market. Pursuant to § 1782 of the CLRA, Plaintiffs have provided pre-suit notice to Defendant of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed herein, which Defendant has failed to do.[4]

8.      Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[5] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC").

[3] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).
[4] *See* Exhibit B (Copy of pre-suit notice letters Defendant Neutrogena Corp.).
[5] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).

AMENDED COMPLAINT

1   Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to

2   humans (Group 1), a finding that has stood since that time."[6] As noted by the IARC:

3           In the current evaluation, the Working Group again confirmed the
        carcinogenicity of benzene based on *sufficient evidence* of
4       carcinogenicity in humans, *sufficient evidence* of carcinogenicity in
        experimental animals, and *strong* mechanistic evidence. ... The
5       Working Group affirmed the strong evidence that benzene is
        genotoxic, and found that it also exhibits many other key
6       characteristics of carcinogens, including in exposed humans. In
        particular, benzene is metabolically activated to electrophilic
7       metabolites; induces oxidative stress and associated oxidative
        damage to DNA; is genotoxic; alters DNA repair or causes genomic
8       instability; is immunosuppressive; alters cell proliferation, cell
        death, or nutrient supply; and modulates receptor-mediated effects.[7]
9

10  Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in

11  humans"[8] and classifies benzene as a "Class 1" solvent that should be "avoided."[9]  FDA's

12  Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the

13  manufacture of drug substances, excipients, and drug products because of their unacceptable

14  toxicities or deleterious environmental effect."[10]

15          9.      The FDA regulates sunscreens to ensure they meet safety and effectiveness

16  standards.[11] The FDA regulates sunscreens, including the Sunscreen Products, as over-the-

17  counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must

18  pass certain tests before they are sold. As noted on FDA's website,

19          Every drug has active ingredients and inactive ingredients.  In the
        case of sunscreen, active ingredients are the ones that are protecting
20      your skin from the sun's harmful UV rays.  Inactive ingredients are
        all other ingredients that are not active ingredients, such as water or
21      oil that may be used in formulating sunscreens.[12]
22

23  [6] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017:
    Lyon, France), at p. 33.
24  [7] *Id.* at 34.
25  [8] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-
    and-other-beverages#q1.
26  [9] https://www.fda.gov/media/71737/download.
    [10] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at
27  https://www.fda.gov/media/71736/download.
    [11] *See generally* 21 CFR §§352.1– 352.77.
28  [12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-
    protect-your-skin-sun.

AMENDED COMPLAINT

1    Per the FDA regulations governing Defendant's Sunscreen Products, titled "Sunscreen

2   Drug Products for Over-the-Counter Human Use,"[13] there are certain acceptable active

3   ingredients in products that are labeled as sunscreen.[14]  Benzene, a known human carcinogen, is

4   not on the FDA's list of acceptable active or inactive ingredients for sunscreen products. Nor is

5   benzene identified as an active or inactive ingredient on any of the Sunscreen Products. Thus,

6   Defendant's assurances in its marketing of its sunscreen products—e.g., "we set a high bar for

7   using ingredients…our ingredients are screened for quality…" and "your safety is our priority"

8   and "our [safety assurance] process never ends—we continually review our product

9   ingredients…"—are false and misleading.[15] Similarly, it is a false and misleading statement

10   when Defendant unequivocally states to consumers: "Neutrogena maintains that the sunscreen

11   ingredients we use are safe and effective . . . ."[16]

12          10.     The governing regulations provide: "An over-the-counter sunscreen drug product

13   in a form suitable for topical administration is generally recognized as safe and effective and is

14   not misbranded if it meets each condition in this part and each general condition established in

15   330.1 of this chapter."[17] Defendant failed to meet this standard as further described below.

16          11.     The manufacture of any misbranded or adulterated drug is prohibited under

17   federal law[18] and California state law.[19]

18          12.     The introduction into commerce of any misbranded or adulterated drug is

19   similarly prohibited.[20]

20

21   [13] 21 CFR §352.10.
    [14] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-
22   protect-your-skin-sun.
    [15] https://safetyandcarecommitment.com/commitment?.
23   [16] https://www.neutrogenamd.com/sites/neutrogenahcp_us/files/20190416-fda-proposal-guide-
    3b.cocoon.pdf.
24   [17] 21 CFR §352.1
    [18] 21 U.S.C. §331(g).
25   [19] See Cal. Health & Safety Code § 111250 ("It is unlawful for any person to manufacture, sell,
    deliver, hold, or offer for sale any drug or device that is adulterated."); Cal. Health & Safety
26   Code § 111330 ("Any drug or device is
    misbranded if its labeling is false or misleading in any particular.").
27   [20] 21 U.S.C. §331(a); Cal. Health & Safety Code § 111305 ("It is unlawful for any person to
    receive in commerce any drug or device that is adulterated or to deliver or proffer for delivery
28   any drug or device.").

9

1

2

    13.    The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[21]

3

4

5

    14.    Among the ways a drug may be adulterated are:
If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[22]

6

7

8

9

    15.    A drug is misbranded:
(a) "If its labeling is false or misleading in any particular."[23]
(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[24]
(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[25]

10

11

    16.    If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[26]

12

13

14

    17.    Because Defendant did not disclose benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiffs and the putative class members, the Sunscreen Products are adulterated and misbranded.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[21] 21 U.S.C. §331(c); Cal. Health & Safety Code § 111305.
[22] 21 U.S.C. §351(a)(2)(B). *See* Cal. Health & Safety Code § 111250 ("Any drug or device is adulterated if it consists, in whole or in part, of any filthy, putrid, or decomposed substance."); Cal. Health & Safety Code § 111255 ("Any drug or device is adulterated if it has been produced, prepared, packed, or held under conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health.").
[23] 21 U.S.C. §352(a)(1). California law similarly states: "Any drug or device is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 111330. *See also* Cal. Health & Safety Code § 111285 ("Any drug or device is adulterated if its . . . purity of quality is below, that which it is represented to possess.").
[24] 21 U.S.C. §352(e)(1)(A)(ii); *see* Cal. Health & Safety Code § 111355(a): "Any drug is misbranded unless its label bears . . . all of the following information: (3) For nonprescription drugs, the quantity or proportion of each active ingredient and the established name of each inactive ingredient in accordance with Sections 502(e)(1)(A)(ii) and (iii) of the federal act (21 U.S.C. 352(e)(1)(A)(ii) and (iii))."
[25] 21 U.S.C. §352(j); *see* Cal. Health & Safety Code § 111400 ("Any drug or device is misbranded if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling.").
[26] "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See* Cal. Health & Safety Code § 111355(b) ("Any drug is misbranded unless its label bears . . . all of the following information: The requirement for stating the quantity of the active ingredients of any drug . . . .").

---

1    18.    Defendant wrongfully advertised and sold the Sunscreen Products without any

2  labeling to indicate to consumers that these products may contain benzene. The following image

3  shows an example:



19.    Plaintiffs have standing to represent members of the putative class because there

is sufficient similarity between the specific Sunscreen Products purchased by the Plaintiffs and

the other Sunscreen Products not purchased by Plaintiffs. Specifically, each and every one of

the Sunscreen Products (i) are marketed in substantially the same way – as "Sunscreen"— and

(ii) fail to include labeling indicating to consumers that the Sunscreen Products may contain

benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the

1  sunscreen products' labels are substantially the same.

2  **CLASS ALLEGATIONS**

3      20.    Plaintiffs brings this action under California Code of Civil Procedure §382 as a

4  class action and seeks certification of the following class against Defendant for violations of

5  California state laws and federal laws (the "Class"):

6          All consumers who purchased any lotion or spray Neutrogena
           Sunscreen Product in the State of California from May 25, 2017 to
7          the present for personal use or consumption.

8          Excluded from the Class are individuals who allege personal bodily
           injury resulting from the use of Sunscreen Product(s). Also excluded
9          from this Class are Defendant, any parent companies, subsidiaries,
           and/or affiliates, officers, directors, legal representatives,
10         employees, co-conspirators, all governmental entities, and any
11         judge, justice or judicial officer presiding over this matter.

12      21.    The members of the Class are so numerous that joinder of all members of the

13  Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains

14  thousands of purchasers of the Sunscreen Products who have been damaged by Defendant's

15  conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this

16  time.

17      22.    Plaintiffs' claims are typical to those of all class members because members of

18  the class are similarly injured through Defendant's uniform misconduct described above and

19  were subject to Defendant's deceptive sunscreen claims that accompanied each and every

20  Sunscreen Product in the Neutrogena collection. Plaintiffs are advancing the same claims and

21  legal theories on behalf of himself and all members of the Class.

22      23.    Plaintiffs' claims raise questions of law and fact common to all members of the

23  Class, and they predominate over any questions affecting only individual Class members. The

24  claims of Plaintiffs and all prospective Class members involve the same alleged defect. These

25  common legal and factual questions include the following:

26          (a)    whether Defendant's Sunscreen Products contained benzene;

27          (b)    whether Defendant's omissions are true, or are misleading, or objectively

28                  reasonably likely to deceive;

---

12

AMENDED COMPLAINT

(c)    whether the alleged conduct constitutes violations of the laws asserted;

(d)    whether Defendant's alleged conduct violates public policy;

(e)    whether Defendant's engaged in false or misleading advertising;

(f)    whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(g)    whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated sunscreen products that contain benzene, a known human carcinogen.

24.    Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

25.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiffs and individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

26.    The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

27.    Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf

1  of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent

2  Defendant from engaging in the acts described above, and requiring Defendant to provide full

3  restitution in the form of a refund of the full purchase price of the Sunscreen Products to

4  Plaintiffs and Class members.

5      28.     Unless a Class is certified, Defendant will retain monies received as a result of

6  their conduct that were taken from Plaintiffs and the Class members. Unless a Class-wide

7  injunction is issued, Defendant will continue to commit the violations alleged, and the members

8  of the Class and the general public will continue to be misled.

9              **FIRST CAUSE OF ACTION**

10  **(Violations of the Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *Et Seq.***

11          **Against Defendant on Behalf of the Class)**

12     29.     Plaintiffs incorporate by reference and re-allege each and every allegation

13  contained above, as though fully set forth herein.

14     30.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice

15  and unfair, deceptive, untrue or misleading advertising...." Cal. Bus. & Prof. Code § 17200.

16  *Fraudulent Acts and Practices*

17     31.     Any business act or practice that is likely to deceive members of the public

18  constitutes a fraudulent business act or practice under the UCL. Similarly, any advertising that

19  is deceptive, untrue or misleading constitutes a fraudulent business act or practice under the

20  UCL.

21     32.     Defendant has engaged, and continues to engage, in conduct that is likely to

22  deceive members of the public. This conduct includes representing in their labels that their

23  Sunscreen Products contain only the ingredients listed in the label, which is untrue, and failing

24  to make any mention that the Sunscreen Products are adulterated with benzene, a known human

25  carcinogen.

26     33.     Similarly, Defendant has engaged, and continues to engage, in deceptive, untrue,

27  and misleading advertising by "promising" to consumers, among other things, (i) that they

28

14
AMENDED COMPLAINT

1  "carefully select ingredients,"[27] (ii) that "safety is paramount,"[28] (iii) that they "avoid

2  unnecessary and harsh ingredients,"[29] and (iv) that "the sunscreen ingredients we use are safe

3  and effective . . ."[30] when in fact the Sunscreen Products may contain a known (but

4  undisclosed) human carcinogen (i.e. benzene). The following image shows an example of such

5  deceptive advertising:



Carefully Selected Ingredients

At Neutrogena®, safety is paramount. What we include in our products is just as important
as what we exclude from them. We strive to avoid unnecessary and harsh ingredients and
we prioritize ingredients that are not only safe for your skin, but also safe for the planet,
throughout the lifecycle of our products. We are committed to ingredient transparency so
you can make informed decisions for your skin health.[31]

---

[27] https://www.neutrogena.com/our-promise.html.
[28] https://www.neutrogena.com/our-promise.html.
[29] https://www.neutrogena.com/our-promise.html.
[30] https://www.neutrogenamd.com/sites/neutrogenahcp_us/files/20190416-fda-proposal-guide-
3b.cocoon.pdf.

[31] https://www.neutrogena.com/our-promise.html.

34.   By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

*Unlawful Acts and Practices*

35.   The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.

36.   Defendant's conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. By representing in the labeling that the Sunscreen Products do not contain benzene when, in fact, the products may contain benzene, Defendant violated Section 5 of the FTC Act.

37.   Defendant's conduct also violates Cal. Health & Safety Code § 111730, which prohibits the sale of any misbranded product. The Sunscreen Products, that bear labeling that they did not contain benzene, are "false and misleading in any particular" in violation of Health & Safety Code § 111730.

38.   Defendant's conduct also violates the CLRA and other California law as described infra.

39.   By violating the FTC Act and/or Cal. Health and Safety Code § 111730, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

*Unfair Acts and Practices*

40.   Any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an "unfair" practice under the UCL.

41.   Defendant has engaged, and continues to engage, in unfair business practices. This conduct includes representing that the Sunscreen Products do not contain benzene when in fact some do contain benzene.

42.   Defendant has engaged, and continues to engage, in conduct that violates the

16

AMENDED COMPLAINT

1    legislatively declared policies of the FTC Act against committing unfair methods of competition

2    and unfair or deceptive acts or practices in or affecting commerce. Defendant gained an unfair

3    advantage over its competitors, whose advertising for products must comply with the FTC Act.

4    43.    Defendant's conduct, including misrepresenting the safety and efficacy of the

5    Sunscreen Products, is substantially injurious to consumers. Consumers are purchasing and, as

6    instructed in the label, "apply[ing] liberally" sunscreen products without knowledge that there is

7    a risk the Sunscreen Products are adulterated with a human carcinogen. Moreover, such conduct

8    has, and continues to cause, substantial injury to consumers because consumers would not have

9    paid for sunscreens potentially adulterated with benzene but for Defendant's false labeling,

10   advertising, and promotion. Thus, Plaintiffs and the putative Class have "lost money or

11   property" as required for UCL standing, and such an injury is not outweighed by any

12   countervailing benefits to consumers or competition.

13   44.    Indeed, no benefit to consumers or competition results from Defendant's conduct.

14   Since consumers reasonably rely on Defendant's representation of the ingredients contained in

15   the Sunscreen Products' labels and injury resulted from ordinary use of the Contaminated

16   Products, consumers could not have reasonably avoided such injury.

17   45.    By committing the acts described above, Defendant has engaged in unfair

18   business acts and practices which constitute unfair competition within the meaning of the UCL.

19   46.    As a result of the conduct described above, Defendant has been unjustly enriched

20   at the expense of the Plaintiffs and the putative Class.

21   47.    An action for injunctive relief and restitution is specifically authorized under Cal.

22   Bus. & Prof. Code 17203.

23   48.    Wherefore, Plaintiffs pray for judgement against Defendant, as set forth hereafter.

24   Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the

25   Sunscreen Products is unfair because Defendant's conduct was immoral, unethical,

26   unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does

27   not outweigh the gravity of the harm to its victims.

28

1    53.    In accordance with California Business & Professions Code section 17203,[32]

2    Plaintiffs seeks an order enjoining Defendant from continuing to conduct business through

3    fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

4    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is

5    necessary.

6    49.    On behalf of Plaintiffs and the putative Class, Plaintiffs also seeks an order for the

7    restitution of all monies spent on the Sunscreen Products, which were acquired through acts of

8    fraudulent, unfair, or unlawful competition.[33] In addition, because there is a risk the Sunscreen

9    Products contain benzene, a known human carcinogen, the measure of restitution should be

10   rescission and full refund insofar as the Sunscreen Product products and their associated labels

11   are worthless. But for Defendant's misrepresentations and omissions, Plaintiffs would have paid

12   nothing for sunscreen products that have a risk of containing a known human carcinogen (i.e.

13   benzene). Indeed, there is no discernible "market" for an over-the-counter sunscreen product

14   that may be adulterated with a known human carcinogen. As a result, the Sunscreen Products

15   are rendered valueless.

16                              **SECOND CAUSE OF ACTION**

17   **(Violations of California's False Advertising Law, California Business & Professions Code §§17500,**

18                  **Et. Seq., Against Defendant on Behalf of the Class)**

19   50.    Plaintiffs incorporate by reference and re-allege each and every allegation

20   contained above, as though fully set forth herein.

21   51.    California's False Advertising Law prohibits any statement in connection with the

22   sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

23   52.    As set forth herein, Defendant's claims that its sunscreen product's ingredients do

24   _____

25   [32] "Any person who engages, has engaged, or proposes to engage in unfair competition may be
     enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

26   [33] "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has
     suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus.
27   & Prof. Code § 17204.
     "The court may make such orders or judgments . . . as may be necessary to restore to any person
28   in interest any money or property, real or personal, which may have been acquired by means of
     such unfair competition." Cal. Bus. & Prof. Code § 17203.

1  not contain benzene are false and likely to deceive the public because Defendant's Sunscreen

2  Products did in fact contain benzene.

3      53.    Similarly, Defendant's advertising claims that their sunscreen product's

4  ingredients are safe and effective are untrue or misleading because these claims fail to disclose

5  that the Sunscreen Products may in fact be adulterated by containing a known human

6  carcinogen -- specifically, benzene.

7      54.    Defendant knew, or reasonably should have known, that the claims were untrue or

8  misleading.

9      55.    Defendant's conduct is ongoing and continuing, such that prospective injunctive

10  relief is necessary, especially given Plaintiffs' desire to purchase Defendant's Sunscreen

11  Products in the future if they can be assured that the Sunscreen Products are unadulterated and

12  meet the advertising claims. Absent injunctive relief, Defendant may continue to advertise,

13  promote and sell adulterated sunscreen products that deceive the public as to their ingredients

14  and safety. Plaintiffs are thus likely to again be wronged in a similar way. For instance, if

15  Plaintiffs encounter Defendant's Sunscreen Products in the future and there is risk those

16  products still contain benzene, Plaintiffs may mistakenly rely on the product's label to believe

17  that Defendant eliminated benzene when it did not.

18      56.    Plaintiffs and members of the Class are entitled to injunctive and equitable relief,

19  and restitution in the amount they spent on the Sunscreen Product(s).

20  **THIRD CAUSE OF ACTION**

21  **(Violations of the Consumers Legal Remedies Act (the "CLRA"), Cal. Bus. & Prof. Code § 1750, *Et***

22  ***Seq.* Against Defendant on Behalf of the Class)**

23      57.    Plaintiffs incorporate by reference and re-allege each and every allegation

24  contained above, as though fully set forth herein.

25      58.    Defendant has employed or committed methods, acts, or practices declared

26  unlawful by Cal. Civ. Code §1770 in connection with the products by representing that the

27  Sunscreen Product's ingredients do not contain benzene.

28      59.    In particular, Defendant's failure to list benzene as an ingredient in the Sunscreen

1   Products and representations regarding the safety and nature of the ingredients in the Sunscreen

2   Products violates California Civil Code § 1770(a), under the following subdivisions:

3          (5)     by representing that the Sunscreen Products have characteristics, uses and/or

4          benefits which they do not;

5          (7)     by representing that the Sunscreen Products were of a particular standard, quality,

6          or grade which they are not;

7          (9)     by advertising the Sunscreen Products with intent not to sell them as advertised;

8          and

9          (16)    by representing that the Sunscreen Products have been supplied in accordance

10         with previous representations when they have not.

11         60.     Pursuant to § 1780(a) of the CLRA, Plaintiffs seeks injunctive relief in the form

12   of an order enjoining the above-described wrongful acts and practices of Defendant including,

13   but not limited to, an order enjoining Defendant from distributing such false advertising and

14   misrepresentations.  Plaintiffs, the members of the California Class, and the public at large shall

15   be irreparably harmed if such an order is not granted.

16         61.     On June 10, 2021, Plaintiffs provided notice to Defendant pursuant to California

17   Civil Code §1782 for violations of the CLRA on behalf of themselves and similarly situated

18   individuals.

19         62.     Plaintiffs are not presently seeking monetary damages under the CLRA. Plaintiffs

20   reserve the right to amend this Complaint to include a request for damages under the CLRA

21   after complying with *Civil Code* 1782(a).

22                              **FOURTH CAUSE OF ACTION**

23         **(Unjust Enrichment/Quasi Contract - Against Defendant on Behalf of the Class)**

24         63.     Plaintiffs incorporate by reference and re-allege each and every allegation

25   contained above, as though fully set forth herein.

26         64.     Plaintiffs  and members of the class conferred upon Defendant non-gratuitous

27   payments for Sunscreen Products that they would not have due to Defendant's' deceptive

28   labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits

20
AMENDED COMPLAINT

conferred by them with knowledge and awareness that, as a result of Defendant's deception, the Plaintiffs and members of the class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

65.     Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Sunscreen Products by the Plaintiffs and members of the Class, which retention under these circumstances is unjust and inequitable because the Sunscreen Products contain benzene.

66.     Retaining the non-gratuitous benefits conferred upon Defendant by the Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendant must pay restitution to the Plaintiffs and Class for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation/Omission - Against Defendant on Behalf of the Class)

67.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

68.     In making representations of fact to Plaintiffs and the Class members about the Sunscreen Products, Defendant failed to fulfill its duty to disclose that the products contained benzene.

69.     Additionally, Defendant made false representations regarding the quality and safety of the Sunscreen Products and their ingredients as detailed above.

70.     Such failure to disclose on the part of Defendant amounts to negligent omission and the representations regarding the product amount to negligent misrepresentation.

71.     Plaintiffs and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

72.     By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

///

**SIXTH CAUSE OF ACTION**

**(Breach of Express Warranty - Against Defendant on Behalf of the Class)**

73.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

74.     Defendant through its written literature and packaging, and written and media advertisement, expressly warranted that the Sunscreen Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

75.     Plaintiffs and the Class read and relied on these express warranties provided by Defendant in the packaging and written advertisements.

76.     Defendant breached its express warranties because the Sunscreen Products are defective and not reasonably safe for their intended use.

77.     Defendant knew or should have known that the Sunscreen Products did not conform to their express warranties and representations and that, in fact, the products are not safe and pose serious health risks because they contain benzene.

78.     Plaintiffs and the Class have suffered harm on account of Defendant's breach of its express warranty regarding the fitness for use and safety of the Sunscreen Products and are entitled to damages to be determined at trial.

**SEVENTH CAUSE OF ACTION**

**(Breach of Implied Warranty - Against Defendant on Behalf of the Class)**

79.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

80.     Because the Sunscreen Products contained benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Sunscreen Products are used.

81.     As alleged the Sunscreen Products were not adequately labeled and did not disclose that they contain benzene.

82.     The Sunscreen Products did not measure up to the promises or facts stated in the

1  sales literature and communications by and from Defendant.

2      83.    Defendant impliedly warranted that the Sunscreen Products were merchantable,

3  fit and safe for ordinary use.

4      84.    Defendant further impliedly warranted that the Sunscreen Products were fit for

5  the particular purposes for which they were intended and sold.

6      85.    Contrary to these implied warranties, the Sunscreen Products were defective,

7  unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose

8  for which they were sold.

9                           **EIGHTH CAUSE OF ACTION**

10  **(Strict Product Liability – Failure to Warn - Against Defendant on Behalf of the Class)**

11      86.    Plaintiffs incorporate by reference and re-allege each and every allegation

12  contained above, as though fully set forth herein.

13      87.    Defendant knew or should have known that their Sunscreen Products contained

14  benzene which is a known carcinogen.

15      88.    Defendant had a duty to warn Plaintiffs and the Class about the dangers of the

16  presence of benzene in Defendant's Sunscreen Products.

17      89.    Defendant knew that the risk of exposure to benzene from use of its products was

18  not readily recognizable to an ordinary consumer and that consumers would not inspect the

19  product for benzene content.

20      90.    Defendant did not warn Plaintiffs and the Class that the Sunscreen Products

21  contained benzene.

22      91.    Plaintiffs and the Class were injured by the use of the Sunscreen Products in a

23  manner promoted by Defendant, and in a manner that was reasonably foreseeable by Defendant

24  because benzene is a known carcinogen that is absorbed through the skin.

25      92.    Plaintiffs and the Class were justified in their reliance on Defendant's advertising

26  of the product for use as sunscreen.

27      93.    Plaintiffs and the Class are therefore entitled to damages in an amount to be

28  proven at trial.

1    ## NINTH CAUSE OF ACTION

2    **(Strict Product Liability – Manufacturing Defect - Against Defendant on Behalf of the Class)**

3    94.    Plaintiffs incorporate by reference and re-allege each and every allegation

4    contained above, as though fully set forth herein.

5    95.    The Sunscreen Products contained a manufacturing defect when they left the

6    possession of Defendant. They differ from Defendant's intended result because they contain

7    benzene.

8    96.    Plaintiffs used the products in a way that was reasonably foreseeable to

9    Defendant.

10    97.    As a result of the defects in the manufacture of the Sunscreen Products, Plaintiffs

11    and the Class suffered injuries from exposure to benzene.

12    98.    Accordingly, Plaintiffs seeks damages to be determined at trial.

13    ## PRAYER FOR RELIEF

14    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray

15    for judgment against the Defendant as to each and every count, including:

16    A.    An order declaring this action to be a proper class action, appointing Plaintiffs and

17    their counsel to represent the Class, and requiring Defendant to bear the costs of

18    class notice;

19    B.    An order enjoining Defendant from selling the Sunscreen Products;

20    C.    An order enjoining Defendant from suggesting or implying that they are safe and

21    effective for human application;

22    D.    An order requiring Defendant to engage in a corrective advertising campaign and

23    engage in any further necessary affirmative injunctive relief, such as recalling

24    existing Sunscreen Product products;

25    E.    An order awarding declaratory relief, and any further retrospective or prospective

26    injunctive relief permitted by law or equity, including enjoining Defendant from

27    continuing the unlawful practices alleged herein, and injunctive relief to remedy

28    Defendant's past conduct;

AMENDED COMPLAINT

1    F.    An order requiring Defendant to pay restitution to restore all funds acquired by

2          means of any act or practice declared by this Court to be an unlawful, unfair, or

3          fraudulent business act or practice, untrue or misleading advertising, or a violation

4          of the Unfair Competition Law or other California law, plus pre- and post-

5          judgment interest thereon;

6    G.    An order requiring Defendant to disgorge or return all monies, revenues, and

7          profits obtained by means of any wrongful or unlawful act or practice;

8    H.    An order requiring Defendant to pay all actual and statutory damages permitted

9          under the counts alleged herein;

10   I.    An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

11   J.    An order providing for all other such equitable relief as may be just and proper.

12                          **DEMAND FOR JURY TRIAL**

13   Plaintiffs demand a trial by jury on all issues so triable.

14

15   DATED: June 10. 2021

16

17                                    By: _____

18                                    AYLSTOCK, WITKIN, KREIS &
                                      OVERHOLTZ, PLLC

19                                    SIN-TING MARY LIU (282884)
                                      17 East Main Street, Suite 200

20                                    Pensacola, FL 32502
                                      Telephone: 850-202-1010

21                                    Facsimile: 850-916-7449
                                      E-mail: mliu@awkolaw.com

22                                    Attorney for Plaintiffs

23

24

25   DATED: June 10. 2021

26                                    By: _____

                                      BRADLEY/GROMBACHER LLP

27                                    Marcus J. Bradley, Esq.
                                      Kiley L. Grombacher, Esq.

28                                    Robert N. Fisher, Esq.
                                      Attorney for Plaintiffs

---

25

AMENDED COMPLAINT

1  AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
2  SIN-TING MARY LIU (282884)
   17 East Main Street, Suite 200
3  Pensacola, FL 32502
   Telephone: 850-202-1010
4  Facsimile: 850-916-7449
   E-mail: mliu@awkolaw.com
5
6  **BRADLEY/GROMBACHER, LLP**
   Marcus J. Bradley, Esq. (174156)
7  Kiley L. Grombacher, Esq. (245960)
   Robert N. Fisher, Esq. (302919)
8  31365 Oak Crest Drive, Suite 240
   Westlake Village, California 91361
9  Telephone: (805) 270-7100
   Facsimile:  (805) 270-7589
10 E-Mail: mbradley@bradleygrombacher.com
11 kgrombacher@bradleygrombacher.com
   rfisher@bradleygrombacher.com
12
13 *Attorneys for Plaintiffs and the Putative Class*

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                        COUNTY OF ALAMEDA

16 KATHERINE BRENNAN and MICHELLE MANG,
   Individually and on Behalf of All Others Similarly
17 Situated,                                        Case No.:  RG21-101025

18         Plaintiffs,                              **CLASS ACTION:**

19      v.                                          DECLARATION OF KATHERINE
                                                    BRENNAN PURSUANT TO
20 NEUTROGENA CORPORATION,                          CALIFORNIA CIVIL CODE §1780(d)

21      Defendant.

22

23

24 I, Katherine Brennan, declare as follows:

25 1.  I am a plaintiff and putative class representative in the above-entitled action.

26 2.  Defendant Neutrogena Corporation has done and is doing business in the City and

27     County of Alameda, California. Such business includes the distribution, marketing,

28

and sale of numerous Neutrogena sunscreen products, including Beach Defense®
Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70.

3. The Class Action Complaint ("CAC") filed in this action is filed in the proper place
   for trial under Civil Code Section 1780(d) in that a substantial portion of the events
   alleged in the CAC occurred in Alameda County, California. Specifically, I purchased
   Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70
   from Costco Wholesale in San Leandro, located in Alameda County, California.

4. I declare under penalty of perjury under the laws of the State of California that the
   foregoing is true and correct.

Executed this 9th day of June 2021, at Alameda, California.

By: _____

Katherine Brennan
Plaintiff

# EXHIBIT B

1   PATTERSON BELKNAP WEBB & TYLER LLP
    Steven A. Zalesin (*pro hac vice* application to be filed)
2   sazalesin@pbwt.com
    Jonah M. Knobler (*pro hac vice* application to be filed)
3   jknobler@pbwt.com
    Andrew D. Cohen (*pro hac vice* application to be filed)
4   acohen@pbwt.com
    1133 Avenue of the Americas
5   New York, New York 10036
    Telephone:    (212) 336-2000
6   Facsimile:    (212) 336-2222
7
8   LAFAYETTE & KUMAGAI LLP
    Gary T. Lafayette (SBN 88666)
9   glafayette@lkclaw.com
    Brian H. Chun (SBN 215417)
10  bchun@lkclaw.com
    Barbara L. Lyons (SBN 173548)
11  blyons@lkclaw.com
    Saisruthi Paspulati (SBN 319879)
12  spaspulati@lkclaw.com
    1300 Clay Street, Suite 810
13  Oakland, California 94612
    Telephone:    (415) 357-4600
14  Facsimile:    (415) 357-4605
15
16  *Attorneys for Johnson & Johnson Consumer Inc.*

17
                        SUPERIOR COURT OF CALIFORNIA
18
                            COUNTY OF ALAMEDA
19

20  KATHERINE BRENNAN and MICHELLE MANG,          CASE NO.
    individually and on behalf of all others similarly
21  situated,                                     **NOTICE TO ADVERSE PARTY
                                                  OF REMOVAL OF CIVIL
22                      Plaintiffs,               ACTION TO FEDERAL COURT**

23        vs.                                     Removed from the Superior Court of
                                                  California, Alameda County, Case No.
24  NEUTROGENA CORPORATION and JOHNSON            RG21101025
    & JOHNSON CONSUMER COMPANIES, INC.;
25                      Defendants.               State Court action filed: May 26, 2021
26
27
28

1

2      TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE THAT a Notice of Removal of Civil Action was filed in the

4   United States District Court for the Northern District of California on June 24, 2021.

5          A copy of the Notice of Removal and Declarations of Jennifer Sheehy and Matthew

6   Plugues in support thereof is attached to this Notice and is served and filed herewith.

7

8          DATED:  June 24, 2021          PATTERSON BELKNAP WEBB & TYLER LLP

9                                          LAFAYETTE & KUMAGAI LLP

10                                         By:

11                                         GARY T. LAFAYETTE

12                                         *Attorneys for Johnson & Johnson Consumer Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          **-2-**

**PROOF OF SERVICE**

I am employed in the City and County of Oakland, California. I am over the age of eighteen years and not a party to the within action. My business address is 1300 Clay Street, Suite 810, Oakland, California 94612.

On June 24, 2021, I served the document named below on the parties in this action as follows:

**NOTICE TO ADVERSE PARTY OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

| | |
|---|---|
| XX | (BY MAIL): I caused each and such envelope with postage thereon fully prepaid, to be placed in the United State mail at Oakland, California. I am readily familiar with the practice for the collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. |
| | (BY FILE & SERVEXPRESS): I served the document(s) named above on the party(ies) in this action, by uploading true and correct copy(ies) of the document(s) to File & ServeXpress to be filed and served electronically to the Court and counsel of record through their File & ServeXpress inboxes. |
| | (BY PERSONAL SERVICE): I caused to be personally served each document listed above on the addressee(s) noted below. |
| | (BY FACSIMILE): I caused to be sent via facsimile at the facsimile number listed below, a copy of each document to the addressee(s) noted below. |
| | (BY OVERNIGHT MAIL): I caused to be delivered to an overnight courier service each document to the addressee(s) noted below. |
| | (BY ELECTRONIC MAIL): I caused a copy of the document(s) to be sent from e-mail address kmikkelsen@lkclaw.com to the persons at the email addresses listed below. |

ALYSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
Sin-Ting Mary Liu
17 East Main Street, Suite 200
Pensacola, FL 32502

BRADLEY/GROMBACHER, LLP
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Robert N. Fisher, Esq.
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 24, 2021at Oakland, California, California.

_____
Kirsten Mikkelsen

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600
FAX (415) 357-4605

# EXHIBIT C

D1317986

*1609425*

## CERTIFICATE OF SURRENDER OF RIGHT
## TO TRANSACT INTRASTATE BUSINESS

**FILED**
Secretary of State
State of California

On behalf and by authority of:

ICC   **DEC 0 2 2015**

Neutrogena Corporation
_____
(Name of Corporation)

_____ , a corporation

organized under the laws of  Delaware
_____,
(State or Place of Incorporation)

the undersigned officer of said corporation does hereby certify and declare:

1. Said corporation hereby surrenders its right and authority to transact intrastate business in the State of California.

2. Said corporation hereby revokes its designation of agent for service of process in California.

3. Said corporation consents that process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of this Certificate of Surrender of Right to Transact Intrastate Business may be served upon the California Secretary of State.

4. The post office address to which the California Secretary of State may mail copies of any process against the corporation that is served upon the Secretary of State is

5760 W. 96th Street, Los Angeles, CA 90045

5. A final franchise tax return, as described by Section 23332 of the Revenue and Taxation Code, has been or will be filed with the Franchise Tax Board, as required under Part 10.2 (commencing with Section 18401) of Division 2 of the Revenue and Taxation Code.

_____
(Signature of Corporate Officer)

Lacey Elberg, Vice President
_____
(Type or Print Name of Corporate Officer)

Secretary of State Form
SURRENDER-CORPORATION (REV 01/2013)

CA056 - 10 07/2014 C T Filing Manager Online

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

Case No. _____

MEREDITH SEROTA, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

vs.

NEUTROGENA CORPORATION and
JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.;

        Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Meredith Serota ("Plaintiff"), individually and on behalf of all others similarly situated throughout the State of California, files this Class Action Complaint ("CAC") against Defendants Neutrogena Corporation ("Neutrogena Corp.") and Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") (collectively, "Defendants"), and in support states the following:

## NATIURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased Neutrogena Sunscreen Products manufactured, sold and distributed by Defendants. Defendants distribute, market and sell several over-the-counter Sunscreen Products under their brand name "Neutrogena." Several of Defendants' Neutrogena sunscreen products (identified below) have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendants' Neutrogena Sunscreen Products was

not disclosed in the products' label, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendants.

3.    This Court has jurisdiction over each Defendant because Defendants are authorized to conduct and do business in Florida. Defendants have marketed, promoted, distributed, and sold Neutrogena sunscreen protection products, including the Sunscreen Products identified below, in Florida and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## THE PARTIES

5.      Plaintiff Meredith Serota ("Serota") resides in Palm Beach County, Florida, and at all times relevant hereto has been, a resident of the County of Palm Beach. In or around March 20, 2020, Serota purchased Neutrogena Ultra Sheer® Weightless Sunscreen Spray SPF 100+ (Qty 2) and Neutrogena Ultra Sheer Face Mist SPF 55 (Qty 4) from Target, located at 3599 W. Hillsboro Blvd. Deerfield Beach, Florida 33442, in Broward County. She paid approximately $8.99 each for the Neutrogena Ultra Sheer® Weightless Sunscreen Spray SPF 100+ and $12.99 each for the Neutrogena Ultra Sheer Face Mist SPF 55. During that time, based on the false and misleading claims by Defendants, Serota was unaware that Defendants' Sunscreen Products may be adulterated with benzene. Serota purchased the Defendants' Sunscreen Products on the assumption that the labeling of Defendants' Sunscreen Products was accurate and that the products were unadulterated, safe and effective. Serota would not have purchased Defendants' Sunscreen Products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

6.      Defendant Neutrogena Corp. is a Delaware corporation with its headquarters at 5760 W 96th Street, Los Angeles, California 90045. Neutrogena Corp. is authorized to do business in Florida. Neutrogena Corp. is a subsidiary of the Johnson & Johnson conglomerate. As one of the world's leading brands of skin care hair care and cosmetics, Neutrogena Corp. distributes its products, including Neutrogena sunscreen products, throughout the United States. Neutrogena Corp's line of Sunscreen Products, including the adulterated sunscreen purchased

by Plaintiff and members of the putative class, are available at retail stores throughout Florida and the United States.

7.      Defendant Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") is a New Jersey corporation with its headquarters and principal place of business at Grandview Road, Skillman, New Jersey, 08558. Johnson & Johnson, the manufacturer and/or distributor of the adulterated sunscreens, is the parent company of Neutrogena Corp.

**<u>INTRODUCTION</u>**

8.      Defendants manufacture, market, advertise, label, distribute, and sell a variety of Neutrogena sunscreen spray/aerosol products and lotions, including:

| 1 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 110 |
|---|---|---|---|
| 2 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion, SPF 70 |
| 3 | Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 |
| 4 | Neutrogena | Lotion | Beach Defense Water Plus Sun Protection Sunscreen Broad Spectrum Lotion SPF 70 |
| 5 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 50 |
| 6 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 70 |
| 7 | Neutrogena | Lotion | Healthy Defense Daily Moisturizer with Sunscreen SPF 50 |
| 8 | Neutrogena | Lotion | Hydro Boost Water Gel Lotion Sunscreen SPF 50 |
| 9 | Neutrogena | Spray | Kids Water-Resistant Sunscreen Spray Oil-Free SPF 70 |
| 10 | Neutrogena | Lotion | Oil-free Facial Moisturizer with Sunscreen SPF 15 |
| 11 | Neutrogena | Lotion | Pure & Free Baby Sunscreen Lotion - SPF 50 |
| 12 | Neutrogena | Lotion | Sensitive Skin Sunscreen Lotion With SPF 60+ |
| 13 | Neutrogena | Lotion | Sheer Zinc Dry-Touch Face Sunscreen SPF 50 |
| 14 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray |

| 15 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 |
| 16 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion Broad Spectrum SPF 55 |
| 17 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 30 |
| 18 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 45 |
| 19 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 |
| 20 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen SPF 55 |
| 21 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen Spray - SPF 55 |
| 22 | Neutrogena | Lotion | Ultra Sheer Liquid Sunscreen Lotion, Broad Spectrum SPF 70 |
| 23 | Neutrogena | Lotion | Ultra Sheer Sunscreen Lotion SPF 100+ |
| 24 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ |
| 25 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 |
| 26 | Neutrogena | Spray | Wet Skin Swim Humidity Sweat Sunscreen Broad Spectrum SPF 30 (hereafter collectively referred to as "Sunscreen Products").[1] |

9.      In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products. Specifically, Valisure tested numerous lots of Defendants' spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm

---

[1] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are affected by this action and Plaintiffs reserve their right to include any such products in this action.

and defines "skin absorption" as an exposure route.[2] Notably, benzene is not listed as an active

or inactive ingredient on any of the labels of Neutrogena's Sunscreen Products. Moreover, all of

the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

      10.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug

Administration ("FDA") asking the agency to recall all batches of Defendants' sunscreen

products tested that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are

adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502

of the FDCA (21 U.S.C. § 352). As of this filing, the FDA has not responded to Valisure's

citizen petition and Defendants have not taken any action to remove the Sunscreen Products from

the market.

      11.     Benzene is used primarily as a solvent in the chemical and pharmaceutical

industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in

gasoline. The major United States source of benzene is petroleum. The health hazards of benzene

have been recognized for over one hundred years. According to the National Toxicology

Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of

carcinogenicity from studies in humans."[3] Benzene has also been "found to be carcinogenic to

humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst

evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding

that has stood since that time."[4] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the
> carcinogenicity of benzene based on *sufficient evidence* of

---

[2] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).
[3] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).
[4] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.

> carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[5]

Likewise, the Food and Drug Administration ("FDA") recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[6]and classifies benzene as a "Class 1" solvent that should be "avoided."[7] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[8]

12.    The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[9] The FDA regulates sunscreens, including the Sunscreen Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the case of sunscreen, active ingredients are the ones that are protecting your skin from the sun's harmful UV rays. Inactive ingredients are all other ingredients that are not active ingredients, such as water or oil that may be used in formulating sunscreens.[10]

---

[5] *Id.* at 34.
[6] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[7] https://www.fda.gov/media/71737/download.
[8] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[9] *See generally* 21 CFR §§352.1– 352.77.
[10] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[11] there are certain acceptable active ingredients in products that are labeled as sunscreen.[12] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Sunscreen Products. Nor is benzene identified as an active or inactive ingredient on any of the Neutragena Sunscreen Products. Nevertheless, Defendants proclaim in their advertising that "Neutragena maintains that the sunscreen ingredients we use are safe and effective . . .", which is a false and misleading statement.

13.    The governing regulations provide: "An over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[13] Defendants failed to meet this standard as further described below.

14.    The manufacture of any misbranded or adulterated drug is prohibited under federal law[14] and Florida state law.[15]

15.    The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[16]

---

[11] 21 CFR §352.10.
[12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[13] 21 CFR §352.1
[14] 21 U.S.C. §331(g).
[15] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").
[16] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).

16.     The receipt in interstate commerce of any adulterated or misbranded drug is also

unlawful.[17]

17.     Among the ways a drug may be adulterated are:

If it consists in whole or in part of any filthy, putrid, or decomposed
substance; or . . . whereby it may have been rendered injurious to
health; . . . .[18]

18.      A drug is misbranded:

(a) "If its labeling is false or misleading in any particular."[19]

(b) If the labeling does not contain, among other things, "the proportion of each

active ingredient[.]"[20]

(d) "If it is dangerous to health when used in the dosage or manner, or with the

frequency or duration prescribed, recommended, or suggested in the labeling thereof."[21]

19.     If a manufacturer labels a drug but omits ingredients, that renders the drug

misbranded.[22]

---

[17] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or
cause the performance of any of the following acts in this state: … (3) The receipt of any drug,
device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery of
such drug, device, or cosmetic, for pay or otherwise.").
[18] 21 U.S.C. §351(a)(2)(B); *see also* Fla. Stat. § 499.006(1) & (2) ("A drug or device is
adulterated, if any of the following apply: (1) It consists in whole or in part of any filthy, putrid,
or decomposed substance[;] (2) It has been produced, prepared, packed, or held under conditions
whereby it could have been contaminated with filth or rendered injurious to health.").
[19] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling
is in any way false or misleading.").
[20] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is
misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate
statement of the quantity of the contents in terms of weight, measure, or numerical count.").
[21] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous
to health when used in the dosage or with the frequency or duration prescribed, recommended, or
suggested in the labeling of the drug.").
[22] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other
reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient
present in such drug, when such proportion or other fact is material in the light of the

20.     Because Defendants did not disclose benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiff and the putative class members, their Sunscreen Products are adulterated and misbranded. There is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in sunscreen.[23]

21.     Defendant wrongfully advertised and sold the Neutrogena Sunscreen Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

---

representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").
[23] https://www.who.int/ipcs/features/benzene.pdf.



22.    Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Sunscreen Products purchased by the Plaintiff and the other Sunscreen Products not purchased by Plaintiff. Specifically, each and every one of Defendants' Sunscreen Products (i) are marketed in substantially the same way – as "Sunscreen"— and (ii) fail to include labeling indicating to consumers that the Sunscreen Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the Sunscreen Products are substantially the same.

## CLASS ALLEGATIONS

23.    Plaintiff brings this action on behalf of herself and all other similarly situated

class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules

of Civil Procedure and seeks certification of the following class against Defendants for

violations of Florida state laws and/or similar laws in other states:

### Multi-State Class Action

All consumers who purchased any lotion or spray Neutrogena
Sunscreen Product in the United States of America and its territories
(excluding California) from May 25, 2017 to the present for
personal use or consumption.

Excluded from the Class are individuals who allege personal bodily
injury resulting from the use of Neutrogena Sunscreen Products.
Also excluded from this Class are Defendants, any parent
companies, subsidiaries, and/or affiliates, officers, directors, legal
representatives, employees, co-conspirators, all governmental
entities, and any judge, justice or judicial officer presiding over this
matter.

24.    In the alternative, Plaintiff brings this action on behalf of herself and all other

similarly situated Florida consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal

Rules of Civil Procedure and seeks certification of the following class:

### Florida-Only Class Action

All consumers who purchased any lotion or spray Neutrogena
Sunscreen Product in the State of Florida from May25, 2017 to the
present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily
injury resulting from the use of Neutrogena Sunscreen Products.
Also excluded from this Class are Defendants, any parent
companies, subsidiaries, and/or affiliates, officers, directors, legal
representatives, employees, co-conspirators, all governmental
entities, and any judge, justice or judicial officer presiding over this
matter.

25. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Defendants' Sunscreen Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

26. Plaintiff's claims are typical to those of all class members because members of the class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive sunscreen claims that accompanied each and every sunscreen product in the Neutrogena collection. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

27. Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

> (a) whether Defendants' Sunscreen Products contained benzene;
>
> (b) whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;
>
> (c) whether the alleged conduct constitutes violations of the laws asserted;
>
> (d) whether Defendants' alleged conduct violates public policy;
>
> (e) whether Defendants engaged in false or misleading advertising;
>
> (f) whether Defendants were unjustly enriched as a result of their labeling, marketing, advertising and/or selling of the Sunscreen Products;

(g)   whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(h)   whether an injunction is necessary to prevent Defendants from continuing to market and sell defective and adulterated Sunscreen Products that contain benzene, a known human carcinogen.

28.     Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has not adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

29.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

30.     The Class also may be certified because Defendants have acted or refused to act

on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

31.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, such as continuing to market and sell Sunscreen Products that may be adulterated with benzene, and requiring Defendants to provide a full refund of the purchase price of the Sunscreen Products to Plaintiff and Class members.

32.    Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION

## Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213

### (On Behalf of the Multi-State Class and Florida-Only Class)

33.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

34.    Plaintiff brings this claim individually and on behalf of the Class.

35.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

36.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

37.     As alleged herein, Plaintiff has suffered injury in fact and lost money as a result of Defendants' conduct because she purchased Sunscreen Products from Defendants in reliance on Defendants' representation that the ingredients in their Sunscreen Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

38.     As alleged herein, Defendants' actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff and the Class to damages and relief under Fla. Stat. §§ 501.201-213.

39.     Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their Sunscreen Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the certain Sunscreen Products are adulterated with benzene, a known human carcinogen.

40.     Similarly, Defendants have engaged, and continue to engage, in deceptive, untrue, and misleading advertising by "promising" to consumers, among other things, (i) that they "carefully select ingredients,"[24] (ii) that "safety is paramount,"[25] (iii) that they "avoid unnecessary and harsh ingredients,"[26] and (iv) that "the sunscreen ingredients we use are safe and effective . . . "[27] when in fact their Sunscreen Products do contain a known (but undisclosed)

---

[24] https://www.neutrogena.com/our-promise.html.
[25] https://www.neutrogena.com/our-promise.html.
[26] https://www.neutrogena.com/our-promise.html.
[27] https://www.neutrogenamd.com/sites/neutrogenahcp_us/files/20190416-fda-proposal-guide-3b.cocoon.pdf.

human carcinogen (i.e. benzene). The following image shows an example of such deceptive advertising:



Carefully Selected Ingredients

At Neutrogena®, safety is paramount. What we include in our products is just as important as what we exclude from them. We strive to avoid unnecessary and harsh ingredients and we prioritize ingredients that are not only safe for your skin, but also safe for the planet, throughout the lifecycle of our products. We are committed to ingredient transparency so you can make informed decisions for your skin health.[28]

---

[28] https://www.neutrogena.com/our-promise.html.

41.     By committing the acts alleged above, Defendants have engaged in
unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within
the meaning of FDUTPA.[29]

42.     Defendants' conduct is substantially injurious to consumers. Consumers are
purchasing and, as instructed in the label, "apply[ing] liberally" Defendants' Sunscreen Products
without knowledge that there is a risk the Sunscreen Products may be adulterated with a human
carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers
because consumers would not have paid for sunscreens potentially adulterated with benzene but
for Defendants' false labeling, advertising, and promotion. Thus, Plaintiffs and the putative Class
have been "aggrieved" (i.e. lost money) as required for FDUTPA standing, and such an injury is
not outweighed by any countervailing benefits to consumers or competition.

43.     Indeed, no benefit to consumers or competition results from Defendants' conduct.
Since consumers reasonably rely on Defendants' representation of the ingredients contained in
their Sunscreen Products' labels and injury resulted from ordinary use of the Sunscreen Products,
consumers could not have reasonably avoided such injury.

44.     Further, Defendants' conduct is ongoing and continuing, such that prospective
injunctive relief is necessary. Plaintiff is a long time user of Defendants' Sunscreen Products,
and she desires to purchase Defendants' Sunscreen Products in the future if she can be assured
that the Sunscreen Products are unadulterated and meet the advertising claims. Absent injunctive
relief, Defendants may continue to advertise, promote and sell adulterated Sunscreen Products
that deceive the public as to their ingredients and safety. Plaintiff is thus likely to again be

---

[29] Defendants' conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15
U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or
practices in or affecting commerce.

wronged in a similar way. For example, if Plaintiff encounters Defendants' Sunscreen Products in the future and there is a risk those products still contain benzene, Plaintiff may mistakenly rely on the product's label to believe that Defendants eliminated benzene when they did not.

45.     Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

46.     Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

47.     Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non-prevailing party.

48.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

49.     Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

50.     Defendants are engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce Sunscreen Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

51.     As a result of Defendants' unfair and deceptive trade practices, Plaintiff and the putative Class s are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if she prevails.

37.     Wherefore, Plaintiff prays for judgement against Defendants, as set forth hereafter. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of their Sunscreen Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

53.      In accordance with FDUTPA,[30] Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

54.     On behalf of Plaintiff and the putative Class, Plaintiff also seeks an order entitling them to recover all monies spent on the Defendants' Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[31] In addition, the measure of restitution should be full refund of the purchase price insofar as the Sunscreen Products and their associated labels are worthless. But for Defendants' misrepresentations and omissions, Plaintiff would have paid nothing for Sunscreen Products that have a risk of containing a known human carcinogen (i.e. benzene). Indeed, there is no discernible "market" for an over-the-counter sunscreen product that may be adulterated with a known human carcinogen. As recognized by the WHO, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[32] As a result, the Defendants' Sunscreen Products are rendered valueless.

---

[30] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief. Fla. Stat. §501.211.

[31] Section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation ... may recover actual damages . . . ."

[32] https://www.who.int/ipcs/features/benzene.pdf.

55.     Wherefore, Plaintiff and members of the Class are entitled to injunctive and equitable relief, and a full refund in the amount they spent on the Defendants' Sunscreen Products.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

**(On Behalf of the Multi-State Class and Florida-Only Class)**

52.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

53.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Sunscreen Products.

54.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

55.     As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

56.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

57.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Sunscreen Products to Plaintiff and members of the Class.

58.     Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

59.     The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

60.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

61.     Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.[33]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.     An order enjoining Defendants from selling the Sunscreen Products;

C.     An order enjoining Defendants from suggesting or implying that they are safe and effective for human application;

---

[33] *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.,* 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311 (The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims."); *see also Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D. Fla. 2008); *In re Monat Hair Prods. Mktg., Sales Prac., and Prods. Liab. Litig*., 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 5, 2014); *Goldberg v. Chong,* 2007 WL 2028792 at *9 (S.D. Fla. July 11, 2007).

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Sunscreen Products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the FDUTPA, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


DATED: May 25, 2021

By: <u>R. Jason Richards</u>
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
R. JASON RICHARDS (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com
*Attorneys for Plaintiff*

1   PATTERSON BELKNAP WEBB & TYLER LLP
    Steven A. Zalesin (*pro hac vice* application to be filed)
2   sazalesin@pbwt.com
    Jonah M. Knobler (*pro hac vice* application to be filed)
3   jknobler@pbwt.com
    Andrew D. Cohen (*pro hac vice* application to be filed)
4   acohen@pbwt.com
    1133 Avenue of the Americas
5   New York, New York 10036
    Telephone:     (212) 336-2000
6   Facsimile:     (212) 336-2222
7
8   LAFAYETTE & KUMAGAI LLP
    Gary T. Lafayette (SBN 88666)
9   glafayette@lkclaw.com
    Brian H. Chun (SBN 215417)
10  bchun@lkclaw.com
    Barbara L. Lyons (SBN 173548)
11  blyons@lkclaw.com
    Saisruthi Paspulati (SBN 319879)
12  spaspulati@lkclaw.com
    1300 Clay Street, Suite 810
13  Oakland, California 94612
    Telephone:     (415) 357-4600
14  Facsimile:     (415) 357-4605
15
16  *Attorneys for Johnson & Johnson Consumer Inc.*

17                   **UNITED STATES DISTRICT COURT**
18                   **NORTHERN DISTRICT OF CALIFORNIA**

19

20  KATHERINE BRENNAN and MICHELLE MANG,        CASE NO.
    Individually and on Behalf of All Others Similarly
21  Situated,                                    **DECLARATION OF MATTHEW**
                                                 **PLUGUES IN SUPPORT OF**
22                          Plaintiffs,          **JOHNSON & JOHNSON**
                                                 **CONSUMER INC.'S NOTICE OF**
23         vs.                                   **REMOVAL**

24  NEUTROGENA CORPORATION and JOHNSON           Removed from the Superior Court of
    & JOHNSON CONSUMER COMPANIES, INC.;          California, Alameda County, Case No.
25                          Defendants.          RG21101025

26                                               State Court action filed: May 26, 2021
27
28

## <u>DECLARATION OF MATTHEW PLUGUES</u>

I, Matthew Plugues, declare under penalty of perjury as follows:

1.      I have been employed by Johnson & Johnson Consumer Inc. ("JJCI") since February 2016.  Since December 2019, my title has been Director of Skin Health, Consumer & Business Intelligence.  In this role, I lead consumer and marketplace insights for the skin care brands marketed by JJCI in the United States, including Neutrogena®.  Among other things, this includes commissioning custom research and leveraging existing syndicated resources, such as Nielsen sales measurement data, to analyze performance of the company's brands and products.

2.      I have personal knowledge of the facts set forth below and, if called and sworn as a witness, could and would testify as set forth in this Declaration.

3.      I understand that this lawsuit seeks refunds on behalf of California retail purchasers of the following 26 Neutrogena-brand sunscreen and sun care products (collectively, the "Sunscreen Products"):

Age Shield Face Sunscreen Lotion SPF 110;

Age Shield Face Sunscreen Lotion SPF 70;

Beach Defense Oil-Free Body Sunscreen Spray SPF 100;

Beach Defense Water Plus Sun Protection Sunscreen Broad Spectrum Lotion SPF 70;

Cooldry Sport Water-Resistant Sunscreen Spray SPF 50;

Cooldry Sport Water-Resistant Sunscreen Spray SPF 70;

Healthy Defense Daily Moisturizer with Sunscreen SPF 50;

Hydro Boost Water Gel Lotion Sunscreen SPF 50;

Kids Water-Resistant Sunscreen Spray Oil-Free SPF 70;

Oil-free Facial Moisturizer with Sunscreen SPF 15;

Pure & Free Baby Sunscreen Lotion SPF 50;

Sensitive Skin Sunscreen Lotion With SPF 60+;

Sheer Zinc Dry-Touch Face Sunscreen SPF 50;

Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray;

Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45;

Ultra Sheer Dry-Touch Sunscreen Lotion Broad Spectrum SPF 55;

Ultra Sheer Dry-Touch Sunscreen Lotion SPF 30;

Ultra Sheer Dry-Touch Sunscreen SPF 45;

Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70;

Ultra Sheer Face Mist Sunscreen SPF 55;

Ultra Sheer Face Mist Sunscreen Spray - SPF 55;

Ultra Sheer Liquid Sunscreen Lotion, Broad Spectrum SPF 70;

Ultra Sheer Sunscreen Lotion SPF 100+;

Ultra Sheer Weightless Sunscreen Spray, SPF 100+;

Ultra Sheer Weightless Sunscreen Spray, SPF 70; and

Wet Skin Swim Humidity Sweat Sunscreen Broad Spectrum SPF 30.

(Compl. ¶ 10; Am. Compl. ¶ 5.)

4.      As discussed above, my job responsibilities include obtaining and analyzing syndicated retail sales data collected by Nielsen, a leading market measurement firm.  In the regular course of its business, Nielsen routinely tracks sales information from retail stores across the United States and around the world, including by collecting electronic point of sale (*i.e.*, cash-register scan) data and conducting store inventory and price audits.  Nielsen then makes this data available to clients such as JJCI, who use and rely on it in the regular course of their business to track and understand their sales performance.

5.      On or about June 9, 2021, I obtained data from Nielsen reflecting retail sales of the Sunscreen Products in the state of California during the period from May 25, 2017 through and including May 29, 2021.  By "retail sales," I mean the actual amounts paid by end-consumers to purchase the Sunscreen Products in retail stores.

6.      The data that I obtained from Nielsen reflect retail sales in a subset of California stores, rather than all California stores.  In particular, the data I obtained from Nielsen through

1   this data pull reflect retail sales in the following types of stores within the state of California:

2       • Food Channel (all grocery stores with at least $2 million in annual sales)

3       • Drug Channel (all drug chains and independent drugstores with at least $1

4        million in annual sales)

5       • Select Mass Accounts (Target + Kmart + ShopKo)

6       • Walmart (Division 1 + Supercenters + Neighborhood markets)

7       • Select Club Accounts (Sam's + BJs, but not Costco)

8       • Select Dollar Accounts (Dollar General + Family Dollar + Fred's Dollar, but

9        not Dollar Tree, Dollar Express, or 99Cents)

10      • Military (all military exchanges: DECA, AAFES, Coast Guard, Marine Corps,

11       and NEXCOM)

12    7.  The data that I obtained from Nielsen reflect that, over the time period in

13  question, the total retail sales of the Sunscreen Products in the above-mentioned California stores

14  amounted to $108,512,793.

15    8.  Again, because these data exclude sales at some California retail stores, the figure

16  in the previous paragraph is conservative. In other words, the true total amount of retail sales of

17  the Sunscreen Products in the state of California over the time period in question is likely higher.

18

19    I declare under penalty of perjury under the laws of the United States that the foregoing is

20  true and correct.

21

22  Executed this 23rd day of June, 2021.

23

24

25

26          Matthew Plugues

27

28         -4-

1
PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice* application to be filed)

2
sazalesin@pbwt.com
Jonah M. Knobler (*pro hac vice* application to be filed)

3
jknobler@pbwt.com
Andrew D. Cohen (*pro hac vice* application to be filed)

4
acohen@pbwt.com

5
1133 Avenue of the Americas
New York, New York 10036

6
Telephone:     (212) 336-2000

7
Facsimile:     (212) 336-2222

8
LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)

9
glafayette@lkclaw.com
Brian H. Chun (SBN 215417)

10
bchun@lkclaw.com
Barbara L. Lyons (SBN 173548)

11
blyons@lkclaw.com
Saisruthi Paspulati (SBN 319879)

12
spaspulati@lkclaw.com

13
1300 Clay Street, Suite 810
Oakland, California 94612

14
Telephone:     (415) 357-4600

15
Facsimile:     (415) 357-4605

16
*Attorneys for Johnson & Johnson Consumer Inc.*

17

18
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

19

20
KATHERINE BRENNAN and MICHELLE MANG,
Individually and on Behalf of All Others Similarly

21
Situated,

| | CASE NO. |

22
                                   Plaintiffs,

**DECLARATION OF JENNIFER SHEEHY IN SUPPORT OF JOHNSON & JOHNSON CONSUMER INC.'S NOTICE OF REMOVAL**

23
            vs.

24
NEUTROGENA CORPORATION and JOHNSON
& JOHNSON CONSUMER COMPANIES, INC.;

25
                                   Defendants.

Removed from the Superior Court of California, Alameda County, Case No. RG21101025

26

27
State Court action filed: May 26, 2021

28

1

2

**<u>DECLARATION OF JENNIFER SHEEHY</u>**

I, Jennifer Sheehy, declare under penalty of perjury as follows.

1.      At all times herein mentioned, I am and have been employed by Johnson & Johnson.  My title is Assistant General Counsel.  I have personal knowledge of the facts set forth below and, if called and sworn as a witness, could and would testify as set forth in this Declaration.

2.      Prior to June 29, 2015, Johnson & Johnson's operating companies included the two entities named as defendants in the caption of the Complaint in this case: Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.  Neutrogena Corporation was a Delaware corporation with its principal place of business in California.  Johnson & Johnson Consumer Companies, Inc. was a New Jersey corporation with its principal place of business in New Jersey.

3.      On June 29, 2015, certain of Johnson & Johnson's operating companies, including both Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc., underwent a multi-step corporate restructuring.

4.      On that date, as relevant here, Neutrogena Corporation was converted to a Delaware limited liability company known as Neutrogena, LLC.  Attached hereto as **Exhibit 1** is a true and correct copy of the Certification of Conversion to Limited Liability Company of Neutrogena Corporation and the Certification of Formation of Neutrogena, LLC.

5.      Next, a new Delaware limited liability company known as Johnson & Johnson Consumer Companies, LLC was formed.  Attached hereto as **Exhibit 2** is a true and correct copy of the Certification of Formation of Johnson & Johnson Consumer Companies, LLC.

6.      Thereafter, Johnson & Johnson Consumer Companies, Inc. merged into the newly formed Johnson & Johnson Consumer Companies, LLC.  Attached hereto as **Exhibit 3** is a true and correct copy of the Certification of Merger of Johnson & Johnson Consumer Companies, Inc. (a New Jersey Corporation) with and into Johnson & Johnson Consumer Companies, LLC (a

**-2-**

1  Delaware Limited Liability Company).

2        7.    Finally, both Neutrogena, LLC and Johnson & Johnson Consumer Companies,

3  LLC (along with a third entity not relevant here, Johnson & Johnson Sales and Logistics

4  Company, LLC) merged into a pre-existing subsidiary of Johnson & Johnson known as McNeil-

5  PPC, Inc., a New Jersey corporation with its principal place of business in New Jersey.  Attached

6  hereto as **Exhibit 4** is a true and correct copy of the Certification of Merger of Neutrogena, LLC

7  (a Delaware Limited Liability Company) and Johnson & Johnson Consumer Companies, LLC (a

8  Delaware Limited Liability Company) and Johnson & Johnson Sales and Logistics Company,

9  LLC (a New Jersey Limited Liability Company) with and into McNeil-PPC, Inc. (a New Jersey

10  Corporation).

11        8.    Simultaneously, the name of McNeil-PPC, Inc. was changed to Johnson &

12  Johnson Consumer Inc. ("JJCI").  Attached hereto as **Exhibit 5** is a true and correct copy of the

13  Certificate of Merger/Consolidation and Amended and Restated Certificate of Incorporation of

14  Johnson & Johnson Consumer Inc.

15        9.    Out of all of the entities involved in this series of transactions, the only surviving

16  entity was and is JJCI.  As such, the two entities named as defendants in the Complaint in this

17  action—Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.—have not

18  existed as independent entities since June 29, 2015.

19       10.    At all times since June 29, 2015, and continuing to the present, JJCI has remained

20  a New Jersey corporation with its principal place of business in New Jersey.

21

22      I declare under penalty of perjury under the laws of the United States that the foregoing is

23  true and correct.

24

25

26

27

28                        **-3-**

1    Executed this 27th day of June, 2021.

2

3    _____

4    Jennifer Sheehy

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    -4-

12805203

# EXHIBIT 1



**PAGE 1**

*The First State*

    I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF CONVERSION OF A DELAWARE CORPORATION UNDER THE NAME OF "NEUTROGENA CORPORATION" TO A DELAWARE LIMITED LIABILITY COMPANY, CHANGING ITS NAME FROM "NEUTROGENA CORPORATION" TO "NEUTROGENA, LLC", FILED IN THIS OFFICE ON THE TWENTY-FOURTH DAY OF JUNE, A.D. 2015, AT 7:01 O'CLOCK P.M.

    AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF CONVERSION IS THE TWENTY-NINTH DAY OF JUNE, A.D. 2015, AT 9:10 O'CLOCK A.M.

2149495  8100V

150969376

Jeffrey W. Bullock, Secretary of State

**AUTHENTICATION: 2500209**

**DATE: 06-25-15**

You may verify this certificate online at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:01 PM 06/24/2015*
*FILED 07:01 PM 06/24/2015*
*SRV 150969376 – 2149495 FILE*

## CERTIFICATE OF CONVERSION TO LIMITED LIABILITY COMPANY

### OF

### NEUTROGENA CORPORATION

Pursuant to the provisions of Section 18-214 of the Delaware Limited Liability Company Act, Neutrogena Corporation (the "Corporation") does hereby certify that:

1.    The Corporation was formed as a Delaware corporation pursuant to a Certificate of Incorporation filed with the Secretary of State of Delaware on January 18, 1988.

2.    The name of the Corporation immediately prior to the filing of this Certificate of Conversion is "Neutrogena Corporation".

3.    The name of the limited liability company into which the Corporation shall be converted and which is set forth in its certificate of formation is "Neutrogena, LLC".

4.    The effective time of the conversion of the Corporation into Neutrogena, LLC shall be at 9:10 a.m. Eastern Daylight Time on June 29, 2015.

5.    A certification of formation for Neutrogena, LLC is attached hereto and submitted for filing herewith.

*Signature Page Follows*

78449839.5

Dated: June 23, 2015                    NEUTROGENA CORPORATION

                                        Name: Lacey P. Elberg
                                        Title:   Assistant Secretary



*PAGE 2*

## *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF CERTIFICATE OF FORMATION OF "NEUTROGENA, LLC" FILED IN THIS OFFICE ON THE TWENTY-FOURTH DAY OF JUNE, A.D. 2015, AT 7:01 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF FORMATION IS THE TWENTY-NINTH DAY OF JUNE, A.D. 2015, AT 9:10 O'CLOCK A.M.

2149495  8100V

150969376

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 2500209

DATE: 06-25-15

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:01 PM 06/24/2015*
*FILED 07:01 PM 06/24/2015*
*SRV 150969376 – 2149495 FILE*

# CERTIFICATE OF FORMATION

## OF

## NEUTROGENA, LLC

---

The undersigned, an authorized natural person, for the purpose of forming a limited liability company, under the provisions and subject to the requirements of the State of Delaware (particularly, Chapter 18, Title 6 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "Delaware Limited Liability Company Act"), hereby certifies that:

FIRST: The name of the limited liability company (hereinafter called the "Company") is:

### Neutrogena, LLC

SECOND: The address of the registered office and the address of the registered agent of the Company required to be maintained by Section 18-104 of the Delaware Limited Liability Company Act are, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801, and the name of the registered agent is The Corporation Trust Company.

THIRD: To the fullest extent that the laws of the State of Delaware, as they exist on the date hereof or as they may hereafter be amended, permit the limitation or elimination of the liability of officers, no officer of the Company shall be personally liable to the Company or its member for damages for breach of any duty owed to the Company or its members. Neither the amendment or repeal of this provision nor the adoption of any provision of this Certificate of Formation which is inconsistent with this provision shall apply to or have any effect on the liability or alleged liability of any officer of the Company for or with respect to any act or omission of such officer occurring prior to such amendment, repeal or adoption.

FOURTH: The effective time of the formation shall be at 9:10 a.m. Eastern Daylight Time on the 29th day of June, 2015.

Executed on June 23, 2015

Lacey P. Elberg
Authorized Person

77710387.5

# EXHIBIT 2

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:01 PM 06/24/2015*
*FILED 07:02 PM 06/24/2015*
*SRV 150969384 – 5773682 FILE*

## CERTIFICATE OF FORMATION

### OF

## JOHNSON & JOHNSON CONSUMER COMPANIES, LLC

The undersigned, an authorized natural person, for the purpose of forming a limited liability company, under the provisions and subject to the requirements of the State of Delaware (particularly, Chapter 18, Title 6 of the Delaware Code and the acts amendatory thereof and supplemental thereto, and known, identified, and referred to as the "Delaware Limited Liability Company Act"), hereby certifies that:

FIRST:  The name of the limited liability company (hereinafter called the "Company") is:

**Johnson & Johnson Consumer Companies, LLC**

SECOND:  The address of the registered office and the address of the registered agent of the Company required to be maintained by Section 18-104 of the Delaware Limited Liability Company Act are, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801, and the name of the registered agent is The Corporation Trust Company.

THIRD:  To the fullest extent that the laws of the State of Delaware, as they exist on the date hereof or as they may hereafter be amended, permit the limitation or elimination of the liability of officers, no officer of the Company shall be personally liable to the Company or its member for damages for breach of any duty owed to the Company or its members.  Neither the amendment or repeal of this provision nor the adoption of any provision of this Certificate of Formation which is inconsistent with this provision shall apply to or have any effect on the liability or alleged liability of any officer of the Company for or with respect to any act or omission of such officer occurring prior to such amendment, repeal or adoption.

FOURTH:  The effective time of the formation shall be 9:20 a.m. Eastern Daylight Time on June 29, 2015.

Executed on June 23, 2015

Lacey P. Elberg
Authorized Person

77716074.4

# EXHIBIT 3

# *Delaware*

*PAGE  1*

## *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"JOHNSON & JOHNSON CONSUMER COMPANIES, INC.", A NEW JERSEY CORPORATION,

WITH AND INTO "JOHNSON & JOHNSON CONSUMER COMPANIES, LLC" UNDER THE NAME OF "JOHNSON & JOHNSON CONSUMER COMPANIES, LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FOURTH DAY OF JUNE, A.D. 2015, AT 7:03 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-NINTH DAY OF JUNE, A.D. 2015, AT 9:30 O'CLOCK A.M.

5773682    8100M

150969396

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 2500290

DATE: 06-25-15

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:01 PM 06/24/2015*
*FILED 07:03 PM 06/24/2015*
*SRV 150969396 - 5773682 FILE*

## CERTIFICATE OF MERGER

### OF

### JOHNSON & JOHNSON CONSUMER COMPANIES, INC.
#### (a New Jersey corporation)

### WITH AND INTO

### JOHNSON & JOHNSON CONSUMER COMPANIES, LLC
#### (a Delaware limited liability company)

Pursuant to Title 6, Section 18-209
of the Delaware Limited Liability Company Act

1.     The name of the surviving limited liability company is Johnson & Johnson
Consumer Companies, LLC, a Delaware limited liability company (the "LLC").

2.     The name of the corporation being merged into this surviving limited liability
company is Johnson & Johnson Consumer Companies, Inc., organized under the laws of the
State of New Jersey (the "Corporation").

3.     An Agreement and Plan of Merger has been agreed to and executed by both the
LLC and the Corporation, and an executed copy is on file at 199 Grandview Road, Skillman,
New Jersey 08558, the principal place of business of the LLC.

4.     The effective time of the merger of the Corporation with and into the LLC shall
be at 9:30 a.m. Eastern Daylight Time on June 29, 2015.

5.     A copy of the Agreement and Plan of Merger will be furnished by the LLC on
request, without cost, to any member of the LLC or person holding an interest in the Corporation
which is to merge.

77716456. 5

IN WITNESS WHEREOF, Johnson & Johnson Consumer Companies, LLC has caused this certificate to be executed on this _23_ day of June, 2015.

JOHNSON & JOHNSON CONSUMER
COMPANIES, LLC

Name: Lacey P. Elberg
Title:   Vice President

77716456. 5

# EXHIBIT 4

# Delaware

**PAGE 1**

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"JOHNSON & JOHNSON CONSUMER COMPANIES, LLC", A DELAWARE LIMITED LIABILITY COMPANY,

"JOHNSON & JOHNSON SALES AND LOGISTICS COMPANY, LLC", A NEW JERSEY LIMITED LIABILITY COMPANY,

"NEUTROGENA, LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "MCNEIL-PPC, INC" UNDER THE NAME OF "JOHNSON & JOHNSON CONSUMER INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FOURTH DAY OF JUNE, A.D. 2015, AT 7:04 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-NINTH DAY OF JUNE, A.D. 2015, AT 10 O'CLOCK A.M.

4481607   8100M

150969405

Jeffrey W. Bullock, Secretary of State

**AUTHENTICATION: 2500464**

**DATE: 06-25-15**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:01 PM 06/24/2015*
*FILED 07:04 PM 06/24/2015*
*SRV 150969405 – 2149495 FILE*

# CERTIFICATE OF MERGER
## of
## NEUTROGENA, LLC
### (a Delaware limited liability company)
## and
## JOHNSON & JOHNSON CONSUMER COMPANIES, LLC
### (a Delaware limited liability company)
## and
## JOHNSON & JOHNSON SALES AND LOGISTICS COMPANY, LLC
### (a New Jersey limited liability company)
### with and into
## MCNEIL-PPC, INC.
### (a New Jersey corporation)

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**FIRST**: The name of the surviving corporation is McNEIL-PPC, Inc., a foreign corporation.

**SECOND**: The jurisdiction in which this corporation was formed is New Jersey.

**THIRD**: The names and state of organization of each constituent company are as follows:

| Name | State |
| --- | --- |
| Neutrogena, LLC | Delaware |
| Johnson & Johnson Consumer Companies, LLC | Delaware |
| Johnson & Johnson Sales and Logistics Company, LLC | New Jersey |

**FOURTH**: The Agreement and Plan of Merger has been approved and executed by each business entity which is to merge.

**FIFTH**: The effective time of the merger of the constituent companies into the surviving corporation is at 10:00 a.m. Eastern Daylight Time on June 29, 2015.

**SIXTH**: The certificate of incorporation of the surviving corporation is being amended and restated to change the name of the surviving corporation to Johnson & Johnson Consumer Inc. upon the effective time of the merger.

**SEVENTH**: An Agreement and Plan of Merger is on file at a place of business of the surviving foreign corporation and the address thereof is 199 Grandview Road, Skillman, NJ 08558.

**EIGHTH**:       A copy of the Agreement and Plan of Merger will be furnished by the surviving foreign corporation, on request and without cost, to any member of any domestic limited liability company or any person holding an interest in any other business entity which is to merge.

**NINTH**:       The surviving foreign corporation agrees that it may be served with process in the State of Delaware in any action, suit or proceeding for the enforcement of any obligation of any domestic limited liability company which is to merge, irrevocably appointing the Secretary of State as its agent to accept service of process in any such action, suit or proceeding and the address to which a copy of such process shall be mailed to by the Secretary of State is 199 Grandview Road, Skillman, NJ 08558.

*[Signature Page Follows]*

IN WITNESS WHEREOF, McNEIL-PPC, Inc. has executed this certificate on this $\mathcal{O}3$ day of June, 2015.

MCNEIL-PPC, INC.

By: _____

Name: Lacey P. Elberg
Title:   Vice President

# EXHIBIT 5

MRG

New Jersey Division of Revenue

**Certificate of Merger/Consolidation**

FILED

JUN 2 5 2015

STATE TREASURER

This form may be used to record the merger or consolidation of a limited liability company, limited partnership or partnership with or into another business entity or entities, pursuant to NJSA 42, 42:2A and 42:2C Applicants must insure strict compliance with the requirements of State law and insure that all filing requirements are met. This form is intended to simplify filing with the New Jersey State Treasurer. Applicants are advised to seek out private legal advice before submitting filings to the State Treasurer's office. This merger is also pursuant to NJSA 14A.

5106246200

1. Type of Filing (check one):  Merger  X  Consolidation

2. Name of Surviving Entity:

McNEIL-PPC, Inc.

3. Address of surviving Entity:

199 Grandview Road Skillman, NJ 08558

4. Name(s)/Jurisdiction(s) of All Participating Business Entities:

| Name | Jurisdiction | Identification # Assigned by Treasurer (if applicable) |
|---|---|---|
| McNEIL-PPC, Inc. | New Jersey | 5106246200 |
| Neutrogena, LLC | Delaware | |
| Johnson & Johnson Consumer Companies, LLC | Delaware | |
| Johnson & Johnson Sales and Logistics Company, LLC | New Jersey | 0600254773 |

5. Service of Process Address (For use if the surviving business entity is not authorized or registered by the State Treasurer):

The surviving business entity agrees that it may be served with process in this State in any action, suit or proceeding for the enforcement of any obligation of a merging or consolidating LLC, LP or partnership. The Treasurer is hereby appointed as agent to accept service of process in any such action, suit, or proceeding which shall be forwarded to the Surviving Business Entity at the Service of Process address stated above.

Date Merger/Consolidation adopted: June 23, 2015

Voting: (all corporations involved, attach additional sheets if necessary)
-a Corp Name McNEIL-PPC, Inc.    Outstanding Shares 17,310
    If applicable, set forth the number and designation of any class or series of shares entitled to vote

Voting For  17,310    Voting Against  0

78473263.6

Merger/consolidation plan was adopted by the unanimous written consent of the shareholders without a meeting (check) X

-b Corp Name                                                          Outstanding Shares
        If applicable, set forth the number and designation of any class or series of shares entitled to vote


Voting For_____                    Voting Against_____

Merger/consolidation plan was adopted by the unanimous written consent of the shareholders without a meeting (check)

-c Corp Name                                                          Outstanding Shares
        If applicable, set forth the number and designation of any class or series of shares entitled to vote


Voting For_____                    Voting Against_____

Merger/consolidation plan was adopted by the unanimous written consent of the shareholders without a meeting (check)

-d Corp Name                                                          Outstanding Shares
        If applicable, set forth the number and designation of any class or series of shares entitled to vote


Voting For_____                    Voting Against_____

Merger/consolidation plan was adopted by the unanimous written consent of the shareholders without a meeting (check)

6. Effective Date (see instructions): The effective date and time of the merger shall be 10:00 a.m. Eastern Daylight Time on June 29, 2015.

7. The Certificate of Incorporation of the Surviving Corporation, as in effect immediately prior to the effective time shall be amended at the effective time so that the name of the Surviving Corporation shall be changed to Johnson & Johnson Consumer Inc. and is identical to the "Amended and Restated Certificate of Incorporation" that is attached to this Certificate of Merger as Exhibit A and as so amended, such Amended and Restated Certificate of Incorporation shall be the Amended and Restated Certificate of Incorporation of the Surviving Corporation until thereafter changed or amended as provided therein or by applicable law.

8. The undersigned represent(s) that the agreement of merger/consolidation is on file at the place of business of the surviving business entity and that the agreement of merger/consolidation has been approved and executed by each business entity involved. Additionally, a copy of the merger/consolidation agreement has been or shall be furnished by the surviving entity to any member or any person having an interest.

2

McNEIL-PPC, Inc.

_[signature]_
Lacey P. Elberg, Vice President


NEUTROGENA, LLC

_[signature]_
Lacey P. Elberg, Vice President


JOHNSON & JOHNSON CONSUMER
COMPANIES, LLC

_[signature]_
Jennifer M. Sheehy, Vice President


JOHNSON & JOHNSON SALES AND
LOGISTICS COMPANY, LLC

_[signature]_
Jennifer M. Sheehy, Vice President


Date: June 23, 2015

3

EXHIBIT A

AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

OF

JOHNSON & JOHNSON CONSUMER INC.

FIRST: The name of the corporation is Johnson & Johnson Consumer Inc.

SECOND: The address of the Corporation's registered office is One Johnson & Johnson Plaza, New Brunswick, New Jersey, 08933.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the New Jersey Business Corporation Act of the State of New Jersey.

FOURTH: The aggregate number of shares which the Corporation shall have authority to issue is 100 shares of Common Stock, par value .01 per share.

FIFTH: In furtherance and not in limitation or the powers conferred upon it by law, the Board of Directors of the Corporation is expressly authorized to adopt, amend or repeal the By-laws of the Corporation.

SIXTH: The Corporation is to have perpetual existence.

SEVENTH: To the fullest extent that the laws of the State of New Jersey as they exist on the date hereof or as they may hereafter be amended, permit the limitation or elimination of the liability of directors or officers, no director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for damages for breach of any duty owed to the Corporation or its stockholders. Neither the amendment or repeal of this provision nor the adoption of any provision of this Certificate of Incorporation which is inconsistent with this provision shall apply to or have any effect on the liability or alleged liability of any director or officer of the Corporation for or with respect to any act or omission of such director or officer occurring prior to such amendment, repeal or adoption.

(The remainder of this page intentionally left blank)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Katherine Brennan and Michelle Mang, individually and on behalf of all others similarly situated

**DEFENDANTS**

Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   N/A
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Aylstock, Witkin, Kreis & Overholtz, PLLC, 17 East Main Street, Suite 200, Pensacola, FL, 32502, (850) 202-1010

Bradley/Grombacher, LLP, 31365 Oak Crest Drive, Suite 240, Westlake Village, California, 91361 850-202-1010

Attorneys *(If Known)*

Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, New York 10036, (212) 336-2000

Lafayette & Kumagai LLP, 1300 Clay Street, Suite 810, Oakland, CA 94612, (415) 357-4600

## II.   BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III.   CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.   NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC § 881 | ☐ 422 Appeal 28 USC § 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC § 157 | ☐ 376 Qui Tam (31 USC § 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment Of Veteran's Benefits | ☐ 330 Federal Employers' Liability | | ☐ 710 Fair Labor Standards Act | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 720 Labor/Management Relations | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 740 Railway Labor Act | ☐ 835 Patent—Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 751 Family and Medical Leave Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 790 Other Labor Litigation | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury -Medical Malpractice | ☐ 385 Property Damage Product Liability | | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | | **IMMIGRATION** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 462 Naturalization Application | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 440 Other Civil Rights | **HABEAS CORPUS** | ☐ 465 Other Immigration Actions | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 445 Amer. w/Disabilities– Employment | ☐ 535 Death Penalty | | ☐ 871 IRS–Third Party 26 USC § 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| ☐ 245 Tort Product Liability | ☐ 448 Education | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee– Conditions of Confinement | | | |

## V.   ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | | ☐ 8 Multidistrict Litigation–Direct File |

## VI.   CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, 1446, and 1453
Brief description of cause:
Allegedly false advertising of consumer product

## VII.   REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII.   RELATED CASE(S), IF ANY *(See instructions):*

JUDGE                              DOCKET NUMBER

## IX.   DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA-MCKINLEYVILLE

DATE   06/24/2021          SIGNATURE OF ATTORNEY OF RECORD   /s/ Gary T. Lafayette