# EXHIBIT C

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice* application to be filed)
sazalesin@pbwt.com
Jonah M. Knobler (*pro hac vice* application to be filed)
jknobler@pbwt.com
Andrew D. Cohen (*pro hac vice* application to be filed)
acohen@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 336-2000
Facsimile:     (212) 336-2222

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
glafayette@lkclaw.com
Brian H. Chun (SBN 215417)
bchun@lkclaw.com
Barbara L. Lyons (SBN 173548)
blyons@lkclaw.com
Saisruthi Paspulati (SBN 319879)
spaspulati@lkclaw.com
1300 Clay Street, Suite 810
Oakland, CA 94612
Telephone:     (415) 357-4600
Facsimile:     (415) 357-4605

*Attorneys for Johnson & Johnson Consumer Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHERINE BRENNAN and MICHELLE MANG, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>     vs.<br><br>NEUTROGENA CORPORATION and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.;<br>            Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>Removed from the Superior Court of California, Alameda County, Case No. RG21101025<br><br>State Court action filed: May 26, 2021 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Johnson & Johnson Consumer Inc. ("JJCI")[1] hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 from the Superior Court for the State of California for the County of Alameda to the United States District Court for the Northern District of California. JJCI is represented by the undersigned counsel and consents to this Notice of Removal. The grounds for removal are set forth below.

1. On May 26, 2021, Plaintiffs Katherine Brennan and Michelle Mang (together, "Plaintiffs") commenced this action by filing a Class Action Complaint ("Compl.") in the Superior Court for the State of California for the County of Alameda, captioned *Katherine Brennan and Michelle Mang, Individually and on Behalf of All Others Similarly Situated vs. Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.*, Case No. RG21-101025.

2. On or about June 2, 2021, Plaintiffs' counsel attempted to deliver a demand letter and a courtesy copy of the Complaint, without a summons, to the General Counsel of "Johnson & Johnson Consumer Companies, Inc.," a defunct entity that no longer exists. *See infra* ¶¶ 20-26. Even if this entity existed, the delivery of a courtesy copy of a complaint, without formal service of process, does not start the 30-day deadline to remove. *See Murphy Bros., Inc. v. Michetti Pipestringing, Inc.*, 526 U.S. 344, 347-48 (1999); 28 U.S.C. § 1446(b).

3. On June 17, 2021, Plaintiffs' counsel emailed to Johnson & Johnson's legal department (at the address ServiceOfProcess@its.jnj.com), a summons made out to "Neutrogena Corporation," another entity that no longer exists, along with the Complaint in this matter, a civil cover sheet, a notice of hearing, and a notice and acknowledgment of receipt.

4. On June 21, 2021, Plaintiffs' counsel emailed to Johnson & Johnson's legal department (at the address ServiceOfProcess@its.jnj.com) file-stamped copies of the original

---

[1] The entities named as defendants in the Complaint, Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc., no longer exist. Johnson & Johnson Consumer Inc. is the sole proper defendant in this action. *See infra* ¶¶ 20-26.

summons, Complaint, exhibits to the Complaint, and civil case cover sheet; a notice of hearing issued by the state court dated June 9, 2021; a non-file-stamped document styled as an Amended Complaint in this matter; a non-file-stamped document styled as a request for dismissal without prejudice of Defendant Johnson & Johnson Consumer Companies, Inc. in this matter; and a non-file-stamped declaration in support of the aforementioned request for dismissal. This email was again made out to "Neutrogena Corporation," an entity that does not exist.

5. The non-file-stamped document styled as an Amended Complaint ("Am. Compl.") is captioned *Katherine Brennan and Michelle Mang, Individually and on Behalf of All Others Similarly Situated vs. Neutrogena Corporation*, Case No. RG21-101025. The non-file-stamped Amended Complaint and request for dismissal are dated June 10, 2021. It appears from the website of the Superior Court for the State of California for the County of Alameda that these documents were filed with that court on June 11, 2021, although the state court's website did not reflect until today (June 24, 2021) that any filing had been made on that date.

6. As required by 28 U.S.C. § 1446(a), attached as Exhibit A are true and correct copies of all process, pleadings, orders, and other papers or exhibits filed in the state court.

7. Removal is timely because the attempted email service of the Complaint and Amended Complaint on June 17 and June 21 on a nonexistent entity did not commence the time period for removal. Even if it had commenced the time period for removal, this Notice of Removal would be timely because it has been filed within 30 days of these dates.

8. Even though JJCI, the sole proper defendant, has not yet been served, it may still effect removal of this action. *See Sherman v. Haynes & Boone*, No. 5:14-cv-01064, 2014 WL 4211118, at *1 (N.D. Cal. Aug 22, 2014) (noting that "a defendant may remove an action prior to receiving proper service").

9. This action is properly removed to the United States District Court for the Northern District of California, and venue is proper in this District, because the Superior Court for the State of California for the County of Alameda, in which this action was originally filed, is within the Northern District of California. *See* 28 U.S.C. §§ 84(a), 1441(a).

1   10. Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be
2   promptly served upon Plaintiffs' counsel, and a Notice to Adverse Party of Removal of Civil
3   Action to Federal Court is simultaneously being filed with the Clerk of the Superior Court for the
4   State of California for the County of Alameda.  A true and correct copy of this Notice to Adverse
5   Party is attached as Exhibit B.

6   11. The Court has jurisdiction under the Class Action Fairness Act of 2005, Pub L.
7   109-2, 119 Stat. 4 (2005) ("CAFA"), codified at, *inter alia*, 28 U.S.C. §§ 1332(d), 1441(a), 1452,
8   and 1453.  As detailed below, this is a putative class action, comprised of more than 100
9   members, which places in controversy more than $5 million, and there is minimal diversity
10  between the parties.  *See infra* ¶¶ 30-47.

11                              **PLAINTIFFS' COMPLAINT**

12  12. Plaintiffs allege that they are residents of California.  (Compl. ¶¶ 6-7; Am. Compl.
13  ¶¶ 2-3.)  They do not expressly allege their state(s) of citizenship, as opposed to their state of
14  residence.

15  13. The Complaint purports to name "Neutrogena Corporation" and "Johnson &
16  Johnson Consumer Companies, Inc." as defendants.  (Compl. ¶¶ 8-9.)  The Amended Complaint
17  purports to name "Neutrogena Corporation" as a defendant.  (Am. Comp. ¶ 4.)  However, JJCI—
18  a New Jersey corporation with its principal place of business in New Jersey—is the sole proper
19  defendant in this action.  *See infra* ¶¶ 20-26.

20  14.  Plaintiffs' claims relate to certain sunscreen and sun care products (the
21  "Sunscreen Products") manufactured, distributed, and marketed by JJCI under the brand name
22  Neutrogena®.  Plaintiffs explicitly name 26 different Sunscreen Products in their Complaint and
23  Amended Complaint.  They also state that they "reserve their right to include" "additional
24  Sunscreen Products" in a future amended Complaint.  (Compl. ¶ 10 & n.2; Am. Compl. ¶ 5 &
25  n.2.)

26  15. Plaintiffs claim that certain lots of the Sunscreen Products have been adulterated
27  with benzene, a carcinogenic chemical; that the possible presence of benzene was not disclosed
28

**-4-**

in the Sunscreen Products' advertising or labels; and, as a result, that the Sunscreen Products were misbranded, adulterated, and/or falsely advertised. (Compl. ¶¶ 1, 14-23, 38, 57-58; Am. Compl. ¶¶ 1, 9-18, 33, 52-53.)

16. Plaintiffs contend that they and other consumers have suffered injury because they would not have purchased the Sunscreen Products had they known that there was allegedly a risk the Sunscreen Products could contain benzene. (Compl. ¶¶ 47, 54; Am. Compl. ¶¶ 43, 49.)

17. In their Complaint, Plaintiffs purport to assert claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.* (Count I), and California's False Advertising Law, Cal. Bus. & Prof. Code §17500 *et seq.* (Count II). In their Amended Complaint, Plaintiffs assert those same claims, and purport to bring additional claims under California's Consumers Legal Remedies Act (the "CLRA"), Cal. Bus. & Prof. Code §1750, *et seq.* (Count III), and various California common law theories (Counts IV-IX).

18. Plaintiffs seek to litigate their claims on behalf of themselves and a proposed class defined as "[a]ll consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption." (Compl. ¶ 25; Am. Compl. ¶ 20.)

19. Among other forms of relief, Plaintiffs seek restitution, disgorgement, actual and statutory damages, injunctive relief, a corrective advertising campaign, a mandatory product recall, other unspecified equitable relief, declaratory relief, attorney's fees, costs of litigation, and pre- and post-judgment interest. (Compl. Prayer for Relief; Am. Compl. Prayer for Relief.)

## JJCI IS THE SOLE PROPER DEFENDANT

20. Plaintiffs' Complaint purports to name as defendants both "Neutrogena Corporation" and "Johnson & Johnson Consumer Companies, Inc." (together, the "Defunct Entities"). Plaintiffs' Amended Complaint names only "Neutrogena Corporation" as a defendant. But there are no entities by either of those names.

21. On June 29, 2015, pursuant to a multi-step restructuring transaction, both of the

**-5-**

1  Defunct Entities merged into JJCI, which was the sole surviving entity.  (Declaration of Jennifer
2  Sheehy in Support of Johnson & Johnson Consumer Inc.'s Notice of Removal, dated June 24,
3  2021 ("Sheehy Decl.") ¶¶ 3-9.)  As a result of this merger, the Defunct Entities immediately
4  ceased to exist.  *See* Cal. Corp. Code § 1107(a) (noting that "[u]pon merger . . . the separate
5  existence of the disappearing corporations ceases"); *Kolker v. VNUS Med. Techs.*, No. CV 10–
6  00900–JF–PVT, 2010 WL 3059220, *3 (N.D. Cal. Aug. 2, 2010) ("[A]fter the merger and
7  complete transfer of all of its assets and liabilities to Tyco, VNUS ceased to exist as a separate
8  legal entity and thus could not properly be joined as a party to the instant action." (citation
9  omitted)).

10     22.  Records accessible through the California Secretary of State's public website
11  reflect that, as of December 2, 2015, the entity formerly known as Neutrogena Corporation had
12  surrendered its right and authority to transact business in the State of California and had revoked
13  its designation of agent for service of process in California.  A true and correct copy of that
14  Certificate of Surrender of Right to Transact Intrastate Business is attached hereto as Exhibit C.

15     23.  Even though Plaintiffs do not plead this merger transaction in the Complaint or
16  Amended Complaint, the Court may consider this information for purposes of assessing its
17  subject-matter jurisdiction, because federal courts are not limited to the face of the complaint,
18  and may receive and consider summary judgment-type evidence when assessing their
19  jurisdiction.  *See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80-
20  81 (2d Cir. 2005) ("It is . . . well established that when the question is subject matter jurisdiction,
21  the court is permitted to rely on information beyond the face of the complaint."); *Kelly v. Verizon*
22  *Pa., LLC*, No. 16-5672, 2019 WL 558100, at *8 (E.D. Pa. Feb. 12, 2019) (in CAFA case, noting
23  that "the jurisdictional inquiry does not end at review of the pleadings, but also permits the
24  parties to establish or disprove jurisdictional facts through an evidentiary showing").

25     24.  This merger transaction occurred almost two years before the start of the
26  purported class period alleged in the Complaint and Amended Complaint (*i.e.*, May 25, 2017),
27  and well before any of the conduct or events alleged.  Therefore, all of the conduct challenged in

1  this case, and any liability that may exist as a result of that conduct, was committed or incurred
2  by JJCI in the first instance, and not by the Defunct Entities.

3       25.    Moreover, even if any of the relevant conduct or liability was committed or
4  incurred by the Defunct Entities in the first instance, "[u]pon merger . . . the surviving
5  corporation"—here, JJCI—automatically "succeed[s], without other transfer, to all the rights and
6  property of each of the disappearing corporations and [is] subject to all the debts and liabilities of
7  each *in the same manner as if the surviving corporation had itself incurred them*." Cal. Corp.
8  Code § 1107(a) (emphasis added). In other words, any liability that the Defunct Entities might
9  have incurred before the merger now belongs solely to JJCI by operation of law.

10       26.    Consequently, the sole proper defendant in this action is JJCI. The Defunct
11  Entities have no legal existence; they cannot be sued; and they cannot be held liable to Plaintiffs
12  or to any member of the putative class under any circumstances. The Court should substitute
13  JJCI in the caption of this case and treat JJCI as the only defendant in this case for all purposes.

### BASIS OF FEDERAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

16       27.    This action is removable to this Court because federal diversity jurisdiction exists
17  over Plaintiffs' claims pursuant to CAFA.

18       28.    Congress enacted CAFA to enlarge federal jurisdiction over class actions. CAFA
19  applies to any civil action commenced on or after February 18, 2005. This action was
20  commenced on May 26, 2021, well after CAFA's effective date.

21       29.    CAFA provides that a putative class action against a non-governmental entity
22  may be removed to federal court if: (a) the number of proposed class members is not less than
23  100; (b) any member of the proposed class is a citizen of a state different from any defendant;
24  and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.
25  *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b). As set forth below, each of these
26  requirements is satisfied.

**A.     There Are More Than 100 Putative Class Members**

30.     CAFA's first requirement, that the proposed class contain at least 100 members, is satisfied.  *See* 28 U.S.C. § 1332(d)(5).

31.     Plaintiffs' proposed class is defined as "[a]ll consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption."  (Compl. ¶ 25; Am. Compl. ¶ 20.)

32.     Plaintiffs acknowledge that the members of the class are "numerous" and state that they believe the proposed class contains "thousands of purchasers."  (Compl. ¶ 26; Am. Compl. ¶ 21.)

33.     Moreover, as discussed below, retail sales of the Sunscreen Products in California during the class period exceed $108 million.  Common sense dictates that the average putative class member spent far less than $1.08 million on sunscreen and sun care products during the class period.  It is therefore reasonable to assume that there are far more than 100 members in the putative class.

**B.     Minimal Diversity Exists Between The Parties**

34.     CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, is also satisfied.  *See* 28 U.S.C. § 1332(d)(2).

35.     Plaintiffs purport to represent a class of "[a]ll consumers who purchased [Sunscreen Products] in the State of California from May 25, 2017 to the present . . . ."  (Compl. ¶ 25; Am. Compl. ¶ 20.)  As such, it is reasonable to assume that at least one member of the putative class is a citizen of California.  *See Flores v. Chevron Corp.*, No. 11-cv-2551-JHN-FMOx, 2011 WL 2160420, at *3 (C.D. Cal. May 31, 2011) (finding it reasonable to conclude "that if a [class action] complaint asserts that the case is brought on behalf of California purchasers," numerous class members are "California citizens").

36.     On the defendants' side, only the citizenship of JJCI—and not the former citizenship of the Defunct Entities—is relevant to the diversity-of-citizenship analysis.  *See Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (noting that the citizenship of a

company that ceases to exist as a result of a merger is irrelevant to diversity jurisdiction, and that the citizenship of the surviving company controls); *accord Kelly*, 2019 WL 558100, at *4 ("Under well-settled law, when two or more corporations merge, 'the citizenship of the surviving entity is controlling [in the jurisdictional analysis]; the citizenship of the predecessor company becomes irrelevant.'" (quoting 13F Charles A. Wright et al., Federal Practice and Procedure § 3623 (3d ed. 2009))).

37. At the time this lawsuit was filed, and at all other times relevant to this lawsuit, JJCI—the sole proper defendant—was and has been a New Jersey corporation with its principal place of business in New Jersey. (*See* Sheehy Decl. ¶¶ 9-10.) Thus, JJCI is a citizen of New Jersey. *See* 28 U.S.C. § 1332(c)(1).

38. Diversity of citizenship therefore exists between at least one proposed class member and JJCI, satisfying 28 U.S.C. § 1332(d)(2).

**C.    The Amount In Controversy Exceeds $5 Million**

39. CAFA's final requirement—that the amount in controversy, exclusive of interest and costs, exceed $5 million—is also satisfied. *See* 28 U.S.C. § 1332(d)(2).

40. Although JJCI disputes the allegations in the Complaint and Amended Complaint and denies all liability and damages, Plaintiffs' allegations and prayer for relief, irrespective of their merits, place in controversy an amount greater than $5 million.

41. Where, as here, the complaint does not set forth a specific sum of damages sought, a defendant need only make a "plausible allegation" that the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). The defendant need not make "evidentiary submissions" to establish the amount in controversy, but a district court may consider "summary judgment-type evidence" if the defendant elects to offer it. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

42. Here, Plaintiffs purport to represent a class defined as "[a]ll consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption." (Compl. ¶ 25; Am. Compl. ¶ 20.) On

behalf of this putative class, Plaintiffs seek, *inter alia*, "restitution" of "all monies spent on the Sunscreen Products" during the stated class period.  (Compl. ¶¶ 54, 61, Prayer for Relief F-G; Am. Compl. ¶¶ 49, 56, Prayer for Relief F-G.)

43.  From May 25, 2017 (*i.e.*, the start of the class period) through May 29, 2021, the total retail sales of the 26 Sunscreen Products named in the Complaint and Amended Complaint within the state of California exceeded $108 million.  (*See* Declaration of Matthew Plugues in Support of Johnson & Johnson Consumer Inc.'s Notice of Removal, dated June 23, 2021 ¶ 7.) CAFA's $5 million amount-in-controversy requirement, therefore, is satisfied more than 21 times over on the basis of Plaintiffs' restitution demand alone, without considering any of their other requested relief.

44.  Plaintiffs also seek injunctive relief, including a prohibition of certain advertising, a corrective advertising campaign, and a mandatory product recall.  (Compl. ¶¶ 53, 61, Prayer for Relief B-E; Am. Compl. ¶¶ 53, 56, Prayer for Relief B-E.)  It is common sense that complying with these demands would impose millions of dollars of costs on, and cause substantial lost profits to, JJCI.  These sums are also included in the amount in controversy, driving it even further above $5 million.  *See Tuong Hoang v. Supervalu Inc.,* 541 F. App'x 747, 747-48 (9th Cir. 2013); *see also Int'l Padi, Inc. v. Diverlink*, No. 03-56478, 2005 U.S. App. LEXIS 14234, at *3-4 (9th Cir. July 13, 2005) ("[I]n determining the amount in controversy, we may also include the value of the requested injunctive relief to either party.").

45.  Plaintiffs also seek payment of attorney's fees (Compl. Prayer for Relief I; Am. Compl. Prayer for Relief I), which further increases the amount in controversy above $5 million. *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 n.4 (9th Cir. 2018) ("The possibility that the putative class members could receive an award of attorneys' fees buttresses our conclusion that the amount in controversy exceeds $5 million."); *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (in putative class action removed under CAFA, finding it "reasonable to assume that [the named plaintiff's] attorney would seek fees equal to 25 percent of the amount in controversy if he were to prevail").

46. Plaintiffs, in their Amended Complaint, purport to add causes of action that sound in strict product liability (Counts VIII-IX). These causes of action appear to seek compensation for alleged personal injuries. (*See, e.g.*, Am. Compl. ¶ 91 ("Plaintiffs and the Class were injured by the use of the Sunscreen Products . . . because benzene is a known carcinogen that is absorbed through the skin."); *id.* ¶ 97 ("Plaintiffs and the Class suffered injuries from exposure to benzene.").) Plaintiffs' apparent attempt to seek personal injury damages on behalf of themselves and a statewide class of consumers, in addition to the economic damages already discussed, further confirms that the total amount in controversy exceeds $5 million.

47. Accordingly, JJCI has plausibly alleged that the amount in controversy, exclusive of interest and costs, far exceeds CAFA's $5 million jurisdictional threshold.

**D.     None of CAFA's Jurisdictional Exceptions Applies Here**

48. To effect removal, JJCI's only burden is to plausibly allege that CAFA's three jurisdictional requirements are met. JJCI does not have the burden to allege or prove the *inapplicability* of CAFA's jurisdictional exceptions found in 28 U.S.C. § 1332(d)(3) and (d)(4). The burden of asserting and proving the applicability of those exceptions lies squarely with Plaintiffs. *See Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).

49. For the avoidance of doubt, however, none of CAFA's jurisdictional exceptions could apply in this case.

50. 28 U.S.C. § 1332(d)(4)(A)—the so-called "local controversy" exception—requires a district court to decline jurisdiction over a removed class action under certain circumstances. However, there are at least three reasons why the exception does not apply here.

51. First, for the "local controversy" exception to apply, there must be a defendant "who is a citizen of the State in which the action was originally filed"; that in-state defendant must be one "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class"; and that in-state defendant must be one "from whom significant relief is sought by members of the plaintiff class." *Id.*

**-11-**

52. These requirements are not met here. As discussed above, the sole proper defendant, JJCI, is a citizen of New Jersey and no other state. And although Neutrogena Corporation was formerly a citizen of California, that non-existent entity is not a proper defendant at all—let alone a defendant "whose alleged conduct forms a significant basis for the claims asserted" and "from whom significant relief is sought." *Cf. Taylor v. FedEx Freight, Inc.*, No. 10-cv-2118-LH, 2010 WL 4316136, at *2 (N.D. Cal. Oct. 26, 2010) (finding "local controversy" exception inapplicable, even though "the actions of [a former] California entity . . . [were allegedly] at issue," because that entity had merged into a non-California entity and no longer existed). Indeed, as noted above, Neutrogena Corporation ceased to exist almost two years before the start of the alleged class period, so none of the conduct that "forms" any "basis for the claims" asserted herein was *ever* attributable to Neutrogena Corporation.

53. There is another reason why the "local controversy" exception does not apply here. That exception is inapplicable if, "during the 3-year period preceding the filing of [the removed] class action," any "other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *Id.* § 1332(d)(4)(A)(ii).

54. Here, the same law firm that filed this action filed another, substantially identical putative class action the preceding day against the same putative defendants. *See* Complaint, *Meredith Serota, Individually and on Behalf of All Others Similarly Situated v. Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc.*, No. 0:21-cv-61103-AHS (S.D. Fla. filed May 25, 2021). A true and correct copy of the *Serota* complaint is attached hereto as Exhibit D.

55. Whereas the Complaint and Amended Complaint in this case purport to bring claims on behalf of a class of California consumers, the *Serota* complaint purports to assert nearly identical claims on behalf of a class of consumers from all U.S. states and territories "*excluding* California." *Id.* ¶ 23 (emphasis added). In other words, Plaintiffs' counsel has attempted to gerrymander a single nationwide controversy into two separate class actions in an

**-12-**

attempt to keep their California claims in state court. Preventing such strategic pleading was one of CAFA's explicit goals. *See Kendrick v. Conduent State & Loc. Sols., Inc.*, 910 F.3d 1255, 1260–61 (9th Cir. 2018) (noting that "the reason for the no prior class action prerequisite to remand is to ensure that controversies given rise to multiple class actions be heard in federal court in one proceeding").

56. There is yet another reason why the "local controversy" exception does not apply here. Namely, that exception applies only where the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).

57. Here, the Sunscreen Products at issue were advertised and sold on a nationwide basis—not merely in California. Therefore, to the extent the advertising and sale of the Sunscreen Products caused any injury (which JJCI denies), that injury was distributed across the nation and did not occur "principal[ly]" in California. *See Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086–87 (N.D. Cal. 2011) ("If the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for [the 'local controversy'] exception, even if it were brought only as a single-state class action. In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members [selected by the plaintiff] were injured.").

58. 28 U.S.C. § 1332(d)(4)(B)—the so-called "home state" exception—requires a district court to decline jurisdiction over a removed class action under certain circumstances. One of the necessary prerequisites for this exception is that each of "the primary defendants" must be "citizens of the State in which the action was originally filed." *Id.*

59. This requirement is not met here. As discussed above, the sole proper defendant, JJCI, is a citizen of New Jersey and no other state. JJCI is not a "citizen[] of the State in which the action was originally filed," *i.e.*, California. And although one of the Defunct Entities (and the sole defendant in the Amended Complaint), Neutrogena Corporation, was a citizen of

California during its lifetime, that non-existent entity, which cannot be sued and which has no liability to putative class members as a matter of law, is not a proper defendant at all—let alone a "primary defendant." *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019) (discussing criteria for determining whether a defendant is a "primary" defendant).

60. Lastly, 28 U.S.C. § 1332(d)(3)—the so-called "interests of justice" exception—*permits* a court to decline jurisdiction over a removed class action "in the interests of justice," in its discretion, under certain circumstances.

61. One necessary prerequisite for this exception is that all of "the primary defendants" must be "citizens of the State in which the action was originally filed." *Id.* As explained above, this mandatory prerequisite is not met here, because JJCI—the sole proper defendant—is not a citizen of California.

62. Even if this mandatory prerequisite were met, the six discretionary factors relevant to the "interests of justice" exception also militate in favor of retaining jurisdiction. For example, because the Sunscreen Products were advertised and sold nationwide, and are presently the subject of Citizen Petition before the United States Food and Drug Administration, an organ of the federal government (Compl. ¶ 12; Am. Compl. ¶ 7), the underlying controversy is a "matter of national or interstate interest," 28 U.S.C. § 1332(d)(3)(A), and is not "local" to California. *See, e.g., Melissa D. Duflock Revocable Tr. v. Chevron Corp.*, No. 13-cv-3177 SJO (SHx), 2013 WL 4236397, at *3-7 (C.D. Cal. Aug. 14, 2013) (citing Rep. 109–14, 36, 2005 U.S.C.C.A.N. 3, 35); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011).

63. Additionally, the existence of the related Florida class action "strongly favor[s] the [retention] of federal jurisdiction" under the "interests of justice" exception so that "the claims of all proposed classes [can] be handled efficiently on a coordinated basis" by the federal courts. S. Rep. 109–14, at 38; *see* 28 U.S.C. § 1332(d)(3)(F).

64. Likewise, the attempt of Plaintiffs' counsel to gerrymander its claims into two nearly identical actions "in a manner that seeks to avoid Federal jurisdiction" weighs heavily

-15-

1  against remand under the "interests of justice" exception.  *Id.* § 1332(d)(3)(C).

2      65.    In sum, although JJCI does not bear the burden of establishing that CAFA's

3  jurisdictional exceptions are inapplicable, JJCI has nonetheless shown their inapplicability.

## **CONCLUSION**

5      66.    For the foregoing reasons, this action is properly removed to this Court.

6      67.    JJCI reserves the right to amend or supplement this Notice of Removal, and

7  reserves all rights and defenses, including those available under the Federal Rule of Civil

8  Procedure 12.

9      **WHEREFORE**, JJCI, the sole proper defendant in this action, respectfully removes this

10 action from the Superior Court for the State of California for the County of Alameda to the

11 United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§

12 1332, 1441, 1446, and 1453.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal

13 is being contemporaneously filed with the Superior Court of the State of California, County of

14 Alameda and served upon Plaintiffs' counsel.

16     DATED:  June 24, 2021    PATTERSON BELKNAP WEBB & TYLER LLP

17     LAFAYETTE & KUMAGAI LLP

20     By:    /s/ Gary T. Lafayette (CA Bar No. 88666)

22     *Attorneys for Johnson & Johnson Consumer Inc.*

**12793571**