BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: JOHNSON & JOHNSON AEROSOL SUNSCREEN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL NO. 3015 |

**INTERESTED PARTY RESPONSE OF SEROTA AND BRENNAN PLAINTIFFS**

Plaintiffs Meredith Serota, Jacob Somers, Lauren Harper, Heather Rudy, Fredric Salter, Judith Barich, Dina Casaliggi, Kelly Granda, Kyra Harrell, and Carman Grisham ("Serota Plaintiffs"), and Katherine Brennan and Michelle Mang ("Brennan Plaintiffs") respectfully submit this interested party response to the Jimenez Plaintiffs'[1] motion for transfer of actions to the District of New Jersey. The Serota Plaintiffs are the plaintiffs in *Serota v. Neutrogena Corp., et al.*, 21-cv-61103 (S.D. Fla.). The Brennan Plaintiffs are plaintiffs in *Brennan et al. v. Johnson & Johnson Consumer, Inc., at al.*, 21-cv-04869-JD (N.D. Cal.).

In short, the Serota Plaintiffs and Brennan Plaintiffs believe that all cases concerning benzene in J&J sunscreen products – whether aerosol or not – should be transferred for consolidation or coordination of pretrial proceedings to the Northern District of California.

There are numerous factors favoring transfer to this district. There are already three related cases pending before Judge Donato including the Brennan Plaintiffs' case. Since being assigned the cases, Judge Donato has issued a Case Management Scheduling Order setting the initial conference for October 21, 2021 in San Francisco. Moreover, the Serota Plaintiffs' case was first filed by over a month and after amendment has putative class representatives from

---

[1] Capitalized terms herein are used as defined in the Jimenez Plaintiffs' motion unless otherwise defined herein.

several states who all support transfer to the Northern District of California. In addition to the Serota Plaintiffs and Brennan Plaintiffs, there is anticipated additional support of plaintiffs for transfer to the Northern District of California. The district is in a convenient location – Neutrogena, the brand with by far the most products at issue is headquartered in Los Angeles – rendering the district convenient for witnesses. Documents are digital or can be digitized and easily transferrable to the district. Finally, Judge Donato is an experienced judge with capacity to take on an MDL. Judge Wolfson, while also experienced with MDLs, currently has the J&J Talc MDL before her, a massive undertaking with over 30,000 individual suits.

Accordingly, the Court should transfer all J&J benzene sunscreen product suits to the Northern District of California for coordination or consolidation before Judge Donato.

## BACKGROUND OF SEROTA AND BRENNAN

Ms. Serota, a Florida resident, filed suit on May 25, 2021 in the Southern District of Florida, Case No. 21-cv-61103. Her case is the first filed of all cases seeking relief regarding the presence of benzene in J&J sunscreen products. On July 30, 2021, the Serota Plaintiffs filed an amended complaint (Exhibit A hereto) adding an additional Florida plaintiff and plaintiffs from Colorado, Illinois, Maryland, Michigan, New York, Ohio, Oregon, and Washington.

The Brennan Plaintiffs filed their suit in California State Superior Court on May 26, 2021 and it was removed to the Northern District of California by J&J on June 24, 2021. (The Docket Sheet and Complaint in the Brennan Action are annexed hereto as Exhibit B). Their suit was the second filed case. Although the Brennan Plaintiffs action was not listed in the Jiminez Plaintiffs' motion among those that should be consolidated or coordinated, it was listed by J&J in their Notice of Related Action filed on August 13, 2021 (Doc. No. 26). The Brennan case also seeks

relief against J&J for the presence of benzene in J&J sunscreen products. *See* Exhibit B, passim.[2]

## ARGUMENT

The Serota Plaintiffs and the Brennan Plaintiffs agree that *all* actions relating to benzene in J&J sunscreen products should be transferred for coordinated or consolidated pretrial proceedings. However, they believe that the Jimenez Plaintiffs request is faulty in two aspects:

1) The Panel's Order should make clear that the actions transferred seek relief based on the presence of benzene in all J&J sunscreen products, not merely in aerosol, i.e., spray products – many of the cases named by the Jimenez Plaintiffs identify that non-aerosol sunscreen products contained benzene and are at issue; and

2) The actions should be transferred to the Northern District of California where there are already three cases, Brennan, Dominguez, and Rafal, which have all been found related and transferred to Judge Donato under the district's Local Rules.

**1. All cases relating to benzene in J&J sunscreen products – aerosol or not – should be transferred**

As noted in the Jimenez application, all of the cases regarding benzene in J&J sunscreen products are related because (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action." 28 U.S.C. § 1407(a).

The Serota Plaintiffs and Brennan Plaintiffs note that contrary to the framing by the Jimenez Plaintiffs, the cases at issue touch on aerosol sunscreen and in many instances non-

---

[2] Although the Brennan Plaintiffs initially named Neutrogena Corporation as defendant, J&J removed the case and has provided evidence that Neutrogena no longer exists as an independent corporation. Accordingly, J&J acknowledges that it is the true party in interest in the Brennan Plaintiffs' suit.

3

aerosol sunscreen. For example, the Brennan Plaintiff's complaint includes aerosol and non-aerosol sunscreen products—because testing revealed that both products contain benzene. Exhibit B at 5-6. Likewise, the Dominguez complaint lists spray and non-spray sunscreen. Pet. Exhibit A-2, Complaint at 3. So does the Serota Complaint. Exhibit A at 8-10. As does the Briglio complaint. Pet. Exhibit A-7, Complaint at 1. Finally, the Lavalle complaint also lists spray and non-spray products. Pet. Exhibit A-8, Complaint at 1-2.

Regardless of the inclusion of non-spray products, the common questions of fact remain the same. For example, there remain common questions as to, as expressed in the petition:

a. Whether the Products are defective in that they contain benzene, a known human carcinogen;

b. Whether and when J&J had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

c. Whether the Products provide the benefits claimed by J&J on the labeling, packaging, and/or in the course of its marketing;

d. Whether J&J's conduct violated consumer fraud laws;

e. Whether J&J's conduct constituted a breach of applicable warranties;

f. Whether J&J's acts and omissions make it liable for negligence and strict products liability;

g. Whether J&J engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class members;

h. Whether, as a result of J&J's omissions and/or misrepresentations of material facts,

4

Plaintiffs and putative Class members have suffered an ascertainable loss of monies and/or property and/or value; and

i. Whether Plaintiffs and putative Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

Jimenez Plaintiffs' Brief in Support of Petition ("Pet.") at 6.

The Serota Plaintiffs and Brennan Plaintiffs are unaware of any cases that seek relief on behalf of only purchasers of non-aerosol products, and it may well be that there are and will be none. However, it is clear that it is not only aerosol products that are at issue and this may become a relevant consideration if there are further cases filed after the Panel issues its Order. Accordingly, the Serota Plaintiffs and the Brennan Plaintiffs respectfully request that the Panel clarify that its Order is not based purely on the presence of related claims regarding aerosol products only.

**2. The cases should be transferred to Judge Donato in the Northern District of California**

As discussed below, a variety of the factors considered by the Panel in prior litigation favors transfer of cases for coordination or consolidation in the Northern District of California before Judge Donato.

**a. There are three cases already set for coordination in the Northern District of California and another pending in the Central District of California**

The Panel has previously considered the pendency of multiple actions in the same district as a basis for transfer to that district. *See, e.g., In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019) (transferring to N.D. Cal. because "[f]ive constituent actions, including the first-filed case, are pending in the Northern District of California, as are several tag-alongs."); *In re Tyson Foods, Inc., Fair Labor Standards Act Litig.*, 502 F. Supp. 2d 1358, 1360 (J.P.M.L. 2007) (noting the pendency of "two potential tag-along

5

actions" in the U.S. District Court for the Middle District of Georgia as a factor weighing in favor of selection of that district).

On August 10, 2021, Magistrate Judge Westbrook of the Northern District of California determined that the Brennan, Dominguez, and Rafal cases are all related. On August 11, 2021, the three cases were assigned to Judge Donato. Judge Donato has since issued a Case Management Scheduling Order setting the initial conference for October 21, 2021 in San Francisco. These factors favor selection of the Northern District of California before Judge Donato. *See, e.g.*, *In re J.P. Morgan Chase & Co. Sees. Litig.*, 452 F. Supp. 2d 1350, 1351 (J.P.M.L. 2006) (transferring case to district which had the "earliest filed" and "most procedurally advanced" action). In addition, the French case is also pending in the Central District of California and it would likely be convenient for that case to be transferred to the Northern District as well. Accordingly, this factor weighs in favor of consolidating the actions before Judge Donato.

b. **The first-filed case supports transfer to the Northern District of California and the second-filed case is in that District**

The Panel also considers the location of the first-filed case as an influential factor. *See, e.g., In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (noting the presence of the "first-filed" action as an influential factor in the selection of the transferee district). *See also In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (transferring to Oklahoma because "[t]he Oklahoma action is the first-filed action and the most procedurally advanced"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d at 1368 (noting presence of first-filed case in district as factor in transferring cases); *In re Mattel, Inc., Toy Lead Paint Products Liability*

*Litigation,* 528 F.Supp.2d 1367, 1369 (J.P.M.L.2007) (transferring case to Central District of California because, among other things, "[t]he first-filed action is pending there.").

Here, as discussed, Ms. Serota filed the first case in Florida but she and all of the Serota Plaintiffs who are potential class representatives in numerous states support transfer to the Northern District of California where the Brennan Plaintiffs filed the second suit. Serota and Brennan filed initial complaints on May 25th and 26th respectively. The next filed suit was the French case in the Central District of California on June 21, 2021. The first suit filed in the District of New Jersey was the Jimenez suit which was filed over a month later, on June 29, 2021. Respectfully, the Panel should weight the wishes of those who were first to file.

   c. **There is likely support from several responding parties for transfer to the Northern District of California**

The Panel has considered the support of parties in determining the best transferee court. *See, e.g., In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (relying on the fact that the District of New Jersey was "the preferred transferee forum of several responding parties" in deciding to transfer the MDL to that district); *In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015) (selecting Northern District of California as transferee district, noting that "[n]umerous plaintiffs support centralization in this district, both in the first instance and in the alternative.").

Here, the Serota Plaintiffs who potentially represent classes of several states and the Brennan Plaintiffs all support transfer to the Northern District of California. They believe that other plaintiffs including in the Dominguez and Rafal actions and potentially the French action will support transfer to that district. Accordingly, this factor also supports transfer to the Northern District of California.

7

### d. The Northern District of California is a Convenient Location

The Jimenez Plaintiffs point to the presence of witnesses and documents in New Jersey as a significant factor in favor of transfer to the District of New Jersey. Pet. at 9-10. However, it is unclear whether the relevant documents and witnesses will be centralized in New Jersey. Most of the sunscreen products at issue are sold under the Neutrogena brand name. Neutrogena was formerly a separate corporation but is now apparently an unincorporated division within J&J. Notably, Neutrogena maintains its headquarters in Los Angeles, CA at 5760 96th St, Los Angeles, CA 90045. Thus it is just as likely that California, not New Jersey, has a more significant connection to this litigation and is the forum where relevant witnesses may be located.

Moreover, the presence of documents is no longer a significant factor in weighing transfers because "[i]n an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 857 (S.D.N.Y. 2017) (citation omitted). *See also Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC,* 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.") (citation omitted); *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 678 (E.D. Tex. 2006) ("regardless of where the case is tried, the documents will most likely be exchanged electronically"). Accordingly, regardless of the location of documents, they can be transported to the Northern District of California with ease.

The Jimenez Plaintiffs note that the District of New Jersey is a highly convenient location because the region is serviced by multiple airports and the major airlines. Pet. at 9-10. The same

is true of the Northern District of California. General questions of travel accessibility are not a factor here.

Accordingly, on the record presented by the Jimenez Plaintiffs, there is no basis to favor the District of New Jersey on the convenience of the parties because it appears that relevant witnesses are more likely to be in California, the relevant documents are likely in digital form, and any non-digital records will be digitized during the course of litigation.

### e. California has significant interest in this litigation

J&J has indicated that the products covered by the Brennan Plaintiffs' litigation represent over $108 million in sales during the class period. Exhibit C (Notice of Removal of Civil Action (without exhibits) at 8). California is a state of almost 40 million people. New Jersey has roughly a quarter the number of residents. California has a significant interest in resolving the issues in this suit for its populace who likely make up a substantially higher number of class members than New Jersey residents.

Moreover, given the population disparity, the likelihood of follow-on suits in California is higher. It is preferable that these actions be consolidated within California. *See In re Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, Case No. 20-C-5965, 2021 WL 3290962, at *6 (N.D. Ill. Aug. 1, 2021) (noting that "district courts around the country are on notice to transfer relevant cases to this Court" and "a number of tag-along cases have already been filed in other districts and then transferred to this Court within days" and ordering "any new plaintiffs to file actions in their home districts . . . and then to ensure that those actions are transferred before this Court."); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, MDL No. 2592, Case No. 15-CV-03913, 2021 WL 2853069, at *1 (E.D. La. July 8, 2021) ("Subsequent Xarelto cases filed in federal court have been transferred to this district court . . . as 'tag along' cases.").

### f. Judge Donato is an Experienced Judge with Two Pending MDLs and Judge Wolfson's Docket Already has the massive J&J Talc MDL

Finally, there is little question that Judge Donato is qualified to manage the cases. Judge Donato currently has two MDLs before him[3] and the Panel has previously found that "[h]e is an experienced transferee judge with the willingness and ability to manage [multi-district] litigation." *In re Google Antitrust Litig.*, MDL No. 2981, ___ F. Supp. 3d ___, 2021 WL 409555, at *3 (J.P.M.L. Feb. 5, 2021). Moreover, the Northern District of California has more MDLs pending before it than any other Court, and the Court has the experience and resources to manage the litigation.[4]

The Jimenez Plaintiffs note that Judge Wolfson is qualified to manage the cases. Judge Wolfson also has two MDLs currently before her.[5] What the Jimenez Plaintiffs do not mention is that Judge Wolfson currently has the *Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, MDL-2738 pending before her. This is a massive undertaking with over 34,000 actions.[6] By contrast, Judge Donato's MDLs consist of only 22 and 18 actions.[7] The Panel should consider the relevant docket conditions before assigning the MDL. *See, e.g., In re Classicstar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) (indicating that the transferee district's "general docket conditions permit us to make the Section 1407 assignment knowing that the court has the resources available to manage [the] litigation"); *In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007) (specifying that the transferee judge "has the time" to efficiently manage the

---

[3] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-15-2021.pdf (last accessed August 11, 2021) (Exhibit D hereto).
[4] Exhibit D.
[5] *Id*.
[6] *Id*.
[7] *Id*.

litigation). Given Judge Wolfson's management of the gargantuan Talc litigation involving J&J, it makes little sense for her to also take on another significant J&J MDL regarding sunscreen.

### 3. The Southern District of Florida also would be an appropriate venue

In the alternative, if the Panel deems centralization appropriate but does not find the Northern District of California a suitable transferee district, the Serota Plaintiffs and Brennan Plaintiffs suggest that the Southern District of Florida is the most appropriate alternative forum. The Southern District of Florida is the site of the first-filed case (*Serota*). The Panel has held that the district where the first action was filed is an "appropriate transferee district." *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 536 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (ordering transfer to District of Nebraska in part "because the first-filed action was brought there"); *see also In re Wells Fargo Mortg. Lending Pracs. Litig.*, 545 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008) (selecting transferee district in part because the "first-filed action" is pending there).

Moreover, the Serota Plaintiffs action represents the broadest of all actions filed to date—with putative class representatives representing nine states (Florida, Colorado, Illinois, Maryland, Michigan, New York, Ohio, Oregon, and Washington). It also seeks relief based on the presence of benzene in all J&J sunscreen products, not merely aerosol products. Thus, the Panel may quite logically prefer transfer to the district where broader action is pending. *See, e.g., In re: Fluidmaster, Inc.*, 65 F. Supp. 3d 1397 (J.P.M.L. 2014) (broadest complaint in action pending in the chosen transferee district); *In re Oreck Corporation Halo Vacuum Mktg. and Sales Pract. Litig.*, 842 F. Supp. 2d 1380 (J.P.M.L. 2012) (action pending in transferee district is the only action involving all four allegedly defective products); *In re Novartis Wage and Hour Litig.*, 460 F.Supp.2d 1382 (J.P.M.L. 2006) (action broader in scope pending in transferee district); *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348 (J.P.M.L. 2004) (action in transferee district

includes both direct-and indirect-purchaser claims); *In re Wireless Telephone Services Antitrust Litig.*, 249 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (transferee district chosen in part because "this district includes the broadest class claims of any of the pending actions.").

Given that this sunscreen litigation is nationwide in scope and no single district is going to be convenient for all parties—with Neutrogena headquartered in California where three related cases are pending in the Northern District and with J&J based in New Jersey—it makes sense for the Panel to weigh other relevant factors in choosing an appropriate forum if the Northern District of California is not chosen. To that end, the Serota Plaintiffs filed the first action in this district; it is the broadest action pending anywhere; and this district provides an easily accessible metropolitan forum for this litigation. For these reasons, the Serota Plaintiffs and Brennan Plaintiffs submit that the Southern District of Florida is an appropriate alternative choice for centralization.

## CONCLUSION

Wherefore, for all the foregoing reasons, the Serota Plaintiffs and Brennan Plaintiffs respectfully request an Order transferring all related cases regarding benzene in J&J sunscreen products to Judge Donato in the Northern District of California, or, in the alternative, to the Southern District of Florida, for coordination or consolidation.


DATED:   August 16, 2021

                                             **AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**


                                             By**:**   */s/ R. Jason Richards*

                                             R. Jason Richards, Esq.
                                             Bryan F. Aylstock, Esq.
                                             Sin-Ting Mary Liu, Esq.

17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: baylstock@awkolaw.com
E-mail: jrichards@awkolaw.com
E-mail: mliu@awkolaw.com

*Attorneys for Serota Plaintiffs and Brennan Plaintiffs*

**BRADLEY/GROMBACHER, LLP**

By**:** ___*/s/ Kiley Lynn Grombacher*_____

Marcus J. Bradley, Esq.
Kiley Lynn Grombacher, Esq.
Robert N. Fisher, Esq.
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91301
Telephone:    (805) 270-7100
Facsimile:    (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

*Attorneys for Brennan Plaintiffs*

**Certificate of Service**

I hereby certify that on August 13, 2021, I electronically filed the foregoing **Interested Party Response** with the United States Judicial Panel on Multidistrict Litigation using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ R. Jason Richards
R. Jason Richards, Esq.