# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| *In re:* JOHNSON & JOHNSON AEROSOL SUNSCREEN LITIGATION | MDL No. 3015 |
|---|---|

### PLAINTIFFS SHELLI FRENCH AND NICOLE SANDER'S MEMORANDUM IN PARTIAL SUPPORT AND PARTIAL OPPOSITION TO MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

Plaintiffs in *French, et al. v. Johnson and Johnson Consumer, Inc.*, Case No. 2:21-cv-05048-SB-PD (C.D. Cal.), by and through their undersigned counsel, respectfully submit this memorandum in partial support of and partial opposition to Plaintiffs Melissa Jimenez and Catalina Ocampo's (the "Jimenez Plaintiffs") Motion For Transfer And Coordination Or Consolidation Pursuant To 28 U.S.C. § 1407 (the "Petition"). Plaintiffs Shelli French and Nicole Sander (collectively "Respondents") agree that centralization under § 1407 of the twelve (12) pending actions is appropriate. However, Respondents believe that centralization would be most appropriate before either (i) Judge Jon S. Tigar in the in the United States District Court for the Northern District of California, (ii) Judge Vincent L. Briccetti in the United States District Court for the Southern District of New York, or (iii) Judge Zahid Quraishi in the United States District Court for the District of New Jersey.

## ARGUMENT

### I. CENTRALIZATION IS WARRANTED, BUT IN OTHER VENUES THAN THAT PROPOSED BY THE JIMENEZ PLAINTIFFS

In determining whether centralization is proper, the Panel considers whether (i) the actions "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action." 28 U.S.C. § 1407(a). Respondents agree that the first factor is met. All of the actions before this Panel involve common questions of fact concerning Defendants' manufacture,

distribution, and sale of contaminated Neutrogena and Aveeno sunscreens, specifically sunscreen products contaminated with carcinogenic benzene. Currently, there are twelve actions from five different districts containing similar allegations and overlapping class definitions, which is more than sufficient to support consolidation. *In re Wesson Oil Mktg. & Sales Practices Litig.*, 818 F. Supp. 2d 1383, 1383 (J.P.M.L. 2011) (ordering transfer and consolidation where six related cases in two separate districts were before the Panel); *In re Seresto Flea and Tick Collar Marketing, Sales Practices, and Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2021 WL 3523464, at *1 (J.P.M.L. Aug. 11, 2021) (ordering transfer and consolidation where sixteen related actions in seven separate districts were before the Panel). Plaintiffs in the twelve related actions are represented by different law firms. Thus, the potential for informal coordination and cooperation between the parties in the existing actions would be difficult and unlikely.

As to the two other factors, however, convenience and efficiency will be best promoted by centralization before Judge Tigar in the Northern District of California, Judge Briccetti in the Southern District of New York, or Judge Quraishi in the District of New Jersey.

### A. Centralization Before Judge Tigar In The Northern District Of California Is Proper

First, centralization in the Northern District of California will serve the convenience of the parties and witnesses. Three actions are already pending in the Northern District of California—including one before Judge Tigar—and one other is pending in the neighboring Central District of California: *Dominguez, et al. v. Johnson & Johnson Consumer, Inc.*, Case No. 4:21-cv-05419 (N.D. Cal.), *Rafal, et al. v. Johnson & Johnson, et al.*, Case No. 3:21-cv-05524 (N.D. Cal.), *Brennan, et al. v. Johnson & Johnson Consumer, Inc. et al.*, Case No. 3:21-cv-04869 (N.D. Cal.), and *French, et al. v. Johnson and Johnson Consumer, Inc.*, Case No. 2:21-cv-05048 (C.D. Cal.). Moreover, California is the focal point for this litigation. The majority of sunscreen products that

were recalled are made by Neutrogena, which manufactured the product in Los Angeles. Thus, although Neutrogena is wholly owned by Johnson & Johnson, the majority of relevant witnesses, documents, and evidence in this action will likely by located in California, rather than New Jersey. *See*, *e.g.*, *In re IBM Peripheral EDP Devices Antitrust Litig.*, 375 F. Supp. 1376, 1377 (J.P.M.L. 1974) ("Either the Northern or Central District of California could be described as an appropriate transferee forum for this litigation. We find the Northern District of California is the most suitable transferee district. One of the factors influencing our decision to transfer this litigation to the Northern District of California is the location of IBM's development laboratory and EDP computer plant within that district. That plant, we are informed, is the source of many important documents and witnesses relevant to plaintiffs' allegations.").

Second, the Northern District of California is an efficient forum, more so than the District of New Jersey. The District of New Jersey is one of the most congested dockets in the nation, with almost 1,600 filings per judgeship (2nd highest in the nation) and almost 3,400 pending cases per judgeship (2nd highest in the nation). By contrast, the Northern District of California has 745 civil filings per judgeship (10th in the nation) and 955 pending cases per judgeship (11th in the nation).[1] Further, Judge Tigar is an experienced MDL transferee judge. Although Judge Tigaris currently presiding over *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, it is a smaller MDL with only 56 pending actions. By contrast, Judge Wolfson is handling both *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243—which has 258 pending

---

[1] United Stats District Courts – National Judicial Caseload Profile (Mar. 31, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf.

3

actions—and *In re Johnson & Johnson Talcum Powder Prods. Marketing, Sales Prac., and Prods. Liab. Litig.*, MDL No. 2738—which has a whopping 34,362 pending actions.[2]

In sum, centralization before Judge Tigar in the Northern District of California is more likely to promote the "just, speedy, and inexpensive determination" of these actions. Fed. R. Civ. P. 1.

### B. Centralization Before Judge Briccetti In The Southern District Of New York Is Proper

<u>Alternatively</u>, centralization in the Southern District of New York will also serve the convenience of the parties and witnesses. One action is currently pending before Judge Briccetti in the Southern District of New York: *Lavalle, et al. v. Neutrogena Corporation, et al.*, Case No. 7:21-cv-06091 (S.D.N.Y.). Six actions are also pending in the tri-state area in the District of New Jersey: *Jimenez, et al. v. Johnson & Johnson Consumer, Inc.*, Case No. 3:21-cv-13113 (D.N.J.), *McLaughlin, et al. v. Johnson & Johnson Consumer, Inc., et al.*, Case No. 3:21-cv-13710 (D.N.J.), *Briglio, et al. v. Johnson & Johnson Consumer Inc.*, Case No. 3:21-cv-13972 (D.N.J.), *Bodine, et al. v. Johnson & Johnson Consumer Inc.*, Case No. 3:21-cv-14343 (D.N.J), *Baker, et al. v. Johnson & Johnson Consumer Inc.*, Case No. 3:21-cv-14421 (D.N.J), and *Fernandez v. Johnson & Johnson Consumer Inc.*, Case No. 3:21-cv-14492 (D.N.J). Because Johnson & Johnson's headquarters are in New Jersey, both the White Plains and New York City courthouses of the Southern District of New York are conveniently located in close proximity to Johnson & Johnson's headquarters. Further, the Southern District of New York is a convenient forum for an MDL, such as this one, that is nationwide in scope and will require ease of transport for counsel and parties from across

---

[2] United States Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District (July 15, 2021), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-15-2021.pdf.

the United States. Thus, the Southern District of New York is convenient for the parties and witnesses. *In re Novartis Wage and Hour Litig.*, 460 F. Supp. 2d 1382, 1383 (J.P.M.L. 2006) (centralizing actions in the Southern District of New York because "all defendants have a presence in this district, and NPC has its headquarters in nearby New Jersey. Accordingly, relevant witnesses and documents will likely be found in or around this district"); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 601 F. Supp. 1035, 1036 (J.P.M.L. 1985) (centralizing actions in the Southern District of New York because "relevant witnesses and documents may be located at [defendant's] corporate headquarters in nearby Danbury, Connecticut").

Second, the Southern District of New York is an efficient forum. The Southern District of New York is currently less congested than the District of New Jersey, with only 466 filings per judgeship (43rd in the nation) and 688 pending cases per judgeship (20th in the nation). The Southern District in New York also ranks 11th in the nation in median time from the filing of a civil case to its disposition (6.7 months), ranking higher than the District of New Jersey.[3] Thus, centralization before in the Southern District of New York is likely to promote the "just, speedy, and inexpensive determination" of these actions. Fed. R. Civ. P. 1.

Finally, should these cases be centralized in the Southern District of New York, they should be assigned to the Honorable Vincent L. Briccetti. "[C]entralization before the Honorable [Vincent L. Briccetti] allows [the Panel] to assign this litigation to an able jurist who has not yet had the opportunity to preside over an MDL." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d, 1368, 1370 (J.P.M.L. 2020). Incorporating new jurists into the MDL process has

---

[3] United Stats District Courts – National Judicial Caseload Profile (Mar. 31, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf.

been a point of focus for this Panel. Amanda Bronstad, *Rookie Judges Start to Wrangle MDL Dockets*, NAT'L L. J. (Aug. 20, 2017) ("There has been an effort to reach out to newer judges, to bring them into the MDL process, so as to give a greater MDL experience to the judiciary as a whole."). This is because new judges are also "often willing to explore new ways of approaching the complexity of MDL, challenging traditional assumptions held by the more experienced judges." *Id*. To that end, Judge Briccetti is a competent jurist who has experience with consolidated consumer class actions. *See*, *e.g.*, *In re Scotts EZ Seed Litig.*, Case No. 7:12-cv-04727 (S.D.N.Y.); *In re Welspun Litig.*, Case No. 7:16-cv-06792 (S.D.N.Y.). His experience with consolidated class actions and his newness to the MDL format will be of great benefit to all parties. Accordingly, Judge Briccetti is a logical choice for consolidation.[4]

### C. Should The Panel Choose To Centralize These Actions In The District Of New Jersey, Centralization Before Judge Quraishi Is Proper

If the related actions are to be centralized in the District of New Jersey, Respondents respectfully suggest that the Panel assign this MDL to Judge Zahid Quraishi. Judge Quraishi is an able jurist who has not yet had the opportunity to preside over an MDL. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d, at 1370. Judge Quraishi also sits in the Trenton courthouse of the District of New Jersey—close to Johnson & Johnson's headquarters—but unlike Judge Wolfson, is not currently presiding over two large MDLs. Further, Judge Quraishi has experience

---

[4] If the Panel would prefer to centralize these actions in the Manhattan courthouse of the Southern District of New York—rather than the White Plains courthouse where Judge Briccetti sits—Respondents would proffer that the Panel assign these cases to Judge Analisa Torres. Like Judge Briccetti, Judge Torres has never been assigned an MDL, but has previously presided over both pharmaceutical cases and consolidated products liability litigation. *See*, *e.g.*, *Nationwide Mut. Fire Ins. Co. v. Sunbeam Products*, Case Nos. 1:12-cv-06594, 1:13-cv-05966 (S.D.N.Y.); *Apotex Inc. v. Acorda Therapeutics, Inc.*, Case No. 1:11-cv-08803 (S.D.N.Y.). Accordingly, Judge Torres would be another logical choice for assignment of this MDL.

handling complex consolidated actions. *See*, *e.g.*, *Takata v. Riot Blockchain, Inc.*, Case No. 18-cv-2293 (D.N.J.) (consolidated securities action). Accordingly, Judge Quraishi is a competent jurist with regard to managing complex actions, and his newness to the MDL format will be of great benefit to all parties.

## **CONCLUSION**

For the reasons stated above, Respondents respectfully request that the Panel enter an Order transferring all related actions, as well as any related cases that may be filed subsequently, to either (i) the Northern District of California before the Honorable Jon S. Tigar, (ii) the Southern District of New York before the Honorable Vincent L. Briccetti, or (iii) the District of New Jersey before the Honorable Zahid Quraishi for coordination or consolidation pursuant to 28 U.S.C. § 1407.

Dated: August 19, 2021

Respectfully submitted,

By: */s/ Max S. Roberts*
      Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Fascimile: (212) 989-9163
E-Mail: mroberts@bursor.com

*Counsel for Plaintiffs Shelli French and Nicole Sander*