# UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| In re Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and Products Liability Litigation | MDL No. 3015 |

## DEFENDANTS' RESPONSE IN SUPPORT OF MOTION TO CENTRALIZE ACTIONS FOR PRETRIAL PROCEEDINGS

Steven A. Zalesin
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: 212-336-2110 / Fax: 212-336-2111
Email: sazalesin@pbwt.com

*Attorneys for Defendants Johnson & Johnson Consumer Inc., Johnson & Johnson, and Costco Wholesale Corporation*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................................1

BACKGROUND .....................................................................................................................................2

ARGUMENT ...........................................................................................................................................4

I.      Centralization Is Appropriate..............................................................................................5

II.     The District of New Jersey and the Southern District of Florida Are Both Appropriate Venues for Centralization ....................................................................................................7

III.    The Northern District of California Is *NOT* an Apropriate Venue for Centralization.......12

IV.    The Southern District of New York Is Similarly *NOT* an Apropriate Venue for Centralization ....................................................................................................................14

CONCLUSION......................................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Belviq (Lorcaserin HCI) Prod. Liab. Litig.*,
 MDL No. 3005, 2021 WL 3523427 (J.P.M.L. Aug. 10, 2021) ............................................6, 7

*In re Broiler Chicken Grower Antitrust Litig.*,
 509 F. Supp. 3d 1359 (J.P.M.L. 2020) ..........................................................................................8

*Calderon v. Sixt Rent a Car, LLC*, No. 19-cv-62408, 2020 WL 700381 (S.D. Fla.
 Feb. 12, 2020), *aff'd*, 5 F.4th 1204 (11th Cir. 2021) ...................................................................15

*In re Fairlife Milk Prods. Mktg. & Sales Practices Litig.*,
 396 F. Supp. 3d 1370 (J.P.M.L. 2019) .......................................................................................6, 7

*In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*,
 483 F. Supp. 1343 (J.P.M.L. 1980) ................................................................................................5

*In re Household Goods Movers Antitrust Litig.*,
 502 F. Supp. 2d 1356 (J.P.M.L. 2007) ..........................................................................................8

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
 396 F. Supp. 3d 1366 (J.P.M.L. 2019) ..........................................................................................8

*In re Mattel, Inc., Toy Lead Paint Prod. Liab. Litig.*,
 528 F. Supp. 2d 1367 (J.P.M.L.2007) ............................................................................................8

*In re Power Morcellator Prod. Liab. Litig.*,
 140 F. Supp. 3d 1351 (J.P.M.L. 2015) ..........................................................................................6

*In re Saturn L-Series Timing Chain Prod. Liab. Litig.*,
 MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) .......................................................6

*Toca v. Tutco*, LLC, 430 F. Supp. 3d 1313 (S.D. Fla. 2020) ............................................................15

*In re Zantac (Ranitidine) Prod. Liab.Litig.*,
 437 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020) ..............................................................................11

**Statutes**

28 U.S.C. § 1407 ....................................................................................................................1, 5, 6, 7

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................................................5

Anthony Man, SOUTH FLORIDA SUN SENTINEL,
 *U.S. Senate Confirms Raag Singhal as New South Florida Federal Judge*
 (Dec. 19, 2019) ............................................................................................................................11

# TABLE OF AUTHORITIES
# (continued)

Page(s)

Bloomberg Law, *Litigation Analytics* (last visited Aug. 16, 2021),
  https://www.bloomberglaw.com/product/blaw/litigation/analytics/courts/6d82
  2511363b63c0407f1cb2caa4bd64/length_of_case. ...................................................10

Georgia Ainsworth and Gregory Anding, *Benzene in Sunscreens Could Be the
  Next Big Toxic Tort,* Law360, August 10, 2021 ........................................................4

Mark Brnovich and Ilya Shapiro, *Split Up the Ninth Circuit – but Not Because It's
  Liberal*, WALL STREET JOURNAL, Jan. 11, 2018 .....................................................13

N.D. Cal. L.R. 3-12(f)(3) ...............................................................................................12

Statement of the Honorable Brian Stacy Miller on Behalf of the Judicial
  Conference of the United States Before the Committee on the Judiciary,
  United States Senate, June 30, 2020 at 6-7, https://bit.ly/3AJtpnQ .........................13

United States Courts, *MDL Statistics Report - Distribution of Pending MDL
  Dockets by District* (Aug. 13 2021), /https://www.jpml.uscourts.gov/sites
  jpml/files/Pending_MDL_Dockets_By_District-August-13-2021.pdf......................8, 10, 11, 12, 13

United States District Courts, *National Judicial Caseload Profile* (June 30, 2021),
  https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile06
  30.2021. pdf ..............................................................................................................10

U.S. Courts, *September 2020 Civil Justice Reform Act*,
  https://www.uscourts.gov/statistics-reports/september-2020-civil-justice-
  reform-act..........................................................................................................12, 15

U.S. Senate Judiciary Committee, *Questionnaire for Judicial Nominees:
  Anuuraag Singhal*, at 1-3, 32-33, https://www.judiciary.senate.gov/imo/
  media/doc/Anuraag%20Singhal%20Senate%20Questionnaire%20-
  %20PUBLIC.pdf......................................................................................................11

**PRELIMINARY STATEMENT**

Defendants Johnson & Johnson Consumer Inc. ("JJCI"), Johnson & Johnson and Costco Wholesale Corporation ("Costco") respectfully submit this response to (1) the Jimenez Plaintiffs' motion for transfer and consolidation of related actions, ECF No. 1; (2) the Serota and Brennan Plaintiffs' response, ECF No. 7; (3) the French Plaintiffs' response, ECF No. 37; and (4) the Lavalle Plaintiff's response, ECF No. 39.

Defendants agree with *all* plaintiffs who have voiced their views that centralization of these cases is appropriate under 28 U.S.C. § 1407. Defendants further agree with the Jimenez Plaintiffs that Chief Judge Freda L. Wolfson of the District of New Jersey has the experience and ability necessary to preside over the consolidated actions. However, given that Chief Judge Wolfson is currently presiding over two multi-district litigations ("MDLs"), including the Johnson & Johnson Talcum Powder MDL, she may not have the bandwidth to take on a third MDL. Judge Zahid N. Quraishi, to whom the related cases pending in the District of New Jersey have been assigned, was confirmed by the Senate only in June of this year. Historically, the Judicial Panel on Multidistrict Litigation ("JPML") has been reluctant to assign MDLs to newly-confirmed judges.

If the JPML does not assign these matters to one of the judges in the District of New Jersey, then Judge Anuraag Singhal of the Southern District of Florida, who presides over the first-filed case, *Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.), would be a sensible choice. Judge Singhal is an experienced jurist with a relatively uncluttered docket who has not presided over an MDL. In arguing for the Southern District of Florida as a back-up venue, the Brennan and Serota Plaintiffs have identified no shortcomings that would counsel against centralization before Judge Singhal. In contrast, there are clear reasons why their preferred forum (and that of and the French Plaintiffs), the Northern District of California, is

undesirable. The same goes for the French Plaintiffs' backup choice, and the Lavelle Plaintiff's first choice, the Southern District of New York.

## BACKGROUND

JJCI produces and markets over-the-counter sunscreen products under the brand names Neutrogena® and Aveeno®. On May 25, 2021, an analytical pharmacy known as Valisure LLC ("Valisure") filed a citizen's petition (the "Petition") with the United States Food and Drug Administration ("FDA"). The Petition stated that Valisure had recently performed tests on nearly 300 batches of sunscreen products from 69 different manufacturers, and that a significant number of these products contained detectable levels of benzene. In all, 27% of the product samples tested by Valisure, from products marketed by 17 different companies, tested positive for benzene. The Petition noted that the presence of benzene (and the levels of benzene, if present) varied significantly from lot to lot, even within a single brand or product line. The Petition requested that all of the products that had tested positive be recalled from the market. Valisure further urged FDA to create a concentration limit for benzene in standard drug products including sunscreens, and to set a daily exposure limit to benzene. *See* Petition, Compl. Ex. A, *Bodine v. JJCI*, 21-cv-14343, ECF No. 26-4.

Benzene is not an ingredient in any JJCI sunscreen product. However, the Petition listed several JJCI sunscreens as having tested positive for the substance. Immediately upon learning of the Petition, JJCI began an in-depth investigation of the issues. Working at an accelerated pace over the next several weeks, JJCI confirmed that some samples of some JJCI products listed in the Petition—in particular, samples from five aerosol sunscreen product lines—contained low

levels of benzene.[1] At the same time, in consultation with leading experts, JJCI undertook a detailed Health Hazard Evaluation ("HHE"), which concluded that the risk of adverse health effects from continued use of the products according to their label directions would be negligible.

Nevertheless, in an abundance of caution, and working cooperatively with FDA, on July 14, 2021, JJCI instituted a recall of the five affected product lines from all distribution channels, and instructed consumers to stop using them. At the same time, JJCI announced that it would provide a full cash refund of the purchase price of the products, and established an online portal for consumers to claim their refunds. This process is currently ongoing and, to date, has resulted in refund requests from more than 220,000 consumers. For refunds of three or fewer units, no proof of purchase is required. Those seeking refunds for more than three units need submit only minimal evidence of their purchases (*e.g.*, a photograph of the containers or store receipt).

Despite the swift actions taken by JJCI to voluntarily recall the affected product lines and issue refunds to purchasers, a spate of putative class actions has been filed against JJCI and the other named defendants[2] (collectively, the "Actions"), alleging violations of various consumer protection statutes and related common-law theories of liability. The Actions seek full or partial refunds and various other forms of monetary and injunctive relief. *See* Schedules of Actions, ECF Nos. 1-2, 30.

---

[1] The product lines are Neutrogena® Beach Defense® aerosol sunscreen, Neutrogena® Cool Dry Sport aerosol sunscreen, Neutrogena® Invisible Daily™ defense aerosol sunscreen, Neutrogena® Ultra Sheer® aerosol sunscreen and Aveeno® Protect + Refresh aerosol sunscreen.

[2] In addition to JJCI, plaintiffs have purported to name a variety of current or former affiliated entities as defendants in the Actions. JJCI is the only proper defendant. Its parent company, Johnson & Johnson, does not produce or sell sunscreen products. Two named defendants, Johnson & Johnson Consumer Companies, Inc. and Neutrogena Corporation, no longer exist, and "Aveeno" has never existed as a legal entity. JJCI is prepared to work cooperatively with plaintiffs' counsel to amend the case captions and pleadings as necessary.

The Actions are without merit. They are largely moot, as JJCI has already voluntarily offered the principal relief requested by removing the affected product lines from the market and offering complete refunds for them. Moreover, as noted above, any product units that may have contained benzene nevertheless functioned exactly as advertised by delivering the promised sun protection and presented no cognizable risk to health or safety. Any allegation that JJCI had longstanding knowledge of the issue and failed to take timely action is groundless. And class certification is a non-starter, both because JJCI's voluntary refund program is superior to costly litigation to obtain relief that is already on offer, and because determining which individual units of product did and did not contain benzene (and in what amounts) is an intensely individualized question that cannot be adjudicated on a class-wide basis.

Notwithstanding their lack of merit, a dozen Actions have already been filed in five district courts across the country, and the number is likely to rise. *See, e.g.*, Georgia Ainsworth and Gregory Anding, *Benzene in Sunscreens Could Be the Next Big Toxic Tort*, LAW360 (Aug. 10, 2021) (predicting "an onslaught" of claims related to the Petition).

## ARGUMENT

Defendants agree with the Jimenez, Serota, Brennan, French and Lavalle Plaintiffs that centralization of the Actions is appropriate. Defendants further agree with the Jimenez Plaintiffs that Chief Judge Wolfson of the District of New Jersey would be an excellent selection to preside over the MDL, but recognize that she likely is not available for this assignment. Defendants support the Serota and Brennan Plaintiffs' alternative request that the Actions be centralized in the Southern District of Florida, where the first-filed case is pending before Judge Singhal. Defendants oppose the Brennan, Serota and French Plaintiffs' first choice, the Northern District

of California, as well as the French Plaintiffs' backup and Lavalle Plaintiff's first choice, the Southern District of New York, for reasons detailed below.

## I. CENTRALIZATION IS APPROPRIATE

Section 1407 permits centralization of multiple actions when (1) the cases "involv[e] one or more common questions of fact," (2) centralization would serve "the convenience of [the] parties and witnesses," and (3) centralization would "promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407. The moving party bears the burden of demonstrating that centralization is appropriate. *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1345 (J.P.M.L. 1980).

Defendants agree with the Jimenez, Serota, Brennan, French and Lavalle Plaintiffs that centralization is appropriate here. The Actions indisputably "involv[e] one or more common questions of fact," and their centralization would serve "the convenience of [the] parties and witnesses" and "promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407. There are presently 12 putative class actions, pending in five different federal district courts located in four separate judicial circuits, that seek to hold JJCI liable for the presence of benzene in some of its sunscreen products. While there are variations in the state laws that govern the various Actions, certain questions of fact and law in each case will likely be the same: *e.g.*, whether JJCI misrepresented the ingredients of its sunscreens or otherwise mislabeled its products in violation of applicable law; whether purchasers have suffered any cognizable injury for which they are not already being compensated; and whether any such injury is the same for all members of the putative classes, such that class certification is proper.[3]

---

[3] By agreeing that the Actions meet the "common questions of fact" standard under 28 U.S.C. § 1407, Defendants *do not* concede that the claims brought in the Actions satisfy the requirements for class certification under Fed. R. Civ. P. 23. These standards are "entirely separate," and for the reasons discussed above, class certification would be improper

5

The Actions will likely also involve overlapping questions regarding JJCI's procurement, manufacturing, labeling and distribution practices, and will require shared expert testimony, making them appropriate for pretrial centralization. *See In re Power Morcellator Products Liab. Litigation*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015) (fact that "[d]iscovery, including expert discovery, will overlap with respect to these common issues" supports centralization). The documentary evidence and witness testimony sought is likely to be substantially the same across all Actions. Requiring multiple district courts to oversee the same discovery efforts would waste judicial resources and inevitably lead to inefficiencies for all parties, plaintiffs and defendants alike. *See In re Fairlife Milk Prods. Marketing & Sales Practices Litig.*, 396 F. Supp. 3d 1370, 1371 (J.P.M.L. 2019) ("Centralization thus will eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel, and the judiciary.").

Keeping the Actions separate would also pose serious risks of inconsistent rulings on a variety of issues, including (i) whether the various complaints state viable claims for relief; (ii) the appropriate scope of pretrial discovery; (iii) whether the cases are suitable for class certification; and (iv) whether, following discovery, any of the asserted claims raise fact issues that preclude summary judgment. *See Fairlife*, 396 F. Supp. 3d at 1371 ("Centralization thus will . . . prevent inconsistent pretrial rulings, particularly with respect to class certification").

The Actions at issue here are unlike others in which the JPML has recently found that centralization would not "serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation." *In re Belviq (Lorcaserin HCl) Prod. Liab. Litig.*, MDL

---

notwithstanding the appropriateness of centralization. *In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604, at *25 n.21 (D. Neb. Nov. 7, 2008) (noting that "the MDL Panel's determination that [certain] cases meet the 'common questions of fact' standard required by 28 U.S.C. § 1407 is not determinative of whether [those] cases meet the requirement of Fed. R. Civ. Pro. 23 that common questions of fact 'predominate' over individualized issues of fact").

No. 3005, 2021 WL 3523427, at *1 (J.P.M.L. Aug. 10, 2021) ("*Belviq*"). *Belviq*, for instance, involved claims for personal injury and allegations that the plaintiffs had developed varying forms of cancer. The JPML determined that, due to their highly individualized nature, the cases were best litigated as separate actions. *See id.* at 2 ("The record before us indicates that individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL."). Here, by contrast, there are no allegations of personal or physical injury; rather, the plaintiffs in all 12 Actions claim to have suffered economic harm as a direct result of JJCI's sale of sunscreen products that allegedly contained benzene. Moreover, unlike in *Belviq*, plaintiffs here all bring putative *class* actions, and the putative *classes*—which substantially overlap—are represented by more than ten different law firms. *See id.* (denying centralization where all but one of the actions was an individual claim for personal injury and not a class action, and where more than half of the plaintiffs were represented by the same counsel). The prospect of multiple plaintiffs' attorneys simultaneously litigating the same issues—in multiple courts, and on behalf of overlapping putative classes of consumers—is not only inefficient, but essentially unworkable.

For these reasons, the JPML should centralize the Actions pursuant to Section 1407.

## II. THE DISTRICT OF NEW JERSEY AND THE SOUTHERN DISTRICT OF FLORIDA ARE BOTH APPROPRIATE VENUES FOR CENTRALIZATION

Defendants agree with the Jimenez and French Plaintiffs that the District of New Jersey is an appropriate venue for centralization of the Actions. Defendants also agree with the Serota and Brennan Plaintiffs that the Southern District of Florida is a suitable venue.

As the district in which JJCI is headquartered, the District of New Jersey is an appropriate venue in which to centralize the Actions. *See Fairlife*, 396 F. Supp. 3d at 1371 (a district "has a strong connection" to a matter when the defendant is headquartered there, and

when the defendant's marketing decisions "likely were conceived and executed there"). Chief Judge Wolfson—to whom the first-filed case in the District of New Jersey is assigned, *Jimenez v. Johnson & Johnson Consumer, Inc.*, No. 21-cv-13113—is an experienced and skilled jurist more than capable of managing the Actions. However, Chief Judge Wolfson already oversees two MDLs, including the Johnson & Johnson Talcum Powder MDL, which includes more than 34,000 pending cases. *See* United States Courts, *MDL Statistics Report - Distribution of Pending MDL Dockets by District* (Aug. 13 2021), https://www.jpml.uscourts.gov/sites/jpml/ files/Pending_MDL_Dockets_By_District-August-13-2021.pdf ("MDL List"). Accordingly, Chief Judge Wolfson likely does not have the bandwidth to take on another MDL.

The other cases in the District of New Jersey are currently assigned to Judge Quraishi, who was confirmed as a district judge by the U.S. Senate on June 11, 2021. Historically, the JPML has not assigned MDLs to newly-appointed judges.

Meanwhile, the first-filed Action was brought in the Southern District of Florida, *see Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.) (filed May 25, 2021), roughly a month before the first New Jersey case was filed. The JPML often considers the venue of the first-filed action when determining where to centralize related cases. *See In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (noting the venue of the "first-filed" action as an influential factor); *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (centralizing in Oklahoma because "[t]he Oklahoma action is the first-filed action"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019) (noting pendency of first-filed case in district as factor); *In re Mattel, Inc., Toy Lead Paint Products Liability Litigation*, 528 F. Supp. 2d 1367,

12933329

1369 (J.P.M.L.2007) (centralizing cases in Central District of California because, among other things, "[t]he first-filed action is pending there").[4]

Moreover, as the statistics in Table 1 below indicate, the Southern District of Florida has a manageable docket, while the District of New Jersey is significantly overburdened (as are the Northern District of California and the Southern District of New York):

---

[4] The Serota Plaintiffs offer no support for their position that the JPML should "weight the wishes of those who were first to file" and transfer the Actions to the Northern District of California—which is not the forum in which the first-filed Action was brought. ECF No. 7 at 7. The same attorneys represent both the Serota and Brennan Plaintiffs. They could have filed the *Brennan* Action (currently pending in the Northern District of California) first. Instead they chose to file first in the Southern District of Florida, and decided to advocate for the Northern District of California only after learning of the judicial assignments in both districts. In fact, the *Brennan* action was filed in *state court*, and is now pending in the Northern District of California only because JJCI removed the case to that district. Especially in these circumstances, the views of the first-to-file plaintiffs are entitled to no special deference.

**Table 1: Comparative District Statistics**[5]

| District Statistics (as of 6/30/2021 unless otherwise noted) | District of New Jersey | Southern District of Florida | Northern District of California | Southern District of New York |
|---|---|---|---|---|
| Number of Judgeships | 17 | 18 | 14 | 28 |
| Overall Caseload - Filings | 28,150 | 11,513 | 11,051 | 13,869 |
| Overall Caseload - Pending | 10,285 | 6,800 | 14,157 | 19,216 |
| Vacant Judgeship Months | 37.7 | 25.3 | 15 | 15.7 |
| Actions Per Judgeship - Filings (total) | 1,656 | 640 | 789 | 495 |
| Actions Per Judgeship - Filings (civil) | 1,600 | 547 | 718 | 434 |
| Per Judgeship - Pending Cases | 3,566 | 378 | 1,011 | 686 |
| Per Judgeship - Weighted Filings | 1,198 | 634 | 771 | 575 |
| Median Time (Months) - Filing to Disposition (Civil) | 9.8 | 3.0 | 7.6 | 6.0 |
| Median Time (Months) - Filing to Trial (Civil) | 39.4 (as of 2020, no 2021 data) | 17.5 | 26.9 | 29.8 |
| Number (and %) of Civil Cases Over 3 Years Old | 11,385 (19.2%) | 135 (2.9%) | 1,291 (9.9%) | 2,932 (20.7%) |
| Case Length - State Statutes (days) | 366 | 151 | 291 | 457 |
| Case Length - Fraud (days) | 392 | 239 | 382 | 410 |
| Case Length - Other Statute (days) | 293 | 169 | 288 | 362 |
| MDLs (as of 8/13/2021) | 12 | 8 | 22 | 17 |

---

[5] *See* MDL List; United States District Courts, *National Judicial Caseload Profile* (June 30, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf; Bloomberg Law, *Litigation Analytics* (last visited Aug. 16, 2021), https://www.bloomberglaw.com/product/blaw/litigation/analytics/courts/6d822511363b63c0407f1cb2caa4bd64/length_of_case.

As Table 1 shows, the Southern District of Florida has more judgeships than the District of New Jersey but significantly fewer filings, pending cases, vacant judgeship months, actions per judgeship, pending cases per judgeship and weighted filings per judgeship. Further, civil cases and motions (and, in particular, state-statute and fraud cases such as the Actions) are resolved significantly faster in the Southern District of Florida than in the District of New Jersey.

If the JPML determines that the Actions should be centralized in the Southern District of Florida, it should assign the MDL to Judge Singhal. Judge Singhal already presides over the first-filed Action, which—as the Serota and Brennan Plaintiffs note—is not only the longest-pending, but also the "broadest of all actions filed to date" and includes putative class representatives from nine different states. ECF No. 7 at 11. Judge Singhal is not currently assigned any MDLs. *See* MDL List. And Judge Singhal has the experience and ability to properly oversee and adjudicate the issues in the centralized proceedings. Prior to his appointment to the federal bench in 2019, Judge Singhal was an award-winning circuit court judge in Broward County, Florida for eight years, handling "felony-level criminal cases and civil lawsuits with amounts in controversy over $15,000." U.S. Senate Judiciary Committee, *Questionnaire for Judicial Nominees: Anuuraag Singhal* at 1-3, 32-33, https://www.judiciary.senate.gov/imo/media/doc/Anuraag%20Singhal%20Senate%20Questionnaire%20-%20PUBLIC.pdf (listing experience and awards); *see also* Anthony Man, SOUTH FLORIDA SUN SENTINEL, *U.S. Senate Confirms Raag Singhal as New South Florida Federal Judge* (Dec. 19, 2019) (describing Judge Singhal as a "widely respected Broward County circuit court judge"). While this would be Judge Singhal's first MDL, the proceedings are not likely to swell to include hundreds or thousands of cases, making it an appropriate initial MDL experience. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020) ("[C]entralization

11

before the Honorable Robin L. Rosenberg allows us to assign this litigation to an able jurist who has not yet had the opportunity to preside over an MDL."). Further, Judge Singhal has no cases or motions on the "six-month list," demonstrating that he manages his civil docket effectively. *See* U.S. Courts, *September 2020 Civil Justice Reform Act*, https://www.uscourts.gov/statistics-reports/september-2020-civil-justice-reform-act.

In sum, while the District of New Jersey would be an appropriate venue for centralization, there are strong reasons for the JPML to centralize the Actions in the Southern District of Florida for coordinated pretrial proceedings before Judge Singhal.

### III. THE NORTHERN DISTRICT OF CALIFORNIA IS *NOT* AN APROPRIATE VENUE FOR CENTRALIZATION

The Serota, Brennan and French Plaintiffs propose the Northern District of California, and either Judge James Donato or Judge Jon S. Tigar, as the transferee court. Of the four districts that have been suggested to the JPML to date, the Northern District of California is the least appropriate.

As a threshold matter, the French Plaintiffs are incorrect that one of the cases pending in the Northern District of California is before Judge Tigar. The Rafal Plaintiffs made an administrative motion in the *Brennan* Action to have the cases in that district deemed related and assigned to the same judge. *Brennan v. Johnson & Johnson Consumer Inc.*, 21-cv-5419 (N.D. Cal.), ECF No. 18. That motion was granted, ECF No. 19, and all three cases have been transferred to Judge Donato, who presides over the case with the lowest civil action number. *See* N.D. Cal. L.R. 3-12(f)(3).

Judge Donato is, to be sure, an experienced and capable jurist. However, as the Serota and Brennan Plaintiffs point out, Judge Donato has two pending MDLs already assigned to him. *See* ECF No. 7 at 10-11; MDL List. (Judge Tigar, similarly, is already assigned the *Cathode Ray*

12

*Tube (CRT) Antitrust Litigation*, MDL No. 1917.  *See* MDL List.)

Moreover, contrary to the Brennan, Serota and French Plaintiffs' suggestion, the Northern District of California is not the district in which the bulk of the relevant documents and other evidence will likely be located.  JJCI's headquarters are located in New Jersey.  While JJCI maintains a facility in southern California, it is outside the Northern District.  And based on the allegations and its investigation to date, JJCI anticipates that most of its employees with knowledge relevant to the Actions, and the associated documents, are in New Jersey.[6]

Further, as indicated by Table 1 above, the Northern District of California is, in several respects, even busier than the District of New Jersey, and significantly busier than the Southern District of Florida.  Of the four districts that have been suggested, the Northern District of California has the least judgeships and the most pending cases.  In most other respects (*e.g.*, number of filings, time to issue opinions and complete cases, etc.), the Northern District of California falls between the District of New Jersey and the Southern District of Florida. Moreover, the U.S. Court of Appeals for the Ninth Circuit—in which the Northern District of California is located—is notoriously overburdened, which would severely impact the progress of the MDL in the event an appeal (interlocutory or otherwise) becomes necessary.[7]

---

[6] The French Plaintiffs state, without citation to any supporting evidence, that "Neutrogena [] manufactured the product in Los Angeles [and t]hus, although Neutrogena is wholly owned by Johnson & Johnson, the majority of relevant witnesses, documents and evidence in this action will likely by located in California, rather than New Jersey."  ECF No. 37 at 3.  As previously indicated, Neutrogena is no longer an independent legal entity, and *JJCI*'s sunscreen supply chain teams—*i.e.*, the JJCI employees with knowledge of the manufacturing and distribution processes—are almost exclusively in New Jersey, as are JJCI's product development teams.

[7] *See, e.g.*, Statement of the Honorable Brian Stacy Miller on Behalf of the Judicial Conference of the United States Before the Committee on the Judiciary, United States Senate, June 30, 2020 at 6-7, https://bit.ly/3AJtpnQ (noting that, "[i]n the Ninth Circuit Court of Appeals, . . . the caseload levels"—*i.e.*, 725 adjusted filings per panel—"substantially exceed the [recommended] standard" of 500 per panel); Mark Brnovich and Ilya Shapiro, *Split Up the Ninth Circuit – but Not Because It's Liberal*, WALL STREET JOURNAL, Jan. 11, 2018 (noting that "the Ninth Circuit

The Serota and Brennan Plaintiffs' other arguments in favor of the Northern District of California are makeweights with no support in the JPML's precedents. For example, the fact that California is the state with the largest population cannot counsel in favor of centralization in California, or else the same would be true in every case involving a 50-state dispute. Likewise, the fact that Judge Donato has entered a *pro forma* scheduling order does not make the Northern District of California Actions more procedurally advanced than any of the others. There have been no post-complaint substantive filings in any of the Actions, and scheduling-related orders have been entered in other Actions, so all of them are procedurally identical.

In short, there is no convincing reason to centralize the Actions in the Northern District of California.

## IV. THE SOUTHERN DISTRICT OF NEW YORK IS SIMILARLY *NOT* AN APROPRIATE VENUE FOR CENTRALIZATION

As an alternative to the Northern District of California, the French Plaintiffs propose the Southern District of New York, and Judge Vincent L. Briccetti or Judge Analisa Torres, for the centralized MDL. The Southern District of New York and Judge Briccetti are the Lavalle Plaintiff's first choice.

Other than noting the Southern District of New York is slightly less congested than the District of New Jersey, the French and Lavalle Plaintiffs' arguments essentially amount to noting the geographic proximity between New York and New Jersey, where relevant documents and witnesses are located. *See* ECF No. 37 at 4 (noting that six actions are in the "tri-state area" (only one of which is in New York) and that JJCI's New Jersey headquarters are in "close proximity"); ECF No. 39 at 2, 4 (arguing that defendants, witnesses, and evidence are located

---

has an astonishing backlog, accounting for nearly a third of all pending federal appeals" and takes "the longest of any circuit" to resolve an appeal).

12933329

"[i]n and [a]round the Southern District of New York"). This is not a convincing rationale, given the absence of *any* ties between the litigants and issues on the one hand, and the Southern District of New York on the other hand. Moreover, while the French and Lavalle Plaintiffs are correct that the Southern District of New York has a slightly less congested docket than the District of New Jersey, it is substantially *more* congested than the Southern District of Florida, where the first-filed case is pending. *See* Table 1.

The Lavelle Plaintiffs add that some of the plaintiffs and putative class members are in New York; that the Southern District of New York is easily accessible; and that the district has the experience and resources necessary to adjudicate the Actions. ECF No. 39 at 2-3. This is true for every proposed forum. In fact, one of the "three major airports" that services New York City, *id.* at 3, is located in Newark, New Jersey.

Finally, the French and Lavalle Plaintiffs' arguments in favor of Judge Briccetti are equally applicable to Judge Singhal of the Southern District of Florida. *Compare id.* at 4 (arguing Judge Briccetti is an experienced jurist who has not yet overseen an MDL, and has experience in consumer class actions) *and* ECF No. 37 at 5-6 (same), *with supra* Part II (noting Judge Singhal's experience and lack of opportunities to oversee an MDL) *and Calderon v. Sixt Rent a Car, LLC*, No. 19-cv-62408, 2020 WL 700381, at *1 (S.D. Fla. Feb. 12, 2020), *aff'd*, 5 F.4th 1204 (11th Cir. 2021) (Judge Singhal state law consumer class action decision); *Toca v. Tutco*, LLC, 430 F. Supp. 3d 1313 (S.D. Fla. 2020) (same). And unlike Judge Singhal, who has no cases pending on his docket for more than three years, Judge Briccetti has 32. *See* U.S. Courts, *September 2020 Civil Justice Reform Act*, https://www.uscourts.gov/statistics-

12933329

reports/september-2020-civil-justice-reform-act.[8]

## CONCLUSION

For the reasons set forth above, the JPML should centralize the Actions in the District of New Jersey or the Southern District of Florida, not the Northern District of California or the Southern District of New York. If the Actions are centralized in the District of New Jersey, they should be transferred either to Chief Judge Wolfson or a newly-assigned judge in that District. If the Actions are centralized in the Southern District of Florida, they should be transferred to Judge Singhal, who presides over the first-filed Action.

Dated:  New York, New York
     August 19, 2021

                  Respectfully submitted,

                  */s/ Steven A. Zalesin*
                  Steven A. Zalesin
                  PATTERSON BELKNAP WEBB & TYLER LLP
                  1133 Avenue of the Americas
                  New York, New York 10036
                  Tel: 212-336-2110 / Fax: 212-336-2111
                  Email: sazalesin@pbwt.com

                  *Attorneys for Defendants Johnson & Johnson Consumer Inc., Johnson & Johnson, and Costco Wholesale Corporation*

---

[8] The French Plaintiffs, in a footnote, alternatively propose Judge Analisa Torres of the Southern District of New York. ECF No. 37 at 6 n.4. None of the related Actions are currently pending before Judge Torres. Other than being located in that district's Manhattan courthouse and having experience in consumer class actions, the French Plaintiffs provide no reason to centralize the cases before Judge Torres. *See id.* Accordingly, the JPML should decline to do so, especially in light of the alternative choices on which many of the parties agree.