# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON AEROSOL SUNSCREEN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.: 3015 |

## INTERESTED PARTY RESPONSE TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("Panel"), counsel for Plaintiffs in *Dominguez et al. v. Johnson & Johnson Consumer, Inc.*, No. 4:21-cv-05419 (the "Interested Party"), pending in the Northern District of California, respectfully submit this Interested Party Response in support of transferring and consolidating all pending Johnson & Johnson Sunscreen ("J&J Sunscreen") actions. The Interested Party further submits that, for at least three reasons, the most appropriate venue for these consolidated actions is the Northern District of California, where three J&J Sunscreen actions are already pending.

*First*, the judge currently presiding over the three actions, the Honorable James Donato, has already shown his interest in these matters by moving with alacrity and issuing a Case Management Scheduling Order setting the initial conference for October 21, 2021 in San Francisco. There can be no dispute that Judge Donato has extensive experience effectively and efficiently managing complicated litigations of this type. The same is true of the Honorable Jon S. Tigar, also of the Northern District of California, who presided over one of the J&J Sunscreen cases before the actions were consolidated with Judge Donato.

1

*Second*, as compared to other prospective districts, the Northern District of California currently possesses more than sufficient bandwidth to handle the large and complex influx of cases the J&J Sunscreen litigation will involve in an efficient and timely manner, especially given the congestion in other prospective transferee districts. The District of New Jersey, for example, had 60,624 cases pending as of June 2021. By contrast, the Northern District of California had only 14,157 cases pending at that same time.

*Third*, the Northern District of California has a strong geographical nexus with the J&J Sunscreen actions. As alleged in the *Dominguez* Action, Neutrogena Corporation manufactured its sunscreen in California for decades and marketed and distributed these products from the state as well. Even after Neutrogena Corporation was merged into the Defendant, Johnson & Johnson Consumer Inc. ("JJCI" or "Defendant"), California remained, on information and belief, a central location for Neutrogena business activities, including ongoing manufacturing. The controversy at issue in these cases arises from those California-based activities. Further, a large number of the consumers represented in the J&J Sunscreen cases are likely to reside or have purchased the relevant products in the state.

In the event the Panel decides against consolidating these cases in the Northern District of California, the Interested Party proposes the Central District of California as an alternative forum. That district also includes strong jurists, a manageable docket, and strong ties to the situs of Defendant's alleged misconduct.

I. **ARUGMENT SUPPORTING CONSOLIDATION**

Under 28 U.S.C. § 1407, the Panel may consolidate numerous cases if the moving party sufficiently demonstrates the following: (1) the lawsuits contain common questions of fact; (2) consolidation best serves the convenience of the parties and witnesses; and (3) consolidation

promotes just and efficient conduct of such actions. *See* 28 U.S.C. § 1407. For all of the following reasons, the J&J Sunscreen actions meet these statutory requirements and centralization is warranted.

**A. The J&J Sunscreen Lawsuits Contain Common Questions of Fact.**

The threshold requirement for centralization pursuant to Section 1407 is the presence of common questions of fact. Here, the core factual issues in each action are the same, including whether Defendant[1] manufactured, marketed, sold, and distributed the sunscreen products at issue in the litigation (the "Sunscreen Products"), whether Defendant failed to accurately inform consumers of the dangers of the Sunscreen Products, and whether Defendant made misrepresentations regarding the Sunscreen Products' safety and efficacy. These common factual issues predominate over any individual questions of fact in each action. Accordingly, because numerous common issues of fact exist among these cases, the pending actions clearly satisfy the first element of the transfer analysis under Section 1407. *See, e.g.*, *In re Heartland Payment Sys., Inc.*, 626 F. Supp. 2d 1336, 1337 (J.P.M.L. 2009) ("[W]e find that these actions involve common questions of fact, and that centralization under Section 1407 . . . will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. . . . Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

---

[1] Though plaintiffs in the J&J Sunscreen cases have named a number of defendants, the Interested Party believes Johnson & Johnson Consumer Inc. to be the proper named defendant in each of the actions. *See Brennan et al. v. Johnson & Johnson Consumer, Inc.*, No. 4:21-cv-04869, Dkt. 1 at 5-7.

3

**B. Centralization Promotes a Just and Efficient Resolution for All Parties.**

Creating an MDL will minimize the risk of inconsistent rulings from various district courts, thereby conserving judicial resources and promoting a just resolution. As noted above, all J&J Sunscreen cases are or will be based on substantially similar underlying facts and, absent consolidation, would entail costly and unnecessarily duplicative discovery. The current actions all also rely upon similar legal theories of recovery and seek class certification under Federal Rule of Civil Procedure 23. These issues will require broad class, fact, and expert discovery, wide-ranging in scope, almost certainly requiring court guidance. Without consolidating these issues before one MDL judge, the parties could well obtain differing discovery rulings from different courts, and the various scheduling orders will greatly complicate efforts at informal coordination.

Likewise, in the event the parties believe they can resolve these actions prior to trial, an MDL would expedite and streamline settlement negotiations. There are already multiple firms with filed J&J Sunscreen cases and more firms actively investigating J&J Sunscreen cases, which will make successful informal coordination even more unlikely. By contrast, consolidation of these matters before one MDL judge would conserve judicial resources and prevent duplicative discovery and inconsistent pretrial rulings. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1356 (J.P.M.L. 2014) ("The increased presence of apparently unique counsel, coupled with the increased number of involved actions, districts, and judges, makes it highly difficult, if not impossible, to coordinate this litigation effectively on an informal basis.").

Without centralization, the already substantial and increasing number of actions will result in higher costs for the litigants and duplicative discovery, with district courts required to expend

substantial resources considering the same or substantially similar issues. All of these factors weigh strongly in favor of consolidation.

## II. THE MOST APPROPRIATE TRANSFEREE FORUM IS THE NORTHERN DISTRICT OF CALIFORNIA

Plaintiff Dominguez respectfully submits that the Northern District of California is the most appropriate transferee venue. This district already has three pending related cases, including one of the earliest filed cases (the *Brennan* Action), and all are already consolidated before Judge Donato. Both Judge Donato and Judge Tigar, who originally presided over the Interested Party's action, have adjudicated and effectively managed numerous, similar complex litigations involving application of the same legal principles and equally extensive factual records. The Northern District of California is also well-positioned to handle the influx of cases the litigation will involve and, on top of that, has a strong geographical nexus to the underlying controversy.

### A. Several Cases Have Already Been Consolidated.

As noted, the Interested Party's action is pending in the Northern District of California before the Honorable James Donato after having been transferred from the court of the Honorable Jon S. Tigar. Two other cases, *Rafal et al. v. Johnson & Johnson et al.*, No. 3:21-cv-05524, and *Brennan et al. v. Johnson & Johnson Consumer, Inc.*, No. 4:21-cv-04869, have been related to the *Dominguez* Action and are likewise before Judge Donato. *See Dominguez*, No. 4:21-cv-05419, Dkt. 23-24. These cases represent over a quarter of the pending J&J Sunscreen actions. In total, four of the active cases in this litigation are in California, giving warrant to California's centrality to the facts at issue in these proceedings. Given California's size, more cases are likely to be filed in the State, further cementing its role as the central hub for J&J Sunscreen litigation. Judge Donato has set a scheduling conference for October 21, 2021,

and these related actions are proceeding apace. *See, e.g.*, *In re J.P. Morgan Chase & Co. Sec. Litig.*, 452 F. Supp. 2d 1350, 1351 (J.P.M.L. 2006) (transferring case to district which had the "earliest filed" and "most procedurally advanced" action).

**B. The Northern District of California is Well Suited To Handle This MDL.**

The Northern District of California is a convenient and readily accessible location for both parties and witnesses in these cases. It includes some of the nation's most experienced judges in MDL cases and major complex class action litigation. Judge James Donato, before whom the Northern District of California cases are currently related, is an excellent and capable jurist. Judge Donato was appointed to the federal bench in 2014 and has successfully managed several complex MDLs in his years on the bench. As the Panel noted in consolidating the Google Antitrust Litigation MDL before Judge Donato, he is an "experienced transferee judge" who "will steer this litigation on a prudent course." *In re Google Antitrust Litig.*, No. MDL 2981, 2021 WL 409555, at *3 (J.P.M.L Feb. 5, 2021). While Judge Donato is currently presiding over two MDLs, both are relatively small. *See* Ex. 11, *MDL Statistics Report - Distribution of Pending MDL Dockets by District* (Aug. 13, 2021) (listing Judge Donato's MDLs as having 22 pending actions for *In re Capacitors Antitrust Litigation (No. III)* and 19 pending actions for *In re Google Play Store Antitrust Litigation*). Likewise, Judge Jon S. Tigar, who presided over the *Dominguez* Action before it was related to the *Rafal* and *Brennan* Actions, is another excellent candidate for overseeing the J&J Sunscreen cases. Judge Tigar has nearly 20 years of judicial experience and appears to have the bandwidth to oversee these proceedings, given his current involvement in only a single relatively small MDL. Indeed, given their skill and the relatedness of these actions to the State of California, any of the Northern District's judges would be well equipped to handle these cases.

## C. The Center of Gravity of These Cases Is Located in California.

Neutrogena, as a company and later a brand, has deep connections to California, both operationally and managerially. For decades, Neutrogena Corporation maintained its corporate headquarters in California. *See* Ex. 1, *Business Search—Entity Detail*, California Secretary of State (last visited August 11, 2021) (listing Neutrogena Corporation's original registration date as August 29, 1962 and address as 5755 West 96th Street, Los Angeles, California); Ex. 2, 1988 Statement and Designation by Foreign Corporation (listing 5755 West 96th Street, Los Angeles, California as Neutrogena Corporation's principal executive office and principal office); Ex. 3, January 2014 Statement of Information for the State of California Secretary of State (listing 5760 West 96th Street, Los Angeles, California as Neutrogena Corporation's principal executive office); Ex. 4, January 2015 Statement of Information for the State of California Secretary of State (listing 5760 West 96th Street, Los Angeles, California as Neutrogena Corporation's principal executive office).

Though Neutrogena Corporation was merged into Defendant in December 2015, on information and belief, Defendant continued to manufacture Neutrogena products in California after that time and continued to conduct marketing and distribution activities from the state. Notably, after the merger, Neutrogena's longtime California headquarters remained listed with the California Secretary of State as the place where process should be served. Ex. 5, Certificate of Surrender of Right to Transact Intrastate Business. Accordingly, it is overwhelmingly likely that witnesses in these actions will be found in California.

Other readily obtainable evidence indicates that Defendant continues to operate its Neutrogena business out of California to this day and certainly until very close in time to the filing of the J&J Sunscreen cases. As recently as August 12, 2021, Johnson & Johnson has

advertised for two high-level Neutrogena job openings, both in California: Senior Director, Neutrogena Innovation and Brand Manager, Neutrogena.  Notably, both positions are categorized as marketing positions, a topic that is central to the claims in this litigation.  Ex. 6, *Careers: Senior Director, Neutrogena Innovation*, www.jnj.com (last visited August 12, 2021); Ex. 7, *Careers: Brand Manager, Neutrogena (1 of 2)*, www.jnj.com (last visited August 12, 2021).  In addition, the sponsor of a sweepstakes that Neutrogena ran from July 2020 to August 2020 was listed as "Johnson & Johnson Consumer Inc., 5760 West 96th Street, Los Angeles, CA 90045."  Ex. 8, *Quinceanera Rules & Regulations*.

In sum, all indications are that California is where the critical events and decision-making related to the manufacturing and marketing of the Sunscreen Products took place.  Accordingly, it is likely that California has more relevant witnesses and documents than any other state.  That factor weighs strongly in favor of transferring this MDL to a California district court.  *See In re All-Clad Metalcrafters, LLC, Cookware Mktg. & Sales Pracs. Litig.*, No. MDL 2988, 2021 WL 1221526, at *2 (J.P.M.L. Mar. 31, 2021) (noting that where a company had been based in on location since 1971, "documents and witnesses relevant to plaintiffs' claims likely will be found there").

### D. The Northern District of California Has Greater Judicial Bandwidth Than Any Other Potential Transferee District.

The proposed MDL is likely to be sprawling and complex.  The actions already filed on behalf of consumers involve numerous statutory and common law causes of action, under the laws of a multitude of states.  It is likely, if not inevitable, that cases alleging physical injuries will also be filed.  The resulting complex litigation will spawn myriad legal, case management, and administrative issues that will demand prompt and careful resolution to ensure a just and efficient outcome for all parties involved.  While the other districts presiding over J&J Sunscreen

cases include highly capable jurists and strong administrative apparatus, no other court in which cases are pending has the simple capacity to handle what will likely be a sizable influx of complex consumer cases involving advanced econometric modeling and, in the event of a consolidation with injury cases, complicated pathological evidence.

For example, movant has suggested the District of New Jersey as a potential transferee district; however, given its current enormous case load, that district is not well-positioned to take on an additional litigation of this size.[2] *See In re Webvention LLC ('294) Pat. Litig.*, 831 F. Supp. 2d 1366, 1367 (J.P.M.L. 2011) (noting that two federal district courts that were not chosen as transferee courts had "large civil caseloads"). As noted above, as of June 2021, there were 60,624 cases pending in the District of New Jersey.[3] By contrast, only 14,157 cases are pending in the Northern District of California. Ex. 9, *United States District Courts — National Judicial Caseload Profile* (June 30, 2021). Each seated judge in the District of New Jersey has a pending caseload over three times the national average.[4] *See* Ex.10, Tracey Tully, *Judges Juggle Over 2,700 Cases Each as Families Wait for Day in Court*, New York Times (March 17, 2021). Meanwhile, seated judges in the Northern District of California roughly match the national average. Ex. 9. The District of New Jersey also suffers from four open vacancies, and while

---

[2] While some of the Interested Parties to this Petition note that New Jersey has the most J&J Sunscreen actions before it, they fail to note that two of these actions were filed by the same law firm, giving this district an inflated stature in the litigation. *See Baker v. Johnson & Johnson Consumer Inc.*, No. 3:21-cv-14421; *Bodine v. Johnson & Johnson Consumer Inc.*, No. 3:21-cv-14343.

[3] Defendant's filing appears to list a substantially incorrect number of pending cases for the District of New Jersey. *See* Defendants' Response In Support Of Motion To Centralize Actions For Pretrial Proceedings, MDL No. 3015, Dkt. 41, at 10. Instead of pending cases, the filing lists the number of case *terminations*, giving the impression that the District of New Jersey had approximately 50,000 fewer pending cases than it actually does.

[4] Judge Wolfson, Movant's preferred jurist, is also presiding over *Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2738, which involves over 34,000 actions.

President Biden has made nominations to begin filling these vacancies, the backlog of criminal cases caused by the global pandemic will certainly be the first focus for any newly confirmed judge.

The very judge that the Motion to Transfer proposes handle the MDL, the Honorable Freda L. Wolfson, has called for the District of New Jersey's vacancies to be filled "urgently . . . not just to relieve the burden on our judges, but to dispense justice in a timely fashion." *Id.* Recent press reports reflect similar concerns. As one commentator observed, "[s]hort-handed and deluged by complex cases, New Jersey's federal court is in the throes of a crisis that lawyers and judges agree threatens a fundamental tenet of the legal system: access to justice." *See Judges Juggle*, Ex. 10.

The undeniable challenges that the District of New Jersey now faces weigh strongly against transferring the J&J Sunscreen cases there. To do so would disadvantage not only the parties to the J&J Sunscreen cases but also the parties to the important cases already pending in that district. All of these litigants undeniably deserve access to justice dispensed in a timely and efficient manner.

**E. As An Alternative, The Central District Of California Would Be An Appropriate Transferee Forum.**

Of the remaining districts outside the Northern District of California that this Panel may consider as a prospective transferee forum, the Central District of California stands above the others. The site of one of the earliest filed cases in this litigation, *French v. Neutrogena Corp.*, Case No. 2:21-cv-5048, the Central District of California also has good experience successfully managing MDLs, and its docket is significantly lighter than that of the District of New Jersey, for example. Headquartered in Los Angeles, the Central District of California is geographically related to many of the documents and witnesses at issue in this case, as well as easily accessible to

parties throughout the country. Transfer to the Central District of California for consolidated or coordinated pretrial proceedings is an appropriate alternative.

## III. CONCLUSION

For the foregoing reasons, the Interested Party respectfully requests that the Panel grant the motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer these consolidated actions to the Northern District of California. Alternatively, the J&J Sunscreen actions should be transferred to the Central District of California.

Dated: August 19, 2021                    Respectfully Submitted,

/s/ *Seth A. Meyer*
Seth Meyer
  sam@kellerlenkner.com
Alex Dravillas
  ajd@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Telephone: (312) 741-5220
Fax: (312) 971-3502

Warren Postman
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
Telephone: (202) 918-1123
Fax: (312) 971-3502

Kimberly Channick
  kchannick@alexwalshlaw.com
WALSH LAW PLLC
13428 Maxella Avenue, #203
Marina del Rey, CA 90292

Alexandra Walsh
  awalsh@alexwalshlaw.com
WALSH LAW PLLC
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: (213) 863-4276
Fax: (202) 780-3678

David B. Byrne III
  david.byrne@beasleyallen.com
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 269-2343

*Attorney for Dominguez Plaintiffs*