BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: JOHNSON & JOHNSON AEROSOL SUNSCREEN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL NO. 3015 |

## INTERESTED PARTY RESPONSE OF RAFAL PLAINTIFFS

Plaintiff in *George Rafal v. Johnson & Johnson, et al.* Case No: 3:21-cv-05524-JD (N.D. CA) respectfully submits this interested party response to the *Jimenez* Plaintiffs' motion for transfer of actions to the U.S. District Court of New Jersey.

Joining with the moving party and all interested parties' responses, we urge that all cases concerning benzene in Johnson &Johnson (J&J) Aerosol Sunscreen Marketing, Sales Practices and Products Liability Litigation be transferred for consolidation and/or coordination of pretrial proceedings, pursuant to 28 U.S.C. § 1407(a), because all cases currently pending in at least five U.S. district courts across the country, as of this filing:

    (i)    involve common questions of fact and law;

    (ii)    will benefit from enhanced convenience of the parties and witnesses; and

    (iii)    such transfer will promote the just and efficient conduct of the actions.

However, Plaintiff *Rafal* submits that centralization is by far most appropriate before the Honorable James Donato in the United States District Court for the Northern District of California, in contrast to New Jersey, for the following reasons, set forth more fully below:

1. California forms the nucleus of this litigation, where most of the Neutrogena brand sunscreen products in this litigation were manufactured; New Jersey based Johnson & Johnson Consumer, Inc. claims to be merely a holding company of Neutrogena.

2. The Northern District of California is a far more efficient forum than New Jersey;

3. California has 4 of the 12 pending cases, with three in the Northern District already ruled related under its Local Rules, assigned to Judge Donato and set for coordination;

4. The Northern District of California cases are the most procedurally advanced;

5. The Northern District of California is the venue favored by the Plaintiffs in the two earliest-filed cases;

6. The Northern District of California is supported by multiple responding parties;

7. The Northern District of California is most convenient for the majority of relevant witnesses, and closest to the relevant evidence and the relevant documents;

8. California has a greater interest than any state, with the highest resident population in the United States in 2020 (39.37 million people, more than four times New Jersey's 8.9 million);

9. Judge James Donato is an experienced MDL jurist, already engaged in this litigation.

## ARGUMENT

**I. California is where most of the sunscreen products in this litigation were manufactured, by Neutrogena, headquartered in California.**

The Neutrogena Corporation, founded in 1930 and headquartered at 5760 West 96th Street in Los Angeles, California, was acquired in 1994 by Johnson & Johnson Consumer Inc. as a wholly-owned subsidiary and is currently a component of Johnson & Johnson's Skin Health/Beauty unit (which reported approximately $4.5 billion revenue in 2020 within the $14 billion Consumer Health Franchise business segment.[1] According to its most recent filing 12/14/2020 with the California Secretary of State, Johnson & Johnson Consumer, Inc. certifies itself to be merely and solely a "holding company."[2]

---

[1] *See* Johnson and Johnson Form 10-K for the Fiscal Year ended January 3, 2021, p. 21, filed with the Securities and Exchange Commission on February 22, 2021.

[2] **Exhibit A:** 12/14/2020 Corporate Statement of Information filed with California Secretary of State.

While Plaintiff in *Rafal v. Johnson & Johnson*, together with all plaintiffs in all actions appearing before the Judicial Panel in MDL Case No. 3015, seek to hold Neutrogena's parent/holding company, Johnson & Johnson Consumer Inc., fully liable for all damages arising from the benzene-contaminated sunscreens, a fundamental principle of corporate law is that a holding company is generally not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."). Plaintiffs must adequately establish facts to support a finding that the Court should disregard the corporate separateness between the parent holding company Johnson & Johnson Consumer, Inc., and its wholly owned subsidiary, Neutrogena. *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 984 (N.D. Cal. 2015) (plaintiff bears the burden of sufficiently establishing facts sufficient to prove that corporate formalities should be set aside).

The contention that one company "participated in the marketing of allegedly mislabeled products" is not sufficient to allege "that continued recognition of the separation . . . would result in injustice or an inequitable result." *Bates v. Kashi Co*., No. 11-CV-1967-H (BGS), 2012 WL 12847001, at *6-7 (S.D. Cal July 16, 2012). Moreover, notwithstanding the fact that the recall was announced by Johnson & Johnson Consumer, Inc.,[3] mere "language on [a parent company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent." *Moody v. Charming Shoppes of Del., Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, at *7 (N.D. Cal. May 20, 2008).

The point is this: whatever legal liability Johnson & Johnson and/or Johnson & Johnson, Consumer, Inc., may or may not have as more than mere holding companies in this litigation, the

---

[3] https://www.prnewswire.com/news-releases/johnson--johnson-consumer-inc-issues-voluntary-recall-of-specific-neutrogena-and-aveeno-aerosol-sunscreen-products-due-to-the-presence-of-benzene-301334144.html  (Last visited 8/19/2021) **Exhibit B.**

source of that liability will predominately arise from the defective manufacture, labeling and packaging of the benzene-contaminated sunscreen products in California – not in New Jersey.

**II.     The Northern District of California is a far more efficient forum than New Jersey**

As detailed in the *French* and *Sanders'* Plaintiffs' Response (Doc.37), the Northern District of California offers a far more efficient forum than New Jersey. The District of New Jersey is among the most congested dockets in the nation, burdened with nearly 1,600 filings per judgeship (2nd highest in the nation) and almost 3,400 pending cases per judgeship (2nd highest).

By contrast, the Northern District of California has 745 civil filings per judgeship (10th in the nation) and 955 pending cases per judgeship (11th in the nation).[4]

**III.    California has more pending cases, with three in the Northern District already ruled related per its Local Rules, assigned to Judge Donato, and set for coordination**

There are currently four cases pending in California as of the filing of the Motion by the *Jimenez* plaintiffs, more than in any other state. As well presented in the *Serota* and *Brennan* Plaintiffs' Response (Doc.36), the Judicial Panel considers the pendency of multiple actions in the same district as a basis for transfer to that district. *citing., In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019) (transferring to N.D. Cal. because "[f]ive constituent actions, including the first-filed case, are pending in the Northern District of California, as are several tag-alongs). As such, centralization in the Northern District of California will serve the convenience of the parties and witnesses of many of the current cases pending nationwide.[5]

---

[4] United Stats District Courts – National Judicial Caseload Profile (Mar. 31, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf.

[5]  *Dominguez, et al. v. Johnson & Johnson Consumer, Inc.*, Case No. 4:21-cv-05419 (N.D. Cal.), *Rafal, et al. v. Johnson & Johnson, et al.*, Case No. 3:21-cv-05524 (N.D. Cal.), *Brennan, et al. v. Johnson & Johnson Consumer, Inc. et al.*, Case No. 3:21-cv-04869 (N.D. Cal.), and *French, et al. v. Johnson and Johnson Consumer, Inc.*, Case No. 2:21-cv-05048 (C.D. Cal.).

4

**IV.     The Northern District of California cases are the most procedurally advanced**

The Northern District of California, issued a ruling in an August 10, 2021 decision by Magistrate Judge Westbrook, determining on that the *Brennan*, *Dominguez*, and *Rafal* cases are all related.

All three cases have been assigned to Judge Donato, as of August 11, 2021, Judge Donato issued a 13-page reassignment and Case Management Conference Order pursuant to FRCP 16(b) and 26(f), setting the initial conference for October 21, 2021 in San Francisco.[6]

As argued by the *Serota* and *Brennan* Plaintiffs, these factors favor selection of the Northern District of California before Judge Donato. *citing In re J.P. Morgan Chase & Co. Sees. Litig.*, 452 F. Supp. 2d 1350, 1351 (J.P.M.L. 2006) (transferring case to district which had the "earliest filed" and "most procedurally advanced" action); *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (transferring to Oklahoma because "[t]he Oklahoma action is the first-filed action and the most procedurally advanced").

**V.     The Northern District of California is supported by the two earliest-filed cases**

As discussed in the *Serota* and *Brennan* Plaintiffs' Response (Doc.36), the Judicial Panel also considers the location of the first-filed case as an influential factor. *In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (noting the presence of the "first-filed" action as an influential factor in the selection of the transferee district); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d at 1368 (first-filed case in district as a factor in transferring cases).

Here, Ms. Serota who filed the first suit on May 25th, and **_all_** of the *Serota* Plaintiffs who are potential class representatives in numerous states, support transfer to the Northern District of California where the *Brennan* Plaintiffs filed the second suit, the next day, May 26th, followed by the next-filed suit, also in California, the *French* case, in the Central District of California.

---

[6] **Exhibit C**: Judge Donato reassignment Order setting Case Management Conference

It was over a month later, after the first two cases were filed that the *Jimenez* suit was filed on June 29, 2021, in the District of New Jersey.

Plaintiff *Rafal*, hereby, respectfully joins with the *Serota, Brennan, French* and *Sanders'* Plaintiffs' in urging the Panel to give greater consideration to the wishes of those who were first to file, and venue this litigation in the Northern District of California").

VI. **The Northern District of California is supported by multiple responding parties**

The *Rafal* plaintiff supports the other Respondents in urging the Panel to centralize this litigation in California. As noted by the *Serota* and *Brennan* Plaintiffs, the Judicial Panel has "considered the support of parties in determining the best transferee court." *citing, In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (relying on the fact that the District of New Jersey was "the preferred transferee forum of several responding parties" in deciding to transfer the MDL to that district); *In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015) (selecting Northern District of California as transferee district, noting that "[n]umerous plaintiffs support centralization in this district, both in the first instance and in the alternative.").

Accordingly, this factor also supports transfer to the Northern District of California.

VII. **The Northern District of California is most convenient for the majority of relevant witnesses, and closest to the relevant evidence and the relevant documents**

The motion brought by the *Jimenez* Plaintiffs offers no compelling evidence to favor the District of New Jersey on the convenience of the parties. Most of the sunscreen products at issue are sold under the Neutrogena brand name, whose headquarters and manufacturing facilities are on the opposite side of the country from New Jersey, in Los Angeles, California. Thus, it is just as likely that California, not New Jersey, has a more significant connection to this litigation and is the forum where relevant witnesses may be located.

6

To the extent that any relevant documentary evidence is located outside of California, as the *Serota* and *Brennan* plaintiffs have discussed, the presence of documents is no longer a significant factor in weighing transfers because "[i]n an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 857 (S.D.N.Y. 2017) (citation omitted). *See also Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC,* 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.")

With respect to the convenience of witnesses, it appears that relevant witnesses are more likely to be in California than New Jersey. The Northern District of California is located in close proximity to three major airports (San Francisco, Oakland, and San Jose) served by all major airlines, as well as served by integrated regional transit hubs.

Finally, with respect to the parties, in addition to the parties who have filed more cases in California than are cases filed any other state, the *French* case pending in the Central District of California would likely be convenient for transfer to the Northern District as well. Accordingly, this factor weighs in favor of consolidating the actions before Judge Donato in the Northern District of California.

**VIII. California has the greater interest with the highest resident population in the United States in 2020 (39.37 million people, more than four times New Jersey's 8.9 million)**

California has a significant interest in resolving the issues in this suit for its populace who likely make up a substantially higher number of class members than any other state, notably including New Jersey residents. As such, given the population disparity, the likelihood of follow-on suits in California is significantly higher.

Therefore, it is preferable that these actions be consolidated within California. *See In re Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, Case No. 20-C-5965, 2021 WL 3290962, at *6 (N.D. Ill. Aug. 1, 2021) (noting that "district courts around the country

7

are on notice to transfer relevant cases to this Court" and "a number of tag-along cases have already been filed in other districts and then transferred to this Court within days" and ordering "any new plaintiffs to file actions in their home districts . . . and then to ensure that those actions are transferred before this Court").

Indeed, California alone is likely to account for a disproportional amount of nationwide sales. In a recent class action consumer protection case before Judge Donato, *Siddle v. Duracell.* (N.D.CA case no. 3:19-cv-00568-JD) involving defective flashlights, sales data supplied by Costco (one of the defendants named *here* before the Panel in *this* case) demonstrated that California sales accounted for over 30% of all Costco member sales nationwide by millions of consumers (like consumers *here*, purchasing sunscreen marketed to keep them safe, but exposing them to greater danger by their reliance on the defective product.)[7]

As such, California has a compelling interest in having the Panel centralize this case in the Northern District of California, as respectfully urged here by *George Rafal*, and his fellow Interested Party Respondents.

## V. The Northern District of California's Honorable James Donato is a highly experienced MDL jurist familiar with national consumer product defect litigation

Finally, there can be no question that Judge Donato is qualified to manage these cases. Judge Donato currently has two MDLs before him[8] and the Panel has previously found that "[h]e is an experienced transferee judge with the willingness and ability to manage [multi-district] litigation." *In re Google Antitrust Litig.*, MDL No. 2981, 2021 WL 409555, at *3 (J.P.M.L. Feb. 5, 2021). Moreover, the Northern District of California has more MDLs pending before it than any other Court, and the Court has the experience and resources to manage the litigation.

---

[7] **Exhibit D**: Judge Donato Order granting final approval of class action settlement in *Siddle v. Duracell.*

[8] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-15- 2021.pdf (last accessed August 19, 2021)

Additionally, as argued by both the *Serota* and *Brennan* Plaintiffs, as well as the *French* and *Sanders* Plaintiffs, District Court Judge Wolfson in the U.S. District Court for the District of New Jersey currently has the *Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, MDL-2738 pending before her. This is a massive undertaking with over 34,000 actions.[9] By contrast, Judge Donato's MDLs consist of only 22 and 18 actions.[10]

Plaintiff *Rafal* joins with his fellow Respondents here, again, therefore, in urging the Panel to consider the relevant docket conditions before assigning the MDL. *In re Classicstar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) (indicating that the transferee district's "general docket conditions permit us to make the Section 1407 assignment knowing that the court has the resources available to manage [the] litigation"); *In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007) (specifying that the transferee judge "has the time" to efficiently manage the litigation.)

## CONCLUSION

Because this sunscreen litigation is nationwide in scope, no single district is going to be convenient for all parties. With Neutrogena headquartered in California, the predominant manufacture, production and packaging has taken place in California, where the most substantial number of consumers nationwide are likely to be, it makes the most sense for the Panel to centralize this litigation in the Northern District of California where several the pending actions have already been related and assigned to Judge Donato.

For these and all the foregoing reasons set forth above herein, and in the parallel Interested Party Responses filed by the *Serota* Plaintiffs and *Brennan* Plaintiffs, the *French* and

---

[9] *Id.*

[10] *Id.*

*Sanders* Plaintiffs, Plaintiff *George Rafal* hereby respectfully request an Order transferring all related cases regarding benzene in J&J sunscreen products to Judge Donato in the Northern District of California.

Respectfully submitted,

Dated: August 19, 2021   By:  /s/ *Timothy P. Rumberger*
TIMOTHY P. RUMBERGER, Esq.
Law Offices of Timothy P. Rumberger
1339 Bay Street, Alameda, CA 94501
Phone: 510-841-5500; Fax: 510-521-9700
e-mail: tim@rumbergerlaw.com

Counsel for Plaintiff George B. Rafal
in *Rafal v. Johnson & Johnson, et al.*
Case No. 3:21-cv-05524-JD (N.D. CA)